JOHN-PATRICK M. FRITZ (SBN 245240)
ROBERT M. CARRASCO (SBN 334642)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  JPF@LNBYG.COM

Attorneys for Chapter 11 Debtors
and Debtors in Possession

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>UNRIVALED BRANDS, INC.,<br><br>    Debtor and Debtor in Possession.<br>_____<br>In re:<br><br>HALLADAY HOLDING, LLC,<br><br>    Debtor and Debtor in Possession.<br>_____<br>☒ Affects both Debtors<br>☐ Affects Unrivaled Brands, Inc. only<br>☐ Affects Halladay Holding, LLC only | ) Lead Case No.: 2:24-bk-19127-BB<br>)<br>) Jointly administered with Halladay Holding<br>) LLC (2:24-bk-19128-BB)<br>)<br>) Chapter 11 Case<br>)<br>) **DEBTORS' JOINT  CHAPTER 11 PLAN,**<br>) **DATED FEBRUARY 4, 2025**<br>)<br>) <u>Hearing on Adequacy of Disclosure</u><br>) <u>Statement</u>:<br>) Date:  TBD<br>) Time: TBD<br>)<br>) <u>Hearing on Plan Confirmation</u>:<br>) Date:  TBD<br>) Time:  TBD<br>)<br>) Place:  Courtroom 1539<br>)        255 East Temple Street<br>)        Los Angeles, CA 90012<br>)<br>)<br>)<br>)<br>)<br>) |

1

# **TABLE OF CONTENTS**

**I.    INTRODUCTION** ............................................................................2

    **A.    A Liquidating Plan** ...........................................................2

    **B.    The Effective Date of the Plan**........................................3

**II.    TREATMENT OF CLAIMS AND INTERESTS UNDER THE
PLAN** ...........................................................................................3

    **A.    What Creditors Will Receive Under the Plan** ............3

    **B.    Means of Effectuating and Implementing the Plan**..............14

**III.    LIQUIDATING TRUST** ..........................................................21

    **A.    Vesting of Assets in the Liquidating Trust**...............21

    **B.    Establishment of the Liquidating Trust** ...................22

    **C.    Liquidating Trustee and Post-Confirmation Management**....23

    **D.    Cooperation and Funding** ...........................................26

**IV.    EFFECT OF CONFIRMATION OF THE PLAN** ............................26

    **A.    Discharge and Channeling Injunction.**....................26

    **B.    Modification of the Plan.** .............................................26

    **C.    Post-Confirmation Status Reports.**............................27

    **D.    Post-Confirmation Operations** ...................................27

    **E.    Post-Confirmation Conversion/Dismissal.** ...............27

    **F.    Final Decree.** .................................................................28

## I.    **INTRODUCTION**[1]

Unrivaled Brands, Inc., a Nevada corporation ("Unrivaled") and Halladay Holding, LLC, a California limited liability company ("Halladay" and with Unrivaled, collectively the "Debtors"), are the debtors and debtors in possession in the above-captioned, jointly administered chapter 11 bankruptcy cases (the "Bankruptcy Cases") bearing case numbers 2:24-bk-19227-BB and 2:24-bk-19228-BB.  The Debtors filed voluntary petitions under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on November 6, 2024 (the "Petition Date").  The Debtors are managing their affairs and administering their estates as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No official committee of creditors has been formed, and no trustee has been appointed in these Bankruptcy Cases.

**This document is the Debtors' plan of liquidation (the "Plan")**.  A separate document, sent to you in the same envelope with the Plan, is the disclosure statement (the "Disclosure Statement"), which describes the Plan.  The Disclosure Statement is provided to help you understand the Plan.  On _____, __, 2025, the Court held a hearing and approved the Disclosure Statement as having adequate information describing the Plan to assist parties in interest in determining whether to accept or reject the Plan or otherwise file objections.  All capitalized terms used in the Plan which are not defined in the Plan but which are defined in the Disclosure Statement shall be deemed to have the same definitions as used in the Disclosure Statement

### A.  A Liquidating Plan

The Plan is a liquidation plan with a "pot plan" distribution to pay creditors shortly after the Effective Date and establish a liquidating trust (the "Liquidating Trust") with a liquidation

---

[1] Defined terms used in the "Introduction" have the meanings ascribed to them elsewhere in the Disclosure Statement.

trustee ("Liquidation Trustee") to monetize assets of the estates and distribute them to creditors.

On the Effective Date, the Liquidating Trust shall be vested with all of the Debtors' assets and assume all liabilities as restructured under the Plan.  The Debtors will sign any reasonable documentation as requested by the Liquidating Trustee or required by law to effectuate the acquisition of assets and assumption of liabilities under the Plan.

**B.**    **The Effective Date of the Plan**

The effective date (the "Effective Date") of the Plan shall be the first day after the Court enters an order (the "Confirmation Order") confirming the Plan and all of the following conditions have been satisfied or waived as specified below: (1) all documents, instruments, and agreements to be executed in connection with the Plan shall have been executed and delivered by all parties to such documents, instructions, and agreements; (2) 14 days following the entry of the Plan Confirmation Order shall have passed without an appeal of said order having been filed; (3) the Plan is not subject to an appeal or rehearing; and (4) there is no stay in effect with respect to the Plan Confirmation Order.  Conditions numbered (1) and (3) above can be waived by the Debtors in their sole discretion.  Condition number (2) above can be waived by request of the Debtors with an order by the Bankruptcy Court pursuant to Rule 3020(e) of the Federal Rules of Bankruptcy Procedure.  Condition number (4) cannot be waived.

**II.**    **TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

**A. What Creditors Will Receive Under the Plan**

As required by the Bankruptcy Code, the Plan classifies certain claims and interests in various "classes" according to their right to priority and leaves other types of claims unclassified.  Also, as required by the Bankruptcy Code, the Plan states whether each class of claims or interests is impaired or unimpaired and describes the treatment each class will receive.

### 1. Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. The Bankruptcy Code predetermines what type of treatment these claims will receive. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtors have not placed the following claims in a class.

### a. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtors' Bankruptcy Cases that are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment. "Administrative Claim" means a claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code.

The following chart lists all of the Debtors' § 507(a)(2) estate professional administrative claims and their treatment under the Plan.[2]

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Quarterly Fees to the United States Trustee ("UST") | $0 | The Debtors will be current on quarterly fees by the time of the hearing on plan confirmation. |
| LNBYG, Bankruptcy Counsel to the Debtors | $200,000 (est.) | Paid on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Buchalter, APC, Special Litigation Counsel to the Debtors | $50,000 (est.) | Paid on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |

---

[2] The Agents for the sale of the Halladay Property will be paid from the Sale closing, not through the Plan, and, therefore are not listed here.

4

| | | |
|---|---|---|
| Adnant LLC<br>Chief Restructuring<br>Officer | $100,000 (est.) | Paid on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| **TOTAL** | **$ 350,000** | **Paid in the manner described above** |

The Court must approve all professional fees and expenses listed in this chart before they may be paid.  For all professional fees and expenses (except fees owing to the Clerk of the Bankruptcy Court), the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under the Plan, up to the agreed capped amounts set forth above.  The actual administrative claims may be higher or lower than the figures stated above; however, even if the actual amount of such fees and expenses exceed the figures stated above, the professionals have agreed to accept payment of the above amounts as payment in full of their respective administrative claims.  The actual accrued administrative claims described above for professionals will be largely dependent upon whether the Debtors are required to engage in any substantial litigation regarding the confirmation of the Plan and/or objecting to claims.  To the extent the Debtors are required to engage in any such substantial litigation, the Debtors are likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the figures set forth above.  By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims.  By including the figures described above, the Debtors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and the Debtors are not waiving any of their rights to object to the allowance of any of these administrative claims, but payment of any such allowed administrative claims will be limited to amounts provided for in the Plan.

**b.  Priority Unsecured Tax Claims**

5

Prepetition priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Plan Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date, and not less favorable than other creditors paid under the Plan.  Interest rates on these claims are conclusively determined by applicable non-bankruptcy law as of the month that the Plan is confirmed.  11 U.S.C. § 511.

Under the Plan, all allowed Section 507(a)(8) priority tax claims will be paid within 15 days of the Plan Effective Date. Interest on the priority tax claims will accrue and be paid at the applicable non-bankruptcy law statutory rate.

Unless timely contested under the Plan, a failure by the Debtors to make a payment on the priority tax claims pursuant to the terms of the Plan will be an event of default.  If the event of default is not cured within thirty (30) days after service of written notice of default from the taxing authority, then the taxing authority may enforce its applicable remedies by application of non-bankruptcy law in non-bankruptcy court.  The chart below indicates all priority tax claims which were either scheduled by the Debtors or asserted by the taxing agencies in timely filed proofs of claim.  The inclusion of the claims in the chart below is intended simply to reflect the claims that have been scheduled and/or asserted in timely filed proofs of claim as priority tax claims, and is not intended to be a concession by the Debtors regarding the validity of the amount of any such claims or the classification of such claims as priority tax claims under Section 507(a)(8) of the Bankruptcy Code.

| Claimant | Proof of Claim No. | Claim Amount | Objection |
|---|---|---|---|
| CA FTB (Halladay) | 2 | $2,954.72 | |
| CA FTB (Unrivaled) | 14 | $469,747.88 | Yes |
| **Total** | | **$472,702.60** | |

### 2. Classified Claims and Interests

#### a. Non-Tax Pre-Petition Priority Claims

Certain prepetition priority claims that are referred to in Bankruptcy Code Sections 507(a)(4), (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment under the Bankruptcy Code as each holder of such an allowed claim must receive cash on the Effective Date equal to the allowed amount of such claim.  However, the holder of such an unsecured priority claim may agree to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.  The below chart summarizes the priority non-tax claims and whether the Debtors are considering an objection at this time:

| Name | Claim No. | Objection | Claim Amount |
|------|-----------|-----------|--------------|
| None | N/A | N/A | $0.00 |

#### b. Class 1 – Allowed Secured Tax Claim of the County of Orange

The following chart identifies the Plan's treatment of Class 1 comprised of the allowed secured tax claim of Orange County:

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---------|-------------|-----------------|-----------|
| 1 | Claimant: Orange County<br><br>Type of Claim: Allowed secured claim<br><br>Claim amount: $304,607.72 plus accrued interest<br><br>Collateral: Halladay Property | Unimpaired<br><br>Deemed to have accepted the Plan by operation of law without voting. | Class 1 will be paid on its allowed secured claim in full upon the earlier of the closing the proposed sale of the Halladay Property or the Plan Effective Date.<br><br>Interest at the applicable rate pursuant to 11 U.S.C. § 511. |

#### c. Class 2 – Allowed Secured Claim of 1st DOT Holder

1    The following chart identifies the Plan's treatment of Class 2 comprised of the allowed

2  secured claim of the 1st DOT Holder:

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 2 | Claimant: 1st DOT Holders<br><br>Type of Claim: Allowed secured claim<br><br>Prepetition Claim amount: $2,875,568.90, plus accrued interest, fees, and costs<br><br>Collateral: Halladay Property | Unimpaired<br><br>Deemed to have accepted the Plan by operation of law without voting. | Class 2 will be paid on its allowed secured claim in full upon the earlier of the closing the proposed sale of the Halladay Property or the Plan Effective Date. |

**d. Class 3 – Allowed Secured Claim of Peoples (2nd DOT Holder)**

The following chart identifies the Plan's treatment of Class 3 comprised of the allowed

claim (if any) of Peoples (2nd DOT Holder):

8

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 3 | Claimant: Peoples' California, LLC<br><br>Type of Claim: Allowed secured claim<br><br>Prepetition Claim amount: $3,000,000* plus interest<br><br>Collateral: Halladay Property<br><br>*Debtors dispute the Class 3 Claim, for which Peoples' asserts a lien for $3,000,000, and an adversary proceeding is pending to void the lien and disallow the claim (2:24-ap-1272-BB). | Unimpaired<br><br>Deemed to have accepted the Plan by operation of law without voting. | Class 3 will be paid on its allowed secured claim in full upon the earlier of the closing the proposed sale of the Halladay Property or the Plan Effective Date.<br><br>Class 3 was paid its Class 3 claim in full prior to the Petition Date, and the receipt of additional payment under the Plan is $0. |

**e.  Class 4 – Allowed Secured Claim of Dominion (3rd DOT Holder)**

The following chart identifies the Plan's treatment of Class 4 comprised of the allowed claim of Dominion (3rd DOT Holder):

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---------|-------------|-----------------|-----------|
| 4 | Claimant:<br>Dominion Capital LLC<br><br>Type of Claim: Allowed secured claim<br><br>Prepetition Claim amount:<br>$1,000,000<br><br>Collateral:<br>Halladay Property | Unimpaired<br><br>Deemed to have accepted the Plan by operation of law without voting. | Class 4 will be paid on its allowed secured claim in full upon the earlier of the closing the proposed sale of the Halladay Property or the Plan Effective Date. |

### f.   Class 5 – Allowed Secured Claim of Locam LLC

The following chart identifies the Plan's treatment of Class 5 comprised of the allowed secured claim of Locam LLC:

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 5 | Claimant: Locam LLC<br><br>Type of Claim: Allowed secured claim<br><br>Prepetition Claim amount: $50,000 plus interest<br><br>Collateral: Substantially all assets of Unrivaled | Impaired<br><br>Entitled to vote. | Class 5 will receive $50,000, on the Plan Effective Date, and waive accrued interest, in exchange for and in full and final satisfaction for its Class 5 Claim. |

### g.  Classes of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).  The Class 6 claims under the Plan are comprised of each allowed claim against ***Halladay*** that is not secured by a charge against, or interest in, any of Halladay's assets, that is not an administrative claim, or otherwise not entitled to priority under Bankruptcy Code Section 507(a).  The following chart identifies the Plan's treatment of Class 6 (see the Claims Chart for detailed information about each general unsecured claim):

11

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 6 | All allowed general unsecured claims of *Halladay* not included in any other class.<br><br>Estimated amount of asserted Class 6 claims is $0.<br><br><br>The Claims Chart attached as **Exhibit 1** to the Disclosure Statement and Plan shows all claims which were scheduled by Halladay and all proofs of claim which have been filed against Halladay that are in Class 6. | Unimpaired.<br><br>Deemed to have accepted the Plan by operation of law without voting. | Class 6 claim holders will be paid in full on the Plan Effective Date with applicable interest. |

The Class 7 claims under the Plan are comprised of each allowed claim against ***Unrivaled*** that is not secured by a charge against, or interest in, any of Unrivaled's assets, that is not an administrative claim, or otherwise not entitled to priority under Bankruptcy Code Section 507(a). The following chart identifies the Plan's treatment of Class 6 (see the Claims Chart for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 7 | All allowed general unsecured claims of Unrivaled not included in any other class.<br><br>Estimated amount of asserted Class 7 claims is $43 million (subject to objection).<br><br>The Claims Chart attached as **Exhibit 2** to the Disclosure Statement and Plan shows all claims which were scheduled by Unrivaled and all proofs of claim which have been filed against Unrivaled that are in Class 7. | Impaired.<br><br>Entitled to Vote. | In full and final satisfaction of each, any, and all of their claims against the Debtors, on the Plan Effective Date, each holder of an allowed Claim in Class 7 will receive its pro rata share of the "GUC Distribution," to be distributed by the Liquidating Trustee. |

### h.  Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtors.

In compliance with 11 U.S.C. § 1123(a)(6), the Debtors' charters, bylaws, and/or operating agreements will be amended to provide for the inclusion of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among classes.

The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 8 | Sole member of | Impaired | The Class 8 equity interests |

| | | Halladay:<br><br>Unrivaled Brands, Inc. | The Class 8 interest holder is conclusively presumed to have voted to reject the Plan by operation of law | will be cancelled, and all distributions that Class 8 would otherwise receive will upstream to the Liquidating Trust under the Plan. |

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 9 | Sole shareholder of Unrivaled:<br><br>Blum Holdings, Inc. | Impaired<br><br>The Class 9 interest holder is conclusively presumed to have voted to reject the Plan by operation of law | The Class 9 equity interests will be cancelled, and all distributions that Class 9 would otherwise receive will be transferred to the Liquidating Trust under the Plan. |

**B.  Means of Effectuating and Implementing the Plan**

    **1.  Funding for the Plan**

The Plan will be funded with the sale proceeds of the proposed sale of the Halladay Property and the assets to be transferred to the Liquidation Trust.

    **2.  Composition of the Debtors After the Effective Date**

On the Effective Date, the equity interests in the Debtors shall be cancelled, and all assets of the Debtors shall be transferred Liquidating Trust.

    **3.  Post-Confirmation Management and Compensation**

On and after the Effective Date, all management of the Liquidating Trust shall be vested in the Liquidating Trustee.  To the extent any further actions are required by the Debtors, the Liquidating Trustee shall be vested with the powers to carry out such actions.  Compensation and

management of the Liquidating Trust shall be in accordance with the Liquidating Trust Agreement attached as **Exhibit 3** to the Plan.

### 4.  Disbursing Agent

The Liquidating Trust will act as the disbursing agent under the Plan and be compensated in accordance with the Liquidating Trust Agreement.

### 5.  Objections to Claims

The Liquidating Trust will file objections to all claims that are inconsistent with the Debtors' books and records or are otherwise objectionable to the Liquidating Trustee unless the Liquidating Trustee deems the inconsistency to be insignificant.  With respect to disputed claims that are not resolved prior to the Plan Effective Date, the Liquidating Trustee will have the authority, in its sole discretion, and in the reasonable exercise of its business judgment, to settle or compromise any disputed claim without further notice or Court approval up to $100,000.

As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan. As of the Effective Date, the Liquidating Trust shall have the sole authority and standing to file any objections to claims following the confirmation of the Plan, and the Court shall retain jurisdiction over the Liquidating Trust and Bankruptcy Cases to resolve such objections to claims following the confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver or release of any rights of setoff or recoupment, or of any defense that the Debtors may have with respect to any claim, all of which shall be vested in the Liquidating Trust.  The Liquidating Trustee shall withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors (the "Disputed Claims") of any particular class as if such

claims were allowed in full, which shall not delay payment to allowed claims that are not Disputed Claims.

### 6.   Avoidance Actions, Strong Arm Powers, and Causes of Action

All avoidance actions and strong-arm powers of a trustee under chapter 5 of the Bankruptcy Code and any motions and/or adversary proceedings for substantive consolidation, shall irrevocably vest in the Liquidating Trust and be transferred in total to the Liquidating Trustee upon confirmation of the Plan. The deadline for filing avoidance actions under chapter 5 of the Bankruptcy Code and to file any non-avoidance action shall be the earlier of (i) the statute of limitations for such cause of action and (ii) two years after the Petition Date. Regardless of whether they are listed on the Debtors' bankruptcy schedules of assets or specified in the Plan, all causes of action owned by the Debtors shall vest in the Liquidating Trustee unless specifically settled with such settlement approved by order of the Bankruptcy Court prior to confirmation of the Plan.

### 7.   Employment of Professionals by the Liquidating Trustee and Payment of Professional Fees and Expenses After the Effective Date

On and after the Effective Date, the Liquidating Trustee shall have the right to employ and compensate professionals as the Liquidating Trustee determines is appropriate and to compensate any such professionals without the need for any further order of the Bankruptcy Court.

### 8.   Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax.  Transfers under the Plan that are exempt from taxes under section 1146(a) of the Bankruptcy Code include all transfers by the Debtors after the commencement of the Bankruptcy Case in contemplation of the Plan but prior to the Effective Date.  The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and

other similar taxes.

### 9. Distributions to Be Made Pursuant to the Plan

Except as otherwise agreed to by the Liquidating Trustee in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtors' schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Bankruptcy Court, to such address.  Checks issued to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

### 10. Exculpations and Releases

To the maximum extent permitted by law, not any one of the Debtors, each of its/their management, each of its/their professionals employed or retained by any of them, whether or not by Bankruptcy Court order (collectively, the "Exculpated Parties"), shall have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein, including the distribution of estate funds.

For the avoidance of doubt the exculpation and release applies only to the events of the Debtors' cases and Plan as set forth in the preceding paragraph.  This is not – and shall not be construed to be – a release or exculpation of the Exculpated Parties for matters outside of the Debtors' cases and Plan as set forth in the preceding paragraph.

### 11. Injunctions and Releases

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, equitable remedy, liability or interest released, discharged, stayed, or terminated pursuant to the Plan, including, but not limited to claims for voidable transfers, substantive consolidation,

successor liability, recharacterization, and equitable subordination.  Except as provided in the Plan or the Plan Confirmation Order, as of the Plan Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability or equitable remedy that was stayed or is discharged or an interest or other right of an equity security holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against: (I) (a) the Debtors, (b) the Liquidating Trustee, or (c) alleged alter egos of the Debtors or Liquidating Trustee, or (II) their property; on account of any such discharged, stayed, or enjoined claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan.  By accepting distributions pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section.  The injunction described in this paragraph (the "Injunction") is applicable to **all** creditors and parties in interest with respect to claims or causes of action arising or existing prior to the Plan Effective Date.

All creditors and parties in interest who are presented with a copy of the Plan Confirmation Order are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest ("Actual Knowledge"), such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action. Accordingly, any creditor and/or party in interest charged with such Actual Knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include an award of reasonable attorneys' fees and costs for enforcing the Injunction against

1  any such creditor and/or party in interest.

2  ### 12. Executory Contracts and Unexpired Leases

3  On the Effective Date, the Debtors will assume and assign to the Liquidation Trust the

4  executory contracts and unexpired leases set forth on **Exhibit 4** to the Disclosure Statement and

5  Plan with the cure amount set forth on that exhibit.  On the Effective Date, all of the Debtors'

6  remaining executory contracts and unexpired leases which have not previously been assumed or

7  rejected by the Debtors shall be deemed to be rejected by the Debtors effective as of 11:59 PST

8  on the day prior to the Plan Effective Date.  **THE BAR DATE FOR FILING A PROOF OF**

9  **CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN**

10  **UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE**

11  **PLAN EFFECTIVE DATE WILL BE THIRTY (30) DAYS AFTER THE PLAN**

12  **EFFECTIVE DATE.**  Any claim resulting from the Debtors' rejection of an unexpired lease or

13  executory contract will be barred if the proof of claim is not timely filed, unless the Court orders

14  otherwise.  Any allowed claim resulting from the Debtors' rejection of an unexpired lease or

15  executory contract will constitute a Class 5 allowed claim, subject to the limitations set forth in

16  11 U.S.C. § 502(b) and other applicable sections of the Bankruptcy Code.

17  ### 13. Changes in Rates Subject to Regulatory Commission Approval

18  The Debtors are not subject to governmental regulatory commission approval of its rates.

19  ### 14. Retention of Jurisdiction

20  After confirmation of the Plan and occurrence of the Plan Effective Date, in addition to

21  jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as

22  is legally permissible including for the following purposes:

23  i.    To resolve any and all disputes regarding the operation and interpretation

24  of the Plan and the Plan Confirmation Order;

25  ii.    To determine the allowability, classification, or priority of claims and

26  interests upon objection by the Debtors or the Liquidating Trustee and to consider any objection

27  to claim or interest whether such objection is filed before or after the Effective Date;

28

iii.    To determine the extent, validity and priority of any lien asserted against property of the Debtors and property of the Debtors' estates;

iv.    To construe and take any action to enforce the Plan (subject to the limitations set forth in section III.C.1.a. of the Disclosure Statement and section III.B.1 of the Plan), the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Plan Confirmation Order, and all matters referred to in the Plan and the Plan Confirmation Order, and to determine all matters that may be pending before this Bankruptcy Court in this Bankruptcy Cases on or before the Effective Date with respect to any person or entity related thereto;

v.    To determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi.    To determine any request for payment of administrative expenses;

vii. To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

viii.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Cases whether before, on, or after the Effective Date;

ix.    To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

x.    To modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose upon motion by the Liquidating Trustee;

xi.    Except as otherwise provided in the Plan and the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or

20

appropriate to restrain interference with the Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Plan Confirmation Order;

xii. To issue such orders in aid of consummation of the Plan and the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules;

xiii; To enter a discharge, under 11 U.S.C. § 1141(d), if applicable; and

xiv.    To enter a final decree closing the Bankruptcy Case.

## III.    LIQUIDATING TRUST

### A. Vesting of Assets in the Liquidating Trust

1.    On the Effective Date, the appointment of the Liquidating Trustee shall become effective and the Liquidating Trustee shall begin to administer the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement and the Plan and may use, acquire and dispose of property of the Liquidating Trust free of any restrictions imposed under the Bankruptcy Code. The Liquidating Trustee shall have the rights, powers and duties provided for by the Plan, the Liquidating Trust Agreement, and by the Confirmation Order. The Liquidating Trustee, in the exercise of its reasonable business judgment, shall be responsible for liquidating the remaining assets of the Debtors, winding up the financial affairs of the Debtors, and for making distributions to holders of claims in as efficient, effective and economical manner as is reasonably practicable so as to produce for holders of claims as favorable a recovery on their claims as is reasonably possible under the circumstances of this case.

2.    The Confirmation Order will provide the Liquidating Trustee with express authority to convey, transfer and assign any and all of the Liquidating Trust Assets and to take all actions necessary to effectuate same and to prosecute, settle and compromise (including, without limitation, by set-off) any and all Estate Causes of Action and Disputed Claims, without any need for notice to creditors or order or approval of the Bankruptcy Court.

3.    As of the Effective Date, the Liquidating Trust assets will be free and clear of all liens, claims and interests of holders of claims and equity interests, except as otherwise provided in the Plan.

**B.  Establishment of the Liquidating Trust**

1.    <u>Generally</u>

On the Effective Date the Liquidating Trust Agreement will become effective, and, if not previously signed, the Debtors and the Liquidating Trustee will execute the Liquidating Trust Agreement. The Liquidating Trust is organized and established as a trust for the benefit of the Beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d).

2.    <u>Beneficiaries</u>

In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the Liquidating Trust will be the Holders of all Allowed Claims against the Debtors. The holders of such allowed claims will receive an allocation of the Liquidating Trust assets as provided for in the Plan and the Liquidating Trust Agreement. The beneficiaries of the Liquidating Trust shall be treated as the grantors and owners of such beneficiaries' respective portion of the Liquidating Trust.

3.    <u>Implementation of the Liquidating Trust</u>

On the Effective Date, the Debtors, on behalf of the estates, and the Liquidating Trustee will be authorized and directed to take all such actions as required to transfer to the Liquidating Trust, from the Debtors and estates, the Debtors' assets.  From and after the Effective Date, the Liquidating Trustee will be authorized to, and will, take all such actions to implement the Liquidating Trust Agreement and the provisions of the Plan as are contemplated to be implemented by the Liquidating Trustee, including, without limitation, directing distributions to holders of allowed claims, objecting, compromising and settling claims (including, without limitation, exercising set-off rights and/or seeking the subordination and/or reclassification of claims), prosecuting or otherwise resolving estate causes of action and causing distributions from the Liquidating Trust to be made to the beneficiaries. The funding of the Liquidating Trust will be from the Debtors' cash on hand and assets as of the Effective Date and the proceeds of the liquidation by the Liquidating Trustee of any other Liquidating Trust Assets.

4.    <u>Transfer of the Debtors' Assets</u>

On the Effective Date, pursuant to the Plan and sections 1123, 1141 and 1146(a) of the Bankruptcy Code, the Debtors are authorized and directed to transfer, grant, assign, convey, set over, and deliver to the Liquidating Trustee all of the Debtors' and estates' right, title and interest in and to their assets, including all estate causes of action, free and clear of all liens, claims, encumbrances or interests of any kind in such property, except as otherwise expressly provided in the Plan. To the extent required to implement the transfer of the Debtors' assets from the Debtors and estates to the Liquidating Trust, all persons will cooperate with the Debtors and estates to assist the Debtors and estates to implement said transfers.

5.    Provisions Relating to Federal Income Tax Compliance

A transfer to the Liquidating Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), as a transfer to creditors to the extent creditors are Beneficiaries. For example, such treatment shall apply for purposes of Internal Revenue Code sections 61(a)(12), 483, 1001, 1012 and 1274. Any such transfer shall be treated for federal income tax purposes as a deemed transfer to the beneficiary-creditors followed by a deemed transfer by the beneficiary-creditors to the Liquidating Trust. The beneficiaries of the Liquidating Trust shall be treated for federal income tax purposes as the grantors and deemed owners of the Liquidating Trust.

**C.  Liquidating Trustee and Post-Confirmation Management**

1.    Representative of the Estates

The Debtors shall identify the Liquidating Trustee in its sole discretion, and shall designate the Liquidating Trustee in a notice filed prior to the Plan confirmation hearing. The Liquidating Trustee will be appointed as the representative of the Debtors' estates pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code and as such will be vested with the authority and power (subject to the Liquidating Trust Agreement) to inter alia: (i) object to, settle and compromise claims (including any claim for payment of any administrative expense) against the Debtors (including, without limitation, exercising set-off rights and/or seeking the subordination and/or reclassification of claims) and equity interests in the Debtors; (ii) administer, investigate, prosecute, settle and abandon all estate causes of action assigned to the Liquidating Trust; (iii) make distributions provided for in the Plan, including, but not limited to, on account

of allowed claims; and (iv) take such action as required to administer, wind-down, and close the Chapter 11 Cases.

Except only for the filing of a final decree to close the Chapter 11 Cases pursuant to Rule 3022 of the Bankruptcy Rules, the Liquidating Trustee may take, as representative of the estate, all acts to implement and consummate the Plan and the Liquidating Trust Agreement, including the acts set forth in this Section, without any need for notice to creditors or order or approval of the Bankruptcy Court. As the representative of the estates, the Liquidating Trustee will be vested with all of the rights and powers of the Debtors and estates with respect to all estate causes of action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted in place of the Debtors and estates, as applicable, as the party in interest in all such litigation pending as of the Effective Date.

From and after the Effective Date, the Liquidating Trustee shall, without any further notice or action, order, or approval of the Bankruptcy Court, pay in cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan and Liquidating Trust Agreement incurred by the Liquidating Trust.

2.    No Liability of the Liquidating Trustee

To the maximum extent permitted by law, the Liquidating Trustee, its employees, officers, directors, agents, members, and representatives, and professionals employed or retained by the Liquidating Trustee (collectively, the "**Liquidating Trustee's Agents**"), will not have or incur liability to any person for an act taken or omission made in good faith in connection with or related to the administration of the Liquidating Trust assets, the implementation of the Plan and the distributions made thereunder or distributions made under the Liquidating Trust Agreement; *provided, however*, **that the foregoing limitation shall not apply to any damages suffered or incurred by any holder of a claim or beneficiary that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, willful misconduct, or from profit derived from a breach of trust by the Liquidating Trustee or the Liquidating Trustee's Agents**. The Liquidating Trustee, the Liquidating Trustee's Agents, and their respective employees, officers, directors, agents, members, and representatives, and professionals employed or retained by any

24

of them, will in all respects be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan and the Liquidating Trust Agreement. Entry of the Confirmation Order constitutes a judicial determination that the exculpation provision contained in this Section of the Plan is necessary to, *inter alia*, facilitate Confirmation and feasibility and to minimize potential claims arising after the Effective Date for indemnity, reimbursement or contribution from the Estate, or the Liquidating Trust, or their respective property. The entry of the Confirmation Order confirming the Plan will also constitute a determination of the matters included in the exculpation provisions of the Plan that will be entitled to *res judicata* effect as to any potential claim by any party that would be subject to such exculpation provisions. Notwithstanding the foregoing, nothing herein or in this Section of the Plan will alter any provision in the Liquidating Trust Agreement that provides for the potential liability of the Liquidating Trustee to any Person.

       3.    <u>Compensation of Liquidating Trustee/Removal of Liquidating Trustee</u>

On the Effective Date of the Plan, the Liquidating Trustee shall be appointed to serve under the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee's compensation shall be as provided in the Liquidating Trust Agreement.  The Liquidating Trustee shall serve during the term of the Plan; provided, however, that, upon motion made with notice and an opportunity for a hearing given to the post-Effective Date notice parties, any party-in-interest shall be entitled to request, for cause shown, that the Bankruptcy Court terminate the employment of the Liquidating Trustee and replace it with another Person, who if appointed by final order of the Bankruptcy Court, will have all of the rights, powers and duties provided to the Liquidating Trustee by the Plan, the Liquidating Trust Agreement, the Confirmation Order and by the provisions of the final order of the Bankruptcy Court appointing such replacement Liquidating Trustee.

       4.    <u>Resignation of the Liquidating Trustee</u>

The Liquidating Trustee may resign by giving not less than thirty (30) days' prior written notice thereof to the parties entitled to notice under the Plan. The resignation will be effective on the later of: (a) the date specified in the notice; (b) the date that is thirty (30) days after the date the notice is delivered; and (c) the date the successor Liquidating Trustee accepts his or her

appointment as such.  In the event the original Liquidating Trustee resigns, the Liquidating Trustee shall appoint the successor Liquidating Trustee.  Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment and shall deliver such acceptance to the Bankruptcy Court. Thereupon, such successor Liquidating Trustee shall, without any further act, become vested with all of the properties, rights, powers, trusts and duties of his or her predecessor in the Liquidating Trust with like effect as if originally named herein; provided, however, that the resigning Liquidating Trustee shall, nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor Liquidating Trustee all the estates, properties, rights, powers and trusts of the removed or resigning Liquidating Trustee.

### D.    Cooperation and Funding

All holders of claims, holders of equity interests and other parties-in-interest shall cooperate with the Liquidating Trustee by executing any documents, and by taking any acts, reasonably necessary and appropriate to implement the provisions of the Plan.

The Liquidating Trust shall be entitled to incur, and to be reimbursed for, post-Effective Plan expenses in performing its duties and obligations under the Plan and Liquidating Trust Agreement. All post-Effective Date plan expenses shall be expenses of the Liquidating Trust. The Liquidating Trustee shall have no personal liability for any post-Effective Date plan expenses. The Liquidating Trustee shall disburse funds from the Liquidating Trust assets for the purpose of funding the post-Effective Date plan expenses.

### IV.    EFFECT OF CONFIRMATION OF THE PLAN

#### A.  Discharge and Channeling Injunction.

The Debtors will not receive a discharge under the Plan.  The Plan shall include an injunction to channel creditors' claims against the Debtors to the Liquidating Trust for payment of their claims.

#### B.  Modification of the Plan.

The Debtors may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan if the Debtors modify the Plan before confirmation. The Liquidating Trustee may also seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

### C. <u>Post-Confirmation Status Reports.</u>

Until a final decree closing the Debtors' chapter 11 cases being entered, the Liquidating Trustee will file quarterly post-confirmation status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan.

### D. <u>Post-Confirmation Operations</u>

There shall be no operations post-confirmation. All of the Debtors' assets and property of the estates shall vest in Liquidating Trust.

### E. <u>Post-Confirmation Conversion/Dismissal.</u>

A creditor or any other party in interest may bring a motion to convert or dismiss the Bankruptcy Case under Section 1112(b) of the Bankruptcy Code after the Plan is confirmed, but before the final decree is entered, if there is a default in performing the Plan. If the Bankruptcy Court orders the Bankruptcy Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Debtors' chapter 11 estates that has not been disbursed pursuant to the Plan will revest in the chapter 7 estates, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during the Bankruptcy Case. The Plan Confirmation Order may also be revoked under very limited circumstances. The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation before 180 days after the entry of the Plan Confirmation Order pursuant to 11 U.S.C. § 1144. If the Debtors and/or the Liquidating Trustee successfully defends against an adversary proceeding or other lawsuit to revoke discharge, revoke the Plan

Confirmation Order, or otherwise allege confirmation by fraud, then Debtors and/or the Liquidating Trustee shall be entitled to an award of reasonable attorneys' fees and costs against any such plaintiff and its counsel.

### F.  Final Decree.

Once these estates have been fully administered as referred to in Bankruptcy Rule 3022, the Liquidating Trustee will file a motion with the Bankruptcy Court to obtain a final decree to close the Bankruptcy Cases.  The Liquidating Trustee will be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

/ / /

/ / /

Presented By:

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.


By:    */s/ John-Patrick M. Fritz*
         JOHN-PATRICK M. FRITZ
         Attorneys for Chapter 11
         Debtors and Plan Proponents

Unrivaled Brands, Inc.
Halladay Holding, LLC



By:_____
         Sabas Carrillo
         Adnant, LLC
         Authorized Agent for Debtors

# EXHIBIT "1"

| Creditor | Address1 | Address2 | City | State | Zip | FILED CLAIM | | | | | SCHEDULED CLAIM | | | | OBJECTION | PROPOSED TREATMENT OF CLAIM | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C U D | Basis of Objection, if Any | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount |
| Franchise Tax Board | Bankruptcy Section MS A340 | PO Box 2952 | Sacramento | CA | 95812-2952 | 2 | 1/30/25 | | $2,618.83 | $335.89 | | | | | | | $2,618.83 | $335.89 |

Exhibit 1

# EXHIBIT "2"

| Creditor | Address1 | Address2 | City | State | Zip | Claim # | Date Claim Filed | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | Basis of Objection, if Any | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1149 South LA Street Fashion District | 3435 WILSHIRE BL STE 2820 | | Los Angeles | Ca | 90010-0000 | | | | | | | | $580,000.00 | | | | $580,000.00 |
| 1848 Newport WAM TIC, LLC | 17752 Fitch | | Irvine | Ca | 94612-0000 | | | | | | | | $29,165.00 | | | | $29,165.00 |
| 414 Lesser Street, LLC | c/o Avison Young | | San Diego | Ca | 92121-0000 | | | | | | | | $5,336.63 | | | | $5,336.63 |
| ACCO Engineered Systems, Inc | PO Box 847360 | | Los Angeles | Ca | 90084-7360 | | | | | | | | $854.00 | | | | $854.00 |
| Adnant, LLC | 11516 Downey Ave | | Downey | Ca | 90241-0000 | | | | | | | | $4,387,117.76 | | | | $4,387,117.76 |
| ADP Screening & Selection Services, Inc. | PO Box 645177 | | Cincinnati | OH | 45264-0000 | | | | | | | | $846.75 | | | | $846.75 |
| ADT | P.O. Box 371878 | | Pittsburgh | PA | 15250-7878 | | | | | | | | $13.45 | | | | $13.45 |
| AEI Consultants | 2500 Camino Diablo | | Walnut Creek | Ca | 94597-0000 | | | | | | | | $2,300.00 | | | | $2,300.00 |
| Affordable Security Shutters | 2213 Silver Fox Circle | | Fairfield | Ca | 94534-0000 | | | | | | | | $534.00 | | | | $534.00 |
| Alameda County | 1221 Oak St | Room 131 | Oakland | Ca | 94612-0000 | 11 | 12/27/24 | $1,408.82 | | | | | $1,003.05 | | | $1,408.82 | $0.00 |
| Alameda County Environmental Health | PO BOX N | | Alameda | Ca | 94501-0000 | | | | | | | | $2,044.25 | | | | $2,044.25 |
| Amaren Group | 260 Newport Center Drive, | | Newport Beach | Ca | 92660-0000 | | | | | | | | $625.00 | | | | $625.00 |
| AP Triton Consulting | 1851 Heritage Ln. | Suite 138 | Sacramento | Ca | 95815-0000 | | | | | | | | $4,400.00 | | | | $4,400.00 |
| Archer Public Affairs | P.O. Box 280 | | Trenton | NJ | 08602-0000 | | | | | | | | $25,000.00 | | | | $25,000.00 |
| Architectural Dimensions | 801 Ygnacio Valley Road | Road Suite 230 | Walnut Creek | Ca | 94596-0000 | | | | | | | | $1,406.25 | | | | $1,406.25 |
| Arthur Chan | 1055 Clay Street | | San Fransisco | Ca | 94108-0000 | | | | | | | | $3,107,500.00 | | | | $3,107,500.00 |
| Arturo Manuel Sanchez | 224 Riverbrook Way | | Sacramento | Ca | 95831-0000 | | | | | | | | $52,650.00 | | | | $52,650.00 |
| Assets Empire LLC | 6763 W Charleston Blvd | | Las Vegas | NV | 89146-0000 | | | | | | | | $4,754.97 | | | | $4,754.97 |
| Auroral Group LLC | 2618 San Miguel Drive | #480 | Newport Beach | Ca | 92660-0000 | | | | | | | | $31,000.00 | | | | $31,000.00 |
| B&B Mechanical Services Inc | 1040 Serpentine Lane | #202 | Pleasanton | Ca | 94566-0000 | | | | | | | | $16,808.25 | | | | $16,808.25 |
| Baker and Hostetler | P.O Box 70189 | | Cleveland | OH | 44190-0189 | | | | | | | | $153,999.91 | | | | $153,999.91 |
| Bay Air Systems Inc | 1300 Galaxy Ave | Suite 9 | Concord | Ca | 94520-0000 | | | | | | | | $15,045.75 | | | | $15,045.75 |
| Bay Alarm Company | PO Box 51041 | | Los Angeles | Ca | 90051-5337 | | | | | | | | $421.17 | | | | $421.17 |
| Biotherm Hydronic, Inc | 476 Primero Ct. | | Cotati | Ca | 94931-0000 | | | | | | | | $6,844.24 | | | | $6,844.24 |
| Birddog HR | 4453 NW Urbandale Dr | | Des Moines | IA | 50322-0000 | | | | | | | | $4,995.00 | | | | $4,995.00 |
| Brent R Robbins CPA | 5015 Birch St. | | Newport Beach | Ca | 92660-0000 | | | | | | | | $27,250.00 | | | | $27,250.00 |
| Broadridge ICS | PO Box 416423 | | Boston | MA | 02241-6423 | 8 | 11/29/24 | $71,090.50 | | | | | $7,126.15 | | | | $71,090.50 |
| Buchalter | 1000 Wilshire Blvd | #1500 | Los Angeles | Ca | 90017-0000 | 1 | 11/13/24 | | $571,469.80 | | | | $392,576.10 | | | | $571,469.80 |
| Burns & Levinson LLP | 125 High Street | | Boston | MA | 02110-0000 | | | | | | | | $675.00 | | | | $675.00 |
| C&H Capital Inc. | 2020 Stone Meadow Way | | Cumming | GA | 30041-0000 | | | | | | | | $36,000.00 | | | | $36,000.00 |
| California Department of Financial Protection and Innovation | 2101 Arena Boulevard | | Sacramento | Ca | 95834-0000 | | | | | | | | $2,500.00 | | | | $2,500.00 |
| Capitol Services | 206 E 9th St | Suite 1300 | Austin | TX | 78701-0000 | | | | | | | | $2,171.00 | | | | $2,171.00 |
| City of Irvine | Business License Division | | Irvine | Ca | 92623-0000 | | | | | | | | $89.00 | | | | $89.00 |
| Clark Hill PLC | 500 Woodward Ave. | Suite 3500 | Detroit | MI | 48226-0000 | | | | | | | | $33,935.75 | | | | $33,935.75 |
| Clean Mist Disinfecting | 245 N Pageant St | | Anaheim | Ca | 92807-0000 | | | | | | | | $4,251.08 | | | | $4,251.08 |
| Colorado Nine LLC | 515 East 72nd St. 25F | | New York | NY | 10021-0000 | | | | | | | | $12,000.00 | | | | $12,000.00 |
| Connell Foley LLP | 56 Livingston Avenue | | Roseland | NJ | 07068-0000 | | | | | | | | $77,471.18 | | | | $77,471.18 |
| Conman & Swartz | P.O. Box 10604 | | Newport Beach | Ca | 92658-0000 | | | | | | | | $2,265.00 | | | | $2,265.00 |
| County of Alameda, Wts. & Measures | 224 W. Winton Avenue | | Hayward | Ca | 94544-0000 | | | | | | | | $623.80 | | | | $623.80 |
| County of Orange | PO Box 4005 | | Santa Ana | Ca | 92702-1438 | 5 | 11/22/24 | $2,717.27 | $3,142.49 | | | | $2,021.85 | | | $2,717.27 | $3,142.49 |
| Crawford Integrated Technologies | 3307 Pinole Valley Road | | Pinole | Ca | | | | | | | | | $71,650.30 | | | | $71,650.30 |
| CrossPlans | 23041 Avenida de la Carlota | #300 | Laguna Hills | Ca | 92653-0000 | | | | | | | | $1,800.00 | | | | $1,800.00 |
| Crowe LLP | PO Box 51660 | | Los Angeles | Ca | 90051-5960 | | | | | | | | $75,447.53 | | | | $75,447.53 |
| CT Corporation | PO Box 4349 | | Carol Stream | IL | 60197-4349 | | | | | | | | $5,310.10 | | | | $5,310.10 |
| CT Lien Solutions | P.O. Box 301133 | | Dallas | TX | 75303-0000 | | | | | | | | $222.00 | | | | $222.00 |
| Culhane, Meadows, Haughian, & Walsh, PLL | PO Box 49716 | | Atlanta | GA | 30359-0000 | | | | | | | | $5,000.00 | | | | $5,000.00 |
| CV Resources | 8583 Irvine Center Drive | #405 | Irvine | Ca | 92618-0000 | | | | | | | | $2,569.86 | | | | $2,569.86 |
| Cybba Inc | 580 Harrison Ave | Suite 401 | Boston | MA | 02118-0000 | | | | | | | | $5,630.98 | | | | $5,630.98 |
| Dallas Imbimbo | 17595 Harvard Avenue | #C552 | Irvine | Ca | 92614-0000 | | | | | | | | $5,000.00 | | | | $5,000.00 |
| Delaware Secretary of State | Division of Corporations | | Binghamton | NY | 13902-0509 | | | | | | | | $7,394.40 | | | | $7,394.40 |
| DLA Piper LLP | 666 Burrard Street, | Suite 2800 | Vancouver, BC V6C 2Z7 | | | | | | | | | | $3,075.43 | | | | $3,075.43 |
| DLC | 20750 Ventura Blvd., Suite 300 | | Woodland Hills | Ca | 91364-0000 | | | | | | | | $4,600.00 | | | | $4,600.00 |
| Dominion Capital, LLC | 256 West 38th St | 15th FL | New York | NY | 10018-0000 | | | | | | | | $1,753,000.00 | | | | $1,753,000.00 |
| Douglas Wilson Companies | 1620 Fifth Ave, Suite 400 | | San Diego | Ca | 92101-0000 | | | | | | | | $8,181.25 | | | | $8,181.25 |
| Duane Morris LLP | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | | | | | | | $3,951.83 | | | | $3,951.83 |
| E&E Electronic Engineering Research Inc | 12346 Valley Blvd | Unit #E | El Monte | Ca | 91732-0000 | | | | | | | | $11,330.00 | | | | $11,330.00 |
| Elevated Equipment Supply | 2651 E. 45th St | | Vernon | Ca | 90058-0000 | | | | | | | | $110.40 | | | | $110.40 |
| Elite Security Group Inc. | 640 Bailey RD | #124 | Pittsburg | Ca | 94565-0000 | | | | | | | | $23,520.00 | | | | $23,520.00 |
| Empyreal Enterprises LLC | 2000 Oxford Drive, | Suite 440 | Bethel Park | PA | 15102-0000 | | | | | | | | $7,865.00 | | | | $7,865.00 |
| Engin8 LLC | 4701 Victoria Beach Way | | Las Vegas | NV | 89130-0000 | | | | | | | | $3,735.00 | | | | $3,735.00 |
| ENTRC Inc. dba Canix | 2261 Market Street | Ste 5049 | San Francisco | Ca | 94114-0000 | | | | | | | | $7,200.00 | | | | $7,200.00 |
| Envirocheck | 2211 West Orangewood Ave | | Orange | Ca | 92868-0000 | | | | | | | | $1,170.00 | | | | $1,170.00 |
| Equisolve | 3500 SW Corporate Parkway | Suite 206 | Palm City | FL | 34990-0000 | | | | | | | | $898.00 | | | | $898.00 |
| Eric Baum | 210 N Church Street | Unit 2914 | Charlotte | NC | 28202-0000 | | | | | | | | $31,000.00 | | | | $31,000.00 |
| Face and Body Inc | 1900 Midway Lane | | Smyrna | TN | 37167-0000 | | | | | | | | $110.27 | | | | $110.27 |
| FFG Valuations | 535 Anton Blvd | Suite 1100 | Costa Mesa | Ca | 92626-0000 | | | | | | | | $6,750.00 | | | | $6,750.00 |
| FinancialForce, Inc | 595 Market Street, | Suite 2700 | San Francisco | Ca | 94105-0000 | | | | | | | | $10,564.61 | | | | $10,564.61 |
| Fire & Security Co | 1152 Beach Street | | Oakland | Ca | 94608-0000 | | | | | | | | $2,459.00 | | | | $2,459.00 |
| Ford Credit | P.O. Box 552679 | | Detroit | MI | 48255-0000 | | | | | | | | $700.63 | | | | $700.63 |
| Fox Rothschild LLP | 33 Arch Street, Suite 3110 | | Boston | MA | 02110-0000 | | | | | | | | $45,841.00 | | | | $45,841.00 |
| Franchise Tax Board | PO Box 942857 | | Sacramento | Ca | 94257-0531 | 14 | 1/30/25 | $469,747.88 | $93,681.51 | | | | $540,159.44 | Amend. Return | | $469,747.88 | $93,681.51 |
| Fusion LLF, LLC | 80 Broad ST | | New York | NY | 10004-0000 | | | | | | | | $4,550,000.00 | | | | $4,550,000.00 |
| Gateway Acceptance Co | P.O. Box 4053 | | Concord | Ca | 94524-0000 | | | | | | | | $379,106.98 | | | | $379,106.98 |
| Glaser Weil Fink Howard Johnson, et al. | 10250 Constellation Boulevard | 19th Floor | Los Angeles | Ca | 90067-0000 | 9 | 12/1/24 | | | $282,495.75 | | | $280,000.00 | | | | $282,495.75 |
| Go To Premium Finance | 6200 Canoga Ave | | Woodland Hills | Ca | 91367-0000 | | | | | | | | $9,794.39 | | | | $9,794.39 |
| Goodwin Procter LLP | 100 Northern Ave | | Boston | MA | 02210-0000 | | | | | | | | $917.00 | | | | $917.00 |
| Green Engineers | 1031 Marengo Dr | | Glendale | Ca | 91206-0000 | | | | | | | | $5,000.00 | | | | $5,000.00 |
| Greenlane Holdings, LLC | C/O Wallin & Russell LLP | 26000 Towne Centre Drive Sui | Foothill Ranch | Ca | 92610-0000 | 2 | 11/13/24 | $1,919,769.57 | | | | | $1,858,398.00 | Not Secured | $0.00 | | | $1,919,769.57 |
| H2S Engineers Inc | 1124 N Boatswain Circle | | Anaheim | Ca | 92801-0000 | | | | | | | | $4,500.00 | | | | $4,500.00 |
| Hay & Associates | 15455 an Fernando Mission Bl | Suite 202 | Mission Hills | Ca | 91345-0000 | | | | | | | | $22,733.75 | | | | $22,733.75 |
| Henry C. Levy | 1221 Oak Street | Room 131 | Oakland | Ca | 94612-4285 | | | | | | | | $137.91 | | | | $137.91 |
| Henry G. Wykowski & Associates | Attn: Henry Wykowski | | San Francisco | Ca | 94104-0000 | | | | | | | | $22,091.76 | | | | $22,091.76 |
| Ice Systems, Inc. | 100 Palco Court | Unit 9 | | 0 | 00000-0000 | | | | | | | | $104.63 | | | | $104.63 |
| InCorp Services Inc | 3773 Howard Hughes Parkway | Suite 500S | Las Vegas | NV | 89169-0000 | | | | | | | | $129.00 | | | | $129.00 |
| Inova Employee Assistance | 3949 Pender Dr. | Suite 310 | Fairfax | VA | 22030-0000 | | | | | | | | $4,505.96 | | | | $4,505.96 |
| Intelligent Discovery Solutions, Inc | 3000 K Street NW | Suite 330 | Washington | DC | 20007-0000 | | | | | | | | $7,006.82 | | | | $7,006.82 |
| Joe Gerlach | 895 Airport Drive | | Cave Junction | OR | 97523-0000 | | | | | | | | $186,224.00 | | | | $186,224.00 |
| Jolie Kahn | 12E. 49th Street | 11th Floor | New York | NY | 10017-0000 | | | | | | | | $20,000.00 | | | | $20,000.00 |

Exhibit 2

| Creditor | Address1 | Address2 | City | State | Zip | Claim # | Date Claim Filed | Secured | Priority | General Unsecured | Schedule "C" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C U D | Basis of Objection if Any | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| KCSA Strategic Communications, Inc. | 420 Fifth Ave. | 3rd Floor | New York | NY | 10018-0000 | | | | | | | | $7,500.00 | | | | | $7,500.00 |
| Kling Consulting Group | 18008 Sky Park Circle | Circle Suite 250 | Irvine | CA | 92614-0000 | | | | | | | | $1,780.00 | | | | | $1,780.00 |
| Knobbe, Martens, Olsen & Bear | 2040 Main St. | 14th Floor | Irvine | CA | 92614-0000 | | | | | | | | $40,579.16 | | | | | $40,579.16 |
| Ladd Partners | PO Box 8593 | | San Jose | CA | 95155-0000 | | | | | | | | $3,948.75 | | | | | $3,948.75 |
| Leafly Holdings, Inc. | PO Box 92116 | | Las Vegas | NV | 89193-2116 | | | | | | | | $12,900.00 | | | | | $12,900.00 |
| Manatt, Phelps & Phillips, LLP | 2049 Century Park East | | Los Angeles | CA | 90067-0000 | | | | | | | | $599,926.13 | | | | | $599,926.13 |
| MARCA Strategic | 3891 Vrain St. | | Denver | CO | 80212-0000 | | | | | | | | $5,000.00 | | | | | $5,000.00 |
| Marcum, LLP | 600 Anton Blvd | Suite 1600 | Costa Mesa | CA | 92626-0000 | | | | | | | | $192,746.11 | | | | | $192,746.11 |
| Master Bango | 5355 Skylane Blvd | | Santa Rosa | CA | 95403-0000 | | | | | | | | $0.00 | | | | | $0.00 |
| Mayer Brown LLP | 311 W. Monroe Street, STE. 600 | | Chicago | IL | 60606-0000 | | | | | | | | $150,570.80 | | | | | $150,570.80 |
| Miller Nash | 111 SW 5th Avenue, Suite 3400 | | Portland | OR | 92704-0000 | | | | | | | | $87,890.37 | | | | | $87,890.37 |
| Mobile Notary Public | 211 N Sycamore St | | Santa Ana | CA | 92701-0000 | | | | | | | | $205.00 | | | | | $205.00 |
| Monzo HVAC Consulting | 1495 Driftwood Circle | | Fairfield | CA | 94534-0000 | | | | | | | | $647.50 | | | | | $647.50 |
| More Consulting | 96 West 2nd Street | | Morgan Hill | CA | 95037-0000 | | | | | | | | $1,247.50 | | | | | $1,247.50 |
| MX2 Global Protection, Inc. | 27472 Portola Pkwy. | Suite 205-314 | Foothill Ranch | CA | 92610-0000 | | | | | | | | $50,756.38 | | | | | $50,756.38 |
| New Age Compassion Care Center, Inc. | 350 W Martin Luther King Jr Blvd | | Los Angeles | CA | 90037-0000 | | | | | | | | $0.00 | | | | | $0.00 |
| New York State Insurance Fund | 199 Church St | | New York | NY | 10007-0000 | | | | | | | | $407.01 | | | | | $407.01 |
| Nison Consulting | 444 Baist Sr. | | Sayreville | NJ | 08872-0000 | | | | | | | | $47,500.00 | | | | | $47,500.00 |
| No Smoking Allowed Except Turn, LLC | 125 W. LA CADENA DR. | | Riverside | CA | 92501-0000 | | | | | | | | $600,000.00 | | | | | $600,000.00 |
| Nossaman | 777 South Figueroa Street | 34th Floor | Los Angeles | CA | 90017-0000 | | | | | | | | $1,821.50 | | | | | $1,821.50 |
| Okamoto Structural Engineering | 3186 Airway Ave | Suite F | Costa Mesa | CA | 92626-0000 | | | | | | | | $1,250.00 | | | | | $1,250.00 |
| Omni Real Estate IX LLC | 1212 S Flower Street | | Los Angeles | CA | 90015-0000 | | | | | | | | $3,590.54 | | | | | $3,590.54 |
| Orange County Heritage Council | 1754 W. Willits Street | | Santa Ana | CA | 92703-0000 | | | | | | | | $1,000.00 | | | | | $1,000.00 |
| OTC Markets Group, Inc. | 304 Hudson St. | 2nd Floor | New York | NY | 10013-1115 | | | | | | | | $10,000.00 | | | | | $10,000.00 |
| Oxford & Bond LLC | 9249 S Broadway | | Highlands Ranch | CO | 80129-0000 | | | | | | | | $3,500.00 | | | | | $3,500.00 |
| Pacific Plumbing Systems, Inc | 2120 Adams Avenue | | San Leandro | CA | 94577-0000 | | | | | | | | $7,775.00 | | | | | $7,775.00 |
| Paradise Village Associates NF LLC | 2000 McKinney Ave | | Dallas | TX | 75201-0000 | | | | | | | | $31,438.51 | | | | | $31,438.51 |
| PAS, Inc | 10804 Bigge Street | | San Leandro | CA | 94577-0000 | | | | | | | | $38,110.00 | | | | | $38,110.00 |
| Paycom Payroll LLC | 7501 W. Memorial Rd | | Oklahoma City | OK | 73142-0000 | | | | | | | | $43.95 | | | | | $43.95 |
| Payne & Fears | 4 Park Plaza | Suite 1100 | Irvine | CA | 92614-0000 | 13 | 1/9/25 | | $67,705.64 | | | | | | | | | $67,705.64 |
| PCAOB | 1666 K Street NW | Suite 300 | Washington | DC | 20006-0000 | | | | | | | | $400.00 | | | | | $400.00 |
| People's California, LLC | 3843 S BRISTOL STREET | #614 | Santa Ana | Ca | 92704-0000 | | | | | | | | ########## | | | | | $14,821,140.00 |
| People's Guru | 101 S Hoover Blvd, | | Tampa | FL | 33609-0000 | | | | | | | | $8,170.00 | | | | | $8,170.00 |
| Plins Design Studio | 9270 Onesto Ave | | Las Vegas | NV | 89148-0000 | | | | | | | | $10,024.00 | | | | | $10,024.00 |
| Precision Advocacy Group LLC | 915 L St. | Suite C-445 | Sacramento | CA | 95814-0000 | | | | | | | | $52,000.00 | | | | | $52,000.00 |
| Precision Air & Refrigeration LLC | 1901 Golden Delicious Ct | | Bakersfield | CA | 93312-0000 | | | | | | | | $14,943.09 | | | | | $14,943.09 |
| Print Zone Plus | 432 W Broadway | | Glendale | CA | 91204-0000 | | | | | | | | $2,513.98 | | | | | $2,513.98 |
| Proactive Investors LLC | 767 3rd Avenue | | New York | NY | 10017-0000 | | | | | | | | $7,442.19 | | | | | $7,442.19 |
| Progressive | 300 North Commons Blvd | | Mayfield Village | OH | | | | | | | | | $7.00 | | | | | $7.00 |
| Pro-Tech Electric | PO Box 986 | | Corona | CA | 92878-0000 | | | | | | | | $6,100.00 | | | | | $6,100.00 |
| Reach Headwear | 2848 Leonis Blvd | | Vernon | CA | 90058-0000 | | | | | | | | $4,070.79 | | | | | $4,070.79 |
| Reno Print Store | 280 Greg St. | #5 | Reno | NV | 89502-0000 | | | | | | | | $9,954.35 | | | | | $9,954.35 |
| Revenue River LLC | 2081 Youngfield St | | Golden | CO | 80401-0000 | | | | | | | | $101,800.00 | | | | | $101,800.00 |
| Sam's Signs Neon & Electrical, Inc | 16719 E. 14th St. | | | | 00000-0000 | | | | | | | | $3,530.61 | | | | | $3,530.61 |
| Sectran Security Inc | PO Box 227267 | | Los Angeles | CA | 90022-0000 | | | | | | | | $1,895.96 | | | | | $1,895.96 |
| Shawn Lambert HVAC Inc | PPO Box 1866 | | Huntington Beach | CA | 92647-0000 | | | | | | | | $404.17 | | | | | $404.17 |
| Shout Public Relations, Inc. | 1032 W. 18th St. | Suite A-4 | Costa Mesa | CA | 92627-0000 | | | | | | | | $6,000.00 | | | | | $6,000.00 |
| Shred-It | 28883 Network Place | | Chicago | IL | 60673-1288 | | | | | | | | $4,696.03 | | | | | $4,696.03 |
| Silver State Elevator Co | PO Box 5309 | | Reno | NV | 89513-0000 | | | | | | | | $250.00 | | | | | $250.00 |
| Silver Streak Matthew Gould | 4264 Flowerline Rd | | Olivehurst | CA | 95961-0000 | | | | | | | | $293,387.00 | | | | | $293,387.00 |
| Silver Streak Sterling Harlan | 7273 Kara Drive | | Sacramento | CA | 92528-0000 | | | | | | | | $1,173,601.00 | | | | | $1,173,601.00 |
| SK Builders | 300 Frank H Ogawa Plaza, | #386 | Oakland | CA | 94612-0000 | | | | | | | | $6,890.72 | | Will be treated as unsecured | | | $6,890.72 |
| Sklar Williams PLLC | 410 South Rampart Boulevard | Suite 350 | Las Vegas | NV | 89145-0000 | | | | | | | | $49,533.68 | | | | | $49,533.68 |
| Slater Builders Inc | 3100-B Pullman St | | Costa Mesa | CA | 92626-0000 | | | | | | | | $13,163.34 | | | | | $13,163.34 |
| Sonitrol Orange County | 1334 Blue Oaks Blvd | | Roseville | CA | 95678-0000 | | | | | | | | $646.98 | | | | | $646.98 |
| Sparkletts | PO Box 660579 | | Dallas | TX | 75266-0000 | | | | | | | | $63.58 | | | | | $63.58 |
| Spectrum Business | PO BOX 60074 | | Saint Louis | MO | 63131-0000 | | | | | | | | $194.00 | | | | | $194.00 |
| Spektor Security Solutions | 430 South Empire St | | Anaheim | CA | 92804-0000 | | | | | | | | $4,387.80 | | | | | $4,387.80 |
| Springbig Inc | 621 NW 53rd St | Suite 260 | Boca Raton | FL | 33487-0000 | | | | | | | | $12,000.36 | | | | | $12,000.36 |
| SSBC Owners Association | 8600 Technology Way, | #170 | Reno | NV | 89521-0000 | | | | | | | | $1,018.20 | | | | | $1,018.20 |
| Stanley Convergent Security | Solutions Inc. | Dept. CH 10651 | Palatine | IL | 60055-0000 | | | | | | | | $7,399.49 | | | | | $7,399.49 |
| State of New Jersey | P.O. Box 929 | | Trenton | NJ | 08646-0929 | | | | | | | | $1,896.71 | | | | | $1,896.71 |
| State Water Resources Control Board | PO Box 1888 | | Sacramento | CA | 95812-0000 | | | | | | | | $370.00 | | | | | $370.00 |
| Steptoe & Johnson LLP | 1330 Connecticut Ave, NW | | Washington | DC | 20036-0000 | | | | | | | | $8,574.00 | | | | | $8,574.00 |
| Sterling Consulting Solution LLC | 6853 Copper Glen Circle | | Roseville | CA | 95678-0000 | | | | | | | | $10,492.42 | | | | | $10,492.42 |
| Strategies 360 | 1505 Westlake Ave | N Suite 1000 | Seattle | WA | 98109-0000 | | | | | | | | $24,000.00 | | | | | $24,000.00 |
| Suburban Propane | 240 Route 10 West | | Whippany | NJ | 07981-0000 | 6 | 11/22/24 | | $1,125.80 | | | | $165.00 | | | | | $1,125.80 |
| Sullivan & Worcester LLP | PO BOX 842482 | | New York | NY | 10019-0000 | | | | | | | | $10,000.00 | | | | | $10,000.00 |
| Surfside Solutions Inc. | 64 Wooster St, FL 2 | | New York | NY | 10012-0000 | | | | | | | | $365.00 | | | | | $365.00 |
| Target Corporation | 1000 Nicollet Mall | | Minneapolis | MN | 55403-0000 | | | | | | | | $8.23 | | | | | $8.23 |
| Taz Plumbing | 407 Whitney St | | San Leandro | CA | 94577-0000 | | | | | | | | $2,900.00 | | | | | $2,900.00 |
| Teamviewer | 5741 Rio Vista Drive | | Largo | FL | 33760-0000 | | | | | | | | $1,956.00 | | | | | $1,956.00 |
| Terminix Pest Control | P.O. Box 742592 | | Cincinnati | OH | 45274-2592 | | | | | | | | $174.00 | | | | | $174.00 |
| The Cult Creatives, LLC | 2801 East Spring St | #275 | Long Beach | CA | 90806-0000 | | | | | | | | $3,000.00 | | | | | $3,000.00 |
| The Production Truck Inc. | 1120 Chestnut St. | | Burbank | CA | 91506-0000 | | | | | | | | $320.50 | | | | | $320.50 |
| The Toll Roads | P.O. Box 57011 | | Irvine | CA | 92619-0000 | | | | | | | | $1,794.20 | | | | | $1,794.20 |
| Thomas Love | 385 S Lemon Ave | #234 | Walnut | CA | 91789-0000 | | | | | | | | $14,435.49 | | | | | $14,435.49 |
| Thompson Hine | 335 Madison Avenue | 12th Floor | New York | NY | 10017-0000 | | | | | | | | $535,955.77 | | | | | $535,955.77 |
| Toll Tech | 9265 Research Drive | | Irvine | CA | 92618-0000 | | | | | | | | $97,754.17 | | | | | $97,754.17 |
| Toshiba Business Solutions, USA | File 57202 | | Los Angeles | CA | 90074-7202 | | | | | | | | $235.27 | | | | | $235.27 |
| Toshiba Financial Services | P.O. Box 790448 | | ST Louis | MO | 63179-0000 | | | | | | | | $2,558.01 | | | | | $2,558.01 |
| Towns & Country Event Rentals, Inc. | 7725 Airport Business Park Way | | Van Nuys | CA | 91406-0000 | | | | | | | | $1,388.00 | | | | | $1,388.00 |
| UniFirst Corp | 14266 Catalina Street | | San Leandro | CA | 94577-0000 | | | | | | | | $4,768.26 | | | | | $4,768.26 |
| United Lock and Safety | 3401 Sirius Ave | Suite 9 | Las Vegas | NV | 89102-0000 | | | | | | | | $104.00 | | | | | $104.00 |
| Valvoline Instant Oil Change | P.O. Box 74008513 | | Chicago | IL | 60674-0000 | | | | | | | | $166.36 | | | | | $166.36 |
| Vegas Godspeed, LLC | 6763 W. Charleston Blvd. | | Las Vegas | NV | 89146-0000 | | | | | | | | $32.61 | | | | | $32.61 |
| Verizon Wireless | PO BOX 660108 | | Dallas | TX | 75266-0108 | | | | | | | | $401.50 | | | | | $401.50 |
| Vicente Sederberg LLP | 455 Sherman St | Suite 390 | Denver | CO | 80203-0000 | | | | | | | | $911.68 | | | | | $911.68 |

Exhibit 2

| Creditor | Address1 | Address2 | City | State | Zip | FILED CLAIM | | | | | SCHEDULED CLAIM | | | | OBJECTION | PROPOSED TREATMENT OF CLAIM | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | U S D | Basis of Objection, if Any | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount |
| Vvanet Security | Lock Pox 912730 | | Pasadena | CA | 91110-0000 | | | | | | | | $2,518.36 | | | | | $2,518.36 |
| WAMCO | 17752 Fitch | | Irvine | CA | 92614-0000 | | | | | | | | $29,165.00 | | | | | $29,165.00 |
| Washoe County Treasurer | P.O. Box 30039 | | Reno | NV | 89520-3039 | | | | | | | | $1,401.67 | | | | | $1,401.67 |
| WCC MGMT LLC | 2505 Front St | | W. Sacramento | CA | 95691-0000 | | | | | | | | $0.00 | | | | | $0.00 |
| We Architects Group | 7545 Irvine Center Dr. | Suite 200 | Irvine | CA | 92618-0000 | | | | | | | | $3,800.00 | | | | | $3,800.00 |
| Westland Mechanical, LLC | 12223 Highland Avenue | #106-569 | Rancho Cucamonga | CA | 91739-0000 | | | | | | | | $14,500.00 | | | | | $14,500.00 |
| Wex Bank | P.O. Box 4337 | | Carol Stream | IL | 60197-4337 | | | | | | | | $266.00 | | | | | $266.00 |
| WGS Group, Inc | 9454 Wilshire Blvd | | Beverly Hills | Ca | 90212-0000 | | | | | | | | $135,572.42 | | | | | $135,572.42 |
| Wolf Rifkin Sharpiro Schulman & Rabkin | 11400 W. Olympic Blvd. | 9th Floor | Los Angeles | CA | 90064-0000 | | | | | | | | $18,691.97 | | | | | $18,691.97 |
| Woodruff-Sawyer & Co. | P.O. Box 45057 | | SAN FRANCISCO | CA | 94145-9950 | | | | | | | | $10,300.00 | | | | | $10,300.00 |
| Workiva Inc. | 2900 University Blvd | | Ames | IA | 50010-0000 | | | | | | | | $18,960.00 | | | | | $18,960.00 |
| YHLA Architects | 1617 Clay Street | | Oakland | CA | 94612-0000 | | | | | | | | $1,235.00 | | | | | $1,235.00 |
| Zuber Lawler Del Duca LLP | 350 S Grand Ave | Ave Suite 3200 | Los Angeles | CA | 90071-0000 | | | | | | | | $9,605.42 | | | | | $9,605.42 |
| Sterling Harlan | 540 N. Golden Cir. Dr. | Suite 303 | Santa Ana | CA | 92705 | 3 | 11/21/24 | | | ########### | | | | | Duplicate | | | $3,600,000.00 |
| Matthew Guild | 540 N. Golden Cir. Dr. | Suite 303 | Santa Ana | CA | 92705 | 4 | 11/21/24 | | | $900,000.00 | | | | | Duplicate | | | $900,000.00 |
| Uline | 12575 Uline Dr. | | Pleasant Prairie | WI | 53158 | 7 | 11/26/24 | | | $25,010.70 | | | | | | | | $25,010.70 |
| Amex TRS Co., Inc. | Becket and Lee LLP | PO Box 3001 | Malvern | PA | 19355-0701 | 10 | 12/6/24 | | | $1,286.72 | | | | | | | | $1,286.72 |
| Creditors Adjustment Bureau, Inc. | Attn: Kenneth J. Freed | 4340 Fulton Ave., 3d Floor | Sherman Oaks | CA | 91423 | 12 | 1/2/25 | | | $127,803.45 | | | | | | | | $127,803.45 |

Exhibit 2

# EXHIBIT "3"

### UNRIVALED BRANDS, INC., *ET AL.* CREDITOR TRUST AGREEMENT AND DECLARATION OF TRUST

This Creditor Trust agreement and declaration of trust (the "<u>Agreement</u>"), dated as of _____, 2025, is made by and between Unrivaled Brands, Inc. and Halladay Holdings, LLC (collectively, the "<u>Debtors</u>"), and _____ (the "<u>Trustee</u>," and together with the Debtors, the "<u>Parties</u>").

### RECITALS

A.     On November 6, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Northern Division (the "<u>Bankruptcy Court</u>").  The Debtors' chapter 11 cases are being jointly administered under Case No.: 2:24-bk-19227-BB.

B.     On December 4, 2024, the Bankruptcy Court entered an order approving the employment of Levene Neale Bender Yoo & Golubchik L.L.P. ("<u>LNBYG</u>") as counsel to the Debtors.

C.     On February 4, 2025, the Debtors filed their Joint Chapter 11 Plan [Docket No. \_\_] and Disclosure Statement Describing the Plan [Docket No. \_\_\_].

D.     On \_\_\_\_\_, 2025, the Bankruptcy Court entered an order (the "<u>Confirmation Order</u>") [Docket No. \_\_\_] confirming the Plan, which became effective on \_\_\_\_\_, 2025  (the "<u>Effective Date</u>").

E.     The Plan provides for the establishment of a Liquidating Trust (the "<u>Trust</u>") upon the Effective Date of the Plan.

F.     The Confirmation Order provides for the appointment of the Trustee as trustee of the Trust, and the Plan and this Agreement provide for the appointment as necessary of any successor to the Trustee.

G.      The Trust is established for the benefit of the Holders of Allowed Claims.

H.      The Trust is established for the purpose of collecting, holding, administering,
distributing, and liquidating the Trust Assets (defined in Article 1.3 of this Agreement) for the
benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and
the Plan and with no objective to continue or engage in the conduct of a trade or business, except
to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

I.      Pursuant to the Plan, the Debtors, Trust, Trustee, and Beneficiaries are required to
treat, for all federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer
of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims,
followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the
beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Trust
for federal income tax purposes.

J.      The Trust is intended for federal income tax purposes (i) to be treated as a grantor
trust within the meaning of sections 671-677 of the Internal Revenue Code of 1986, as amended
("IRC"), and also (ii) to qualify as a liquidating trust within the meaning of Treasury Regulation
section 301.7701-4(d).

K       The Trust is further intended to be exempt from the requirements of (i) pursuant
to section 1145 of the Bankruptcy Code, the Securities Exchange Act of 1933, as amended, and
any applicable state and local laws requiring registration of securities, and (ii) the Investment
Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section
1145 of the Bankruptcy Code.

**NOW, THEREFORE**, in accordance with the Plan and the Confirmation Order, and in
consideration of the premises, and the mutual covenants and agreements of the Parties contained

in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## <u>DECLARATION OF TRUST</u>

The Debtors and the Trustee enter into this Agreement for the purposes of collecting, holding, administering, distributing, and liquidating the Trust Assets for the benefit of the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to Article ___ of the Plan, paragraphs __ and __ of the Confirmation Order, and section 2.3 of this Agreement, all right, title, and interest in, under, and to the Trust Assets shall be absolutely and irrevocably assigned to the Trust and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust;

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth herein and for the benefit of the holders of allowed Claims, as and to the extent provided in the Plan, and for the performance of and compliance with the terms hereof and of the Plan;

PROVIDED, HOWEVER, that upon termination of the Creditor Trust, this Agreement shall cease, terminate, and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Trust Assets and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, "<u>Trust Assets</u>") are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein and in the Plan, solely for the benefit of the Beneficiaries and for no other party.

## ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS, AND INTERPRETATION

3

1.1    <u>Recitals</u>. The Recitals are incorporated into and made terms of this Agreement.

1.2    <u>Use of Plan Definitions</u>. All terms which are used in this Agreement and not defined herein shall have the same meaning set forth in the Plan.

1.3    <u>Definitions</u>. For purposes of this Agreement, "<u>Trust Assets</u>" means all assets of the Debtors transferred to the Trust on the Effective Date of the Plan pursuant to Article _____ of the Plan.

1.4    <u>Interpretation; Headings</u>. All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.5    <u>Conflict Among Plan Documents</u>. In the event of any inconsistency between the Plan or Confirmation Order, as applicable, on the one hand, and this Agreement, on the other hand, the Plan or Confirmation Order, as applicable, shall control and take precedence.

**ARTICLE II**

**ESTABLISHMENT OF TRUST**

2.1    <u>Effectiveness of Agreement; Name of Trust</u>. This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "Unrivaled Creditor Trust."

2.2    <u>Purpose of Trust</u>. The Debtors and the Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Trust for the primary purpose of collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of

the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan, and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

    2.3    Transfer of Trust Assets.

    2.3.1    Conveyance of Trust Assets. The Debtors hereby grant, release, assign, transfer, convey, and deliver, on behalf of the Beneficiaries, the Trust Assets to the Trust as of the Effective Date in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement and the Plan.  The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers.

    2.3.2    Title to Trust Assets. Pursuant to the Plan, all of the Debtors' right, title and interest in and to the Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date, free and clear of all liens, claims, encumbrances and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the Beneficiaries to establish the Trust.  The Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties; file, litigate, and settle objections to Disputed Claims; and pursue the Estate Causes of Action.  On the Effective Date, the Trust shall stand in the shoes of the Debtors for all purposes with respect to the Trust Assets and administration of the Claims.  To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtors to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole

use and purposes set forth in section 2.2 hereof, this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.4     Capacity of Trust. Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5     No Retention of Excess Cash. Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Trust or Trustee retain cash or cash equivalents in excess of a reasonable amount to meet claims, expenses, and contingent liabilities or to maintain the value of the Trust Assets during liquidation other than reserves established pursuant to section 4.1.2 of this Agreement, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

2.6     Acceptance by Trustee. The Trustee accepts his appointment as Trustee of the Trust.

**ARTICLE III**

**ADMINISTRATION OF TRUST**

3.1    <u>Rights, Powers, and Privileges of Trustee Generally</u>. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the Trust.  In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1    <u>Power to Contract</u>. In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2    <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

3.2    <u>Powers of Trustee</u>. Without limiting the generality of the above section 3.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in

its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust,
unless otherwise specifically limited or restricted by the Plan or this Agreement:

      3.2.1    hold legal title to the Trust Assets and to any and all rights of the Debtors
and the Beneficiaries in or arising from the Trust Assets;

      3.2.2    receive, manage, invest, supervise, protect, and where appropriate, cause
the Trust to abandon the Trust Assets, including causing the Trust to invest any moneys held as
Trust Assets in accordance with the terms of section 3.7 hereof;

      3.2.3    open and maintain bank accounts on behalf of or in the name of the Trust;

      3.2.4    cause the Trust to enter into any agreement or execute any document or
instrument required by or consistent with the Plan, the Confirmation Order or this Agreement,
and to perform all obligations thereunder;

      3.2.5    collect and liquidate all Trust Assets, including the Estate Causes of
Action (as defined in the Plan);

      3.2.6    protect and enforce the rights to the Trust Assets (including the Estate
Causes of Action) vested in the Trust and Trustee by this Agreement by any method deemed
appropriate, including, without limitation, by judicial proceedings or otherwise;

      3.2.7    investigate any Trust Assets, including the Estate Causes of Action, and
any objections to Claims, and cause the Trust to seek the examination of any Person pursuant to
Federal Rule of Bankruptcy Procedure 2004 or otherwise;

      3.2.8    cause the Trust to employ and pay professionals, claims agents, disbursing
agents, and other agents and third parties pursuant to this Agreement;

      3.2.9    cause the Trust to pay all of its lawful expenses, debts, charges, taxes and
other liabilities, and make all other payments relating to the Trust Assets;

3.2.10  cause the Trust to pursue, commence, prosecute (and shall take over, and continue prosecuting, any outstanding claim objections initiated by the Debtors or any other representative of the Estates), compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve the Estate Causes of Action;

3.2.11  calculate and make all Distributions (as defined in the Plan) on behalf of the Trust to the Beneficiaries provided for in, or contemplated by, the Plan and this Agreement;

3.2.12  establish, adjust, and maintain reserves for Disputed Claims required to be administered by the Trust;

3.2.13  cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.14  in reliance initially solely upon the Debtors' Schedules and the official claims registers maintained in the Debtors' bankruptcy cases, review, and where appropriate, cause the Trust to allow or object to Claims and Interests; and supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims required to be administered by the Trust;

3.2.15  in reliance upon the Debtors' Schedules and the official Claims registers maintained in the Chapter 11 Cases, maintain a register evidencing the beneficial interest herein held by each Beneficiary and, in accordance with section 3.8 of this Agreement, such register may be the official Claims register maintained in the Chapter 11 Cases;

3.2.16 cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof, and pay taxes, if any, payable for and on behalf of the Trust; provided, however, that notwithstanding any other provision of this Agreement, the Trustee shall have no personal responsibility for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

3.2.17 cause the Trust to abandon or donate to the ABI Endowment Fund any Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries;

3.2.18 cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.2.19 cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.20 cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.21 cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

10

3.2.22  if the Trustee has a conflict or if any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction in accordance with the terms of this Agreement;

3.2.23  undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust; and

3.2.24  take all other actions consistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3     <u>Exclusive Authority to Pursue Estate Causes of Action</u>. The Trust shall have the exclusive right, power, and interest to pursue, settle, waive, release, abandon, or dismiss the Estate Causes of Action. The Trust shall be the sole representative of the Estate under section 1123(b)(3) of the Bankruptcy Code with respect to the Estate Causes of Action.

3.4     <u>Abandonment</u>. If, in the Trustee's reasonable judgment, any non-cash Trust Assets cannot be sold in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to the ABI Endowment Fund.

3.5     <u>Responsibility for Administration of Claims</u>. As of the Effective Date, the Trust shall become responsible for administering and paying Distributions to the Beneficiaries.  The Trust shall have the right to object to the allowance of any Claim on any ground and shall be entitled to assert all defenses of the Debtors and its Estate.  The Trust shall also be entitled to assert all of the Estate's rights under, without limitation, section 558 of the Bankruptcy Code.

The Trust may also seek estimation of any Claims under and subject to section 502(c) of the Bankruptcy Code.

3.6     <u>Agents and Professionals</u>. The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Debtors.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trustee from engaging counsel or other professionals, including the Trustee itself or the Trustee's firm or their affiliates, to do work for the Trust.  The Trustee may pay the reasonable salaries, fees, and expenses of such Persons out of the Trust Assets in the ordinary course of business.

3.7     <u>Safekeeping and Investment of Trust Assets</u>.   All moneys and other assets received by the Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets, unless and to the extent required by law or the Plan. The Trustee shall not be under any obligation to invest Trust Assets.  Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for Distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan.  Except as otherwise provided by the Plan, the powers of the Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; <u>provided, however,</u> that the scope of

permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.8     <u>Maintenance and Disposition of Trust Records</u>. The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust. The books and records maintained by the Trustee may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries or (ii) upon the termination and completion of the winding down of the Trust.

3.9     <u>Conflicts of Interest</u>. The Trustee will appoint a disinterested Person to handle any matter where the Trustee has identified a conflict of interest or the Bankruptcy Court, on motion of a party in interest, determines one exists. In the event the Trustee is unwilling or unable to appoint a disinterested Person to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.

3.10     <u>No Bond Required; Procurement of Insurance</u>. Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond. The Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee

and its agents, representatives, employees or independent contractors under this Agreement.  The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

**ARTICLE IV**

**DISTRIBUTIONS**

4.1    <u>Distribution and Reserve of Trust Assets</u>. Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Trust Assets, subject to the reserves required under the Plan or this Agreement.

4.1.1    <u>Distributions</u>. The Trustee shall cause the Trust to distribute the Trust's net Cash income and net Cash proceeds from the liquidation of the Trust Assets to the Beneficiaries, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust and Trustee, and retention of such amount may preclude Distributions to the Beneficiaries.

4.1.2    <u>Reserves; Pooling of Reserved Funds</u>. Before any Distribution can be made, the Trustee shall, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the Trust, including attorneys' fees and expenses, the fees and expenses of other professionals, and fees owed to the United States Trustee.  The Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; <u>provided</u>, <u>however</u>, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

14

4.1.3   <u>Distributions Net of Reserves and Costs</u>. Distributions shall be made net of reserves in accordance with the Plan and also net of the actual and reasonable costs of making the Distributions.

4.1.4   <u>Right to Rely on Professionals</u>. Without limitation of the generality of section 6.6 of this Agreement, in determining the amount of any Distribution or reserves, the Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

4.2   <u>Method and Timing of Distributions</u>. Distributions to the Beneficiaries will be made from the Trust in accordance with the terms of the Plan (in particular, Article ___) and this Agreement.   The Trust may engage disbursing agents and other Persons to help make Distributions.

4.3   <u>Withholding from Distributions</u>. The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary.   The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.

4.4   <u>Tax Identification Numbers</u>. The Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service and may condition any Distribution to any Beneficiary upon receipt of such identification number.  If a Beneficiary does not timely provide the Trustee with its taxpayer identification number in the

manner and by the deadline established by the Trustee, then the Distribution to such Beneficiary shall be administered in accordance with section 4.5 of this Agreement.

4.5    <u>Unclaimed and Undeliverable Distributions</u>. If any Distribution to a Beneficiary is returned to the Trustee as undeliverable or is otherwise unclaimed, no further Distributions to such Beneficiary shall be made unless and until the Beneficiary claims the Distributions by timely notifying the Trustee in writing of any information necessary to make the Distribution to the Beneficiary in accordance with this Agreement, the Plan, and applicable law, including such Beneficiary's then-current address or taxpayer identification number. If the Beneficiary timely provides the Trustee such missing information, all missed Distributions shall be made to the Beneficiary as soon as is practicable, without interest. Undeliverable or unclaimed Distributions shall be administered in accordance with Article _____ of the Plan.

4.5.1    <u>No Responsibility to Attempt to Locate Beneficiaries</u>. The Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.5.2    <u>Disallowance of Claims; Cancellation of Corresponding Beneficial Interests</u>. All Claims in respect of undeliverable or unclaimed Distributions that pursuant to Article ____ of the Plan have become unclaimed property under section 347(b) of the Bankruptcy Code, shall be deemed Disallowed and expunged, and the corresponding beneficial interests in the Trust of the Beneficiary holding such Disallowed Claims shall be deemed canceled. The Holder of any such Disallowed Claim shall no longer have any right, claim, or interest in or to any Distributions in respect of such Disallowed Claims. The Holder of any such Disallowed Claim is forever barred, estopped, and enjoined from receiving any Distributions under this Agreement and from asserting such Disallowed Claim against the Trust or Trustee.

4.5.3    <u>Inapplicability of Unclaimed Property or Escheat Laws</u>. Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit.

4.6    <u>Voided Checks</u>. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Distributions in respect of voided checks shall be treated as unclaimed Distributions under the Plan and administered under section 4.5 of this Agreement and Article ___ of the Plan.

4.7    <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.7.1    The Trustee may elect to cause the Trust to make no payment or Distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.7.2    The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or (ii) all differences have been resolved by a valid written agreement among all such parties to the

satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee.  Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the beneficial interest in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee.  The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

       4.7.3    In acting or refraining from acting under and in accordance with section 4.7 of this Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person to the extent set forth in Article 6 of this Agreement.

       4.8     <u>Priority of Expenses of Trust</u>. The Trust must pay or reserve for all of its expenses before making Distributions.

## ARTICLE V

## BENEFICIARIES

       5.1     <u>Interest Beneficial Only</u>. The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

       5.2     <u>Ownership of Beneficial Interests Hereunder</u>. Each Beneficiary shall own a beneficial interest herein which shall, subject to section 4.1 herein and the Plan, be entitled to a Distribution in the amounts, and at the times, set forth in the Plan.

       5.3     <u>Evidence of Beneficial Interest</u>. Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4    <u>No Right to Accounting</u>. Except as set forth in section 8.4 of this Agreement, neither the Beneficiaries nor their successors, assigns, creditors, or any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or Distribution out of proceeds of Trust Assets.

5.5    <u>No Standing</u>. Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

5.6    <u>Requirement of Undertaking</u>. The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; <u>provided</u>, <u>however</u>, that the provisions of this section 5.6 shall not apply to any suit by the Trustee.

5.7    <u>Limitation on Transferability</u>. It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries

until receipt of proper notification and proof of assignment by operation of law. The Trustee may rely upon such proof without the requirement of any further investigation.

5.8    Exemption from Registration. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

5.9    Delivery of Distributions. Subject to the terms of this Agreement, the Trustee shall cause the Trust to make Distributions to the Beneficiaries in the manner provided in the Plan.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1    Parties Dealing With the Trustee. In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2    Limitation of Trustee's Liability. In exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded. But, notwithstanding anything herein or in the Plan to the contrary, neither the Trustee, nor its firms, companies,

affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered. In no event shall the Trustee be liable for indirect, punitive, special, incidental or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action.

6.3     No Liability for Acts of Other Persons. None of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4     No Liability for Acts of Predecessors. No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.5     No Liability for Good Faith Error of Judgment. The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent or engaged in willful misconduct in ascertaining the pertinent facts.

6.6    <u>Reliance by Trustee on Documents and Advice of Counsel or Other Persons</u>.

Except as otherwise provided herein, the Trustee may rely and shall be protected in acting upon

any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order,

or other paper or document believed by them to be genuine and to have been signed or presented

by the proper party or parties.  The Trustee also may engage and consult with its legal counsel

and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered by

them in reliance upon the advice of such counsel, agents, or advisors.

6.7    <u>No Liability For Acts Approved by Bankruptcy Court</u>. The Trustee shall have the

right at any time to seek instructions from the Bankruptcy Court concerning the administration or

disposition of the Trust Assets and the Claims required to be administered by the Trust.  The

Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy

Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud,

gross negligence, or willful misconduct.

6.8    <u>No Personal Obligation for Trust Liabilities</u>. Persons dealing with the Trustee

shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any

such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal,

individual obligation to satisfy any such liability.

6.9    <u>Indemnification</u>. The Trustee and its firms, companies, affiliates, partners,

officers, directors, members, employees, professionals, advisors, attorneys, financial advisors,

investment bankers, disbursing agents, or agents and any of such parties' successors and assigns

(collectively, the "<u>Indemnified Parties</u>" and each, an "<u>Indemnified Party</u>") shall, to the fullest

extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust

from time to time and receive reimbursement from and against any and all loss, liability, expense

(including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under this Agreement or in rendering services by the Indemnified Party to the Trust or the Trustee (the "Indemnified Conduct"), including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

6.9.1 Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this section 6.9 shall be an expense of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust.  The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.9.2 Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 6.9 on submission of invoices for such amounts by the Indemnified Party. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay

such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

6.10    <u>No Implied Obligations</u>. The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

6.11    <u>Confirmation of Survival of Provisions</u>. Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

**ARTICLE VII**

**TAX MATTERS**

7.1    <u>Tax Treatment of Trust</u>. Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust. The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

24

7.2    <u>Annual Reporting and Filing Requirements</u>. Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

7.3    <u>Tax Treatment of Reserves for Disputed Claims</u>. The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any reserve for Disputed Claims, including (i) filing a tax election to treat any and all reserves for Disputed Claims as a Disputed Ownership Fund ("<u>DOF</u>") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

7.4    <u>Valuation of Trust Assets</u>. After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Trust Assets as of the Effective Date, based on the Trustee's good faith determination, and (b) establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

**ARTICLE VIII**

**SELECTION, REMOVAL, REPLACEMENT, AND COMPENSATION OF TRUSTEE**

25

8.1    <u>Initial Trustee</u>.  The Trustee has been selected by the Debtors and is appointed effective as of the Effective Date.  The initial trustee shall be the Trustee.

8.2    <u>Term of Service</u>.  The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, incapacity or removal.  In the event the Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of termination, whether or not previously invoiced.  The provisions of Article VI of this Agreement shall survive the resignation or removal of any Trustee.

8.3    <u>Removal of Trustee</u>. Any Person serving as Trustee may be removed at any time for cause. Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

8.4    <u>Resignation of Trustee</u>. The Trustee may resign at any time on written notice to the parties listed in Article ____ of the Plan (the "<u>Post-Effective Date Notice Parties</u>"), and through the filing of a notice with the Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty days (30) after the date such notice is filed with the Bankruptcy Court.  In the event of a resignation, the resigning Trustee shall render to the Post-Effective Date Notice Parties a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

8.5     <u>Appointment of Successor Trustee</u>. Upon the resignation, death, incapacity, or removal of a Trustee, a successor Trustee shall be appointed by the Trustee after notice to the Post-Effective Date Notice Parties.  In the event no party in interest seeks the appointment of a successor Trustee, the Bankruptcy Court may do so on its own motion.  Any successor Trustee so appointed shall consent to and accept its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee.  Any successor Trustee may be appointed to serve only on an interim basis.

8.6     <u>Powers and Duties of Successor Trustee</u>. A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7     <u>Trust Continuance</u>. The resignation, death, incapacitation, dissolution, liquidation, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8     <u>Compensation of Trustee and Costs of Administration</u>. The Trustee shall receive fair and reasonable compensation for its services, which shall be a charge against and paid out of the Trust Assets.  All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Trust Assets prior to any Distribution to the Beneficiaries. The terms of the compensation of the Trustee and the timing and manner of payment are set forth on Exhibit __ hereto.

27

8.9    Appointment of Supplemental Trustee. If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "Supplemental Trustee") in such state or jurisdiction and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  The Trustee may confer upon such Supplemental Trustee all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary).  The Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all the Trust Assets by the Supplemental Trustee.  The Trustee may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE IX

## DURATION OF TRUST

9.1    Duration. Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

9.2    Termination On Payment of Trust Expenses and Distribution of Trust Assets. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the Distribution of all Trust Assets in accordance with the

28

provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3     Termination After Five Years. If the Trust has not been previously terminated pursuant to Article 9.2 hereof, on the fifth anniversary of the Effective Date, and unless the Trust term has been extended (such extension to be approved by the Bankruptcy Court within six months of the beginning of the extended term), the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan, and immediately thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in section 9.5 of this Agreement.

9.4     No Termination by Beneficiaries. The Trust may not be terminated at any time by the Beneficiaries.

9.5     Continuance of Trust for Winding Up; Discharge and Release of Trustee. After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed.  Except as otherwise specifically provided herein, upon the Distribution of the Trust Assets including all excess reserves, the Trustee, and the Trust's professionals and agents shall be deemed discharged under this Agreement and have no further duties or obligations hereunder. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, and the Trust's professionals and agents of any further duties, discharging and releasing the Trustee from all liability related to the Trust, and releasing the Trustee's bond, if any.

**ARTICLE X**

29

# MISCELLANEOUS

10.1    <u>Cumulative Rights and Remedies</u>. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2    <u>Notices</u>. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Beneficiaries at the addresses appearing on the books kept by the Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

<u>Debtors</u>:

Unrivaled Brands, Inc. & Halladay Holding LLC
Attn:
[address]
[address]

With a copy to:

Attn:
[address]
[address]

or to such other address as may from time to time be provided in written notice by the Trustee.

10.3    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to rules governing the conflict of laws.

10.4    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.5    <u>Particular Words</u>. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof,"

30

"herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.6     Execution. All funds in the Trust shall be deemed in custodia legis until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this Agreement.

10.7     Amendment. This Agreement may be amended by written agreement of the Trustee and by order of the Bankruptcy Court; provided, however, that such amendment may not be inconsistent with the Plan or Confirmation Order.

10.8     No Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.9     No Relationship Created. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

10.10    Severability. If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.11    Further Assurances. Without limitation of the generality of section 2.4 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent

and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

10.12   Counterparts. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.13   Jurisdiction. The Bankruptcy Court shall have jurisdiction over the Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.   The Bankruptcy Court shall have exclusive jurisdiction and venue to hear and finally determine all matters among the Parties arising out of or related to this Agreement or the administration of the Trust.

IN   WITNESS   WHEREOF,   the   Parties   have   or   are   deemed   to   have   executed   this Agreement as of the day and year written above.

_____
SABAS CARRILLO
ADNANT LLC
CHIEF RESTRUCTURING OFFICER
UNRIVALED BRANDS, INC.
HALLADAY HOLDING, LLC

# EXHIBIT "4"

## **Unrivaled Brands, Inc., and Halladay Holding, LLC**

### **Executory Contracts and Unexpired Leases**

| Contract/Lease | Counterparty | Assume or Reject | Cure Amount |
|---|---|---|---|
| TBD | TBD | TBD | TBD |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document **Debtors' Joint  Chapter 11 Plan, Dated February 4, 2025** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 4, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Reem J Bello     rbello@goeforlaw.com, kmurphy@goeforlaw.com**
- **Robert Carrasco     rmc@lnbyg.com, rmc@lnbyg.com**
- **John-Patrick M Fritz     jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Robert P Goe     kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com**
- **David Samuel Shevitz     David.S.Shevitz@usdoj.gov**
- **United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov**
- **Daniel Wall     dwall@wallinrussell.com**
- **Pamela Kohlman Webster     pwebster@buchalter.com, smartin@buchalter.com**

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On **February 4, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| | |
|---|---|
| The Honorable Sheri Bluebond<br>United States Bankruptcy Court<br>Central District of California<br>Edward R. Roybal Federal Building and Courthouse<br>255 E. Temple Street, Suite 1534 / Courtroom 1539<br>Los Angeles, CA 90012 | Securities Exchange Commission<br>444 S. Flower Street<br>Suite 900<br>Los Angeles, CA 90071 |

☐ *Additional service on attached page*

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 4, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 4, 2025 | J. Klassi | /s/ J. Klassi |
|---|---|---|
| *Date* | *Type Name* | *Signature* |