JOHN-PATRICK M. FRITZ (SBN 245240)
ROBERT M. CARRASCO (SBN 334642)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  JPF@LNBYG.COM

Attorneys for Chapter 11 Debtors
and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

In re:

UNRIVALED BRANDS, INC.,

　　　　Debtor and Debtor in Possession.

_____

In re:

HALLADAY HOLDING, LLC,

　　　　Debtor and Debtor in Possession.

_____

☒ Affects both Debtors
☐ Affects Unrivaled Brands, Inc. only
☐ Affects Halladay Holding, LLC only

) Lead Case No.: 2:24-bk-19127-BB
)
) Jointly administered with Halladay Holding
) LLC (2:24-bk-19128-BB)
)
) Chapter 11 Case
)
) **DISCLOSURE STATEMENT**
) **DESCRIBING DEBTORS' JOINT**
) **CHAPTER 11 PLAN, DATED**
) **FEBRUARY 4, 2025**
)
) <u>Hearing on Adequacy of Disclosure</u>
) <u>Statement</u>:
) Date:  TBD
) Time: TBD
)
) <u>Hearing on Plan Confirmation</u>:
) Date:  TBD
) Time:  TBD
)
) Place:  Courtroom 1539
)　　　　255 East Temple Street
)　　　　Los Angeles, CA 90012
)
)
)
)
)
)
)
)

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................... 2

        A.      The Disclosure Statement Describes the Plan............................ 2

        B.      The Effective Date of the Plan .................................................... 2

        C.      Purpose of this Disclosure Statement ........................................ 3

        D.      Deadline for Voting and Objecting; Date of Plan Confirmation
                Hearing ....................................................................................... 4

        E.      Identity of Persons to Contact for More Information
                Regarding the Plan ..................................................................... 5

        F.      Disclaimer .................................................................................. 5

II.     BACKGROUND .................................................................................... 5

        A.      General Background and Events Leading to Bankruptcy ....... 5

        B.      Prepetition Litigation With Peoples California LLC.............. 7

        C.      The Debtors' Primary Assets .................................................. 15

III.    PLAN SUMMARY .............................................................................. 23

        A.      Summary of Plan Classes .......................................................... 23

        B.      What Creditors Will Receive Under the Plan ........................ 24

        C.      Means of Effectuating and Implementing the Plan................. 35

IV.     LIQUIDATING TRUST ....................................................................... 42

V.      TAX CONSEQUENCES OF THE PLAN ........................................... 47

VI.     CONFIRMATION REQUIREMENTS AND PROCEDURES ......... 50

VII.     RISK FACTORS REGARDING THE PLAN ................................... 56

VIII.   EFFECT OF CONFIRMATION OF THE PLAN .............................. 56

# I.    **INTRODUCTION**[1]

Unrivaled Brands, Inc., a Nevada corporation ("Unrivaled") and Halladay Holding, LLC, a California limited liability company ("Halladay" and with Unrivaled, collectively the "Debtors"), are the debtors and debtors in possession in the above-captioned, jointly administered chapter 11 bankruptcy cases (the "Bankruptcy Cases") bearing case numbers 2:24-bk-19227-BB and 2:24-bk-19228-BB.  The Debtors filed voluntary petitions under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on November 6, 2024 (the "Petition Date").  The Debtors are managing their affairs and administering their estates as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No official committee of creditors has been formed, and no trustee has been appointed in these Bankruptcy Cases.

## A.    The Disclosure Statement Describes the Plan

**This document is the Disclosure Statement, which describes the Debtors' plan of liquidation (the "Plan")**.  Chapter 11 allows debtors and, under some circumstances, creditors and other parties in interest, to propose a plan of liquidation. The Plan is a liquidation plan with a "pot plan" distribution to pay creditors shortly after the Effective Date and establish a liquidating trust (the "Liquidating Trust") with a liquidation trustee ("Liquidation Trustee") to monetize assets of the estates and distribute them to creditors.

On the Effective Date, the Liquidating Trust shall be vested with all of the Debtors' assets and assume all liabilities as restructured under the Plan.  The Debtors will sign any reasonable documentation as requested by the Liquidating Trustee or required by law to effectuate the acquisition of assets and assumption of liabilities under the Plan.

## B.    The Effective Date of the Plan

---

[1] Defined terms used in the "Introduction" have the meanings ascribed to them elsewhere in the Disclosure Statement.

The effective date (the "<u>Effective Date</u>") of the Plan shall be the first day after the Court enters an order (the "<u>Confirmation Order</u>") confirming the Plan and all of the following conditions have been satisfied or waived as specified below: (1) all documents, instruments, and agreements to be executed in connection with the Plan shall have been executed and delivered by all parties to such documents, instructions, and agreements; (2) 14 days following the entry of the Plan Confirmation Order shall have passed without an appeal of said order having been filed; (3) the Plan is not subject to an appeal or rehearing; and (4) there is no stay in effect with respect to the Plan Confirmation Order.  Conditions numbered (1) and (3) above can be waived by the Debtors in their sole discretion.  Condition number (2) above can be waived by request of the Debtors with an order by the Bankruptcy Court pursuant to Rule 3020(e) of the Federal Rules of Bankruptcy Procedure.  Condition number (4) cannot be waived.

**C.**     **<u>Purpose of this Disclosure Statement</u>**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**<u>READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT</u>:**

**(1)     WHO CAN VOTE ON THE PLAN OR OBJECT TO CONFIRMATION OF THE PLAN**,

**(2)     WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION**,

**(3)     THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASES,**

**(4)     WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

1    **(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

2    **(6)    WHETHER THE PLAN IS FEASIBLE.**

3    This Disclosure Statement cannot tell you everything about your rights.  You should

4    consult your own lawyer to obtain more specific advice on how the Plan will affect you and what

5    is the best course of action for you.

6    Be sure to read the Plan as well as this Disclosure Statement.  If there are any

7    inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

8    The Bankruptcy Code requires a Disclosure Statement to contain "adequate information"

9    concerning the Plan.  The Bankruptcy Court has approved this document as an adequate

10    Disclosure Statement, containing enough information to enable parties affected by the Plan to

11    make an informed judgment about the Plan.

12    **D.    <u>Deadline for Voting and Objecting; Date of Plan Confirmation Hearing</u>**

13    THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

14    DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT

15    YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE

16    PLAN, THEN THE PLAN WILL BE BINDING ON ALL CREDITORS AND INTEREST

17    HOLDERS IN THESE CASES.

18    (i)    <u>Time and Place of the Plan Confirmation Hearing</u>

19    The hearing where the Court will determine whether or not to confirm the Plan (the "<u>Plan</u>

20    <u>Confirmation Hearing</u>") will take place on **[Month, Day], 2025, at     :00 .m.,** before the

21    Honorable Sheri Bluebond, United States Bankruptcy Judge for the Central District of California,

22    in Courtroom 1539 on the 15th Floor of the United States Bankruptcy Courthouse located at 255

23    East Temple Street, Los Angeles, California 90012.  However, please check the Court's website

24    and tentative rulings regarding whether you are permitted to appear in-person or by zoom

25    videoconference.

26    (ii)    <u>Deadline for Voting for or Against the Plan</u>

27    If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot

28

4

and return the ballot in the enclosed envelope or by email to J.P. Fritz, Esq., Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Avenue, Los Angeles, California 90034; JPF@LNBYG.COM.

Your ballot must be **received** by **5:00 p.m., PST, on _____, 2025**, or it will not be counted.

(iii)    Deadline for Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served by same day service upon J.P. Fritz, Esq., Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Avenue, Los Angeles, California 90034, fax: (310) 229-1244, email: JPF@LNBYG.COM.  Your objection must be filed and served by **_____, 2025**.

**E.  Identity of Persons to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact J.P. Fritz, Esq., Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Avenue, Los Angeles, California 90034; phone: (310) 229-1234; fax: (310) 229-1244; email: JPF@LNBYG.COM.

**F.  Disclaimer**

The financial data relied upon in formulating the Plan is based on the Debtors' books and records, which, unless otherwise indicated, are unaudited.  The information contained in this Disclosure Statement is provided by the Debtors.  The Debtors represent that everything stated in this Disclosure Statement is true to the Debtors' best knowledge.  The Bankruptcy Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.    **BACKGROUND**

**A.  General Background and Events Leading to Bankruptcy**

1.    Unrivaled is a holding company for the acquisition of multiple businesses acquired from 2018 through 2021.

2.    Unrivaled acquired common shares in a hydro-farming business in August 2018 for $5.0 million, and sold the shares in that company for $40.8 million in June 2021, providing

Unrivaled with substantial funds for new acquisitions.

3.      However, the market in 2021 was unfortunately overinflated on valuations based on historically low interest rates and massive government subsidies, such as stimulus checks and PPP loans, during 2020 and 2021, flooding the overall economy with lots of money which dramatically increased consumer spending driving up business revenue, and as a result several acquisitions in 2021 were at overvalued prices.

4.      In 2022, inflation reached historically high levels not seen in the United States for decades, and in response the Federal Reserve aggressively hiked interest rates.  As consumer spending normalized post-pandemic and post-government subsidies, the market adjusted, the valuation of Unrivaled's portfolio of companies decreased, profitability decreased, and Unrivaled was forced to restructure its portfolio by selling unprofitable companies and attempting to reorganize.

5.      In August 2022, Unrivaled brought in new management with Adnant LLC and its new CEO, Sabas Carrillo to focus Unrivaled on financial stabilization, reduction of liabilities, and operational efficiency.,

6.      During Unrivaled's restructuring process, it encountered bitter activist litigation from People's California LLC ("Peoples"), led by Frank Kavanaugh and his company, Fort Ashford Funds, which has a history of engaging in activist investor tactics, often employing aggressive legal and financial maneuvers to assert control over companies. In 2021, Kavanaugh was labeled an 'activist investor' after planning a proxy battle against Friendly Hills Bancorp, leading to a board restructure and the appointment of Nathan Rogge as CEO. In 2023, Kavanaugh used similar tactics at Medalist Diversified REIT, Inc. (NASDAQ: MDRR), resulting in him becoming Chair of the Board and Interim President and CEO.

7.      People's actions followed this same aggressive pattern as to Unrivaled, employing relentless lawsuits and legal demands that overwhelmed Unrivaled's efforts to stabilize and recover. These challenges were part of a broader strategy to force Unrivaled into unfavorable settlements, contributing significantly to the financial instability that led to the Chapter 11 filing

of Unrivaled and its wholly-owned subsidiary, Halladay Holding, LLC.

8.      Despite the progress made under new leadership, Unrivaled faced relentless legal challenges from People's, which drained financial resources, distracted management, and ultimately made it impossible to stabilize the business.  Among other lawsuits, Peoples filed "People's California LLC v. Unrivaled Brands, Inc., case number 30-2022-01270747-CU-BC-CJC, in the Orange County Superior Court", commencing a plethora of litigation with no end in sight.  Peoples' relentless litigation, in combination with the overvalued 2021 acquisitions, presented too heavy of a debt burden to operationally reorganize, and the focus turned from reorganization to orderly winddown.

### B. Prepetition Litigation With Peoples California LLC

9.      Prepetition, in March 2023, Unrivaled and Peoples entered into a settlement agreement (the "Peoples Settlement").  Although Unrivaled performed on the Peoples Settlement, as explained in greater detail below, Peoples continued to pursue aggressive litigation against the Debtors to undermine the Debtors' asset values, sabotage the Debtors' ability to perform under the settlement, and attempted to cause the Debtors to default so that Peoples would receive a windfall on that default.  Despite Peoples' tortious interference, Unrivaled made substantial progress towards meeting the settlement terms, including the $9 million payment through the forced sale of one of its portfolio companies, People's First Choice ("PFC"), owned 80% by Unrivaled, and 20% by Peoples.

### a. Litigation Related to the Halladay Property

10.      The Peoples Settlement requires Unrivaled to pay to Peoples a total of twenty-three million dollars ($23,000,000), with an "Up-Front Settlement Amount" of eight million dollars ($8,000,000), of which five million dollars ($5,000,000) was to be paid within 90 days, and the other remaining three million dollars ($3,000,000) (the "$3M Note")[2] was secured by Unrivaled permitting Peoples to have a second deed of trust lien (defined in the Peoples Settlement as the "DOT") on Halladay's Property (defined below) for three million dollars ($3,000,000) and to be

---

[2] The $3M Note carries 10% interest per annum.

paid within 180 days.  The Peoples Settlement requires that "Upon payment in full of the $3M Note, the [Halladay] Property DOT…shall be released." Ex. 3 § A.1.a.i.

11.     The parties specifically contemplated that Unrivaled would likely need to sell Halladay's Property to satisfy the portion of the Up-Front Settlement Amount secured by it.  At the same time, they acknowledged that Unrivaled had other creditors to which some of the funds must be paid, specifically the first deed of trust and the third deed of trust (referred to therein as the "NY Lenders") and the balance to be paid to Peoples for whatever amount remained owing on the $3M Note, with the remainder upstreaming as equity to Unrivaled. Ex. 3 at § A.1.c.ii.

12.     While the Peoples Settlement set out a schedule for payment, the parties knew Unrivaled may not be able to make the promised payments, which were dependent on future cash flow.  As a result, the parties built into the Peoples Settlement a specific mechanism to resolve any potential non-payment.  If Unrivaled was *not* able timely to pay the Up-Front Settlement Amount (a "Payment Default"), the parties set out a process to ensure that People's would receive payment through a "forced sale" of the certain other assets (referred to as "Retail Assets" in the Peoples Settlement), primarily the entity People's First Choice, LLC ("PFC"), which was owned 80% by Unrivaled and 20% by Peoples.  The Peoples Settlement also sets out the distribution of funds following a sale, requiring that the "net proceeds from the sale shall first go to pay People's any remaining unpaid portion of the Up-Front Settlement Amount," which includes the $3M Note secured by the DOT.  Ex. 3 at § A.1.c.iii.

13.     On May 17, 2023, the parties executed Amendment No. 1 to the Peoples Settlement, and Unrivaled paid Peoples $800,000 toward the Up-Front Settlement Amount.  Unfortunately, as the parties had anticipated, Unrivaled was not able to pay the Up-Front Settlement Amount in a timely manner.  By September 2023, the parties concluded that the forced sale of the Retail Assets was necessary and formed the Sales Committee contemplated by the Peoples Settlement.

14.     On December 27, 2023, Peoples recorded a Notice of Default against Halladay's Property.  The Notice of Default cited $3,000,000 as due and owing as of December 6, 2023,

apparently referring to the $3M Note and DOT. But, no sale could occur until at least three months after recording, or March 27, 2024. Cal. Civ. Code § 2924(c)(2). Because the sale of the Retail Assets was already underway, and Unrivaled was pursuing a sale of Halladay's Property, Unrivaled assumed that Peoples was recording the Notice of Default to protect its rights, but would not take steps to conduct a trustee's sale given that the Peoples Settlement provided People's would receive payment through the sale of the Retail Assets.

15.    On March 12, 2024, the Sales Committee, formed pursuant to the People's Settlement and including People's principal, Jay Yadon, voted *unanimously* to accept a $9,000,000 offer to purchase PFC, and executed a Letter of Intent ("LOI") to facilitate that purchase. On March 25, 2024 – the day before the Notice of Default was set to expire – People's counsel, contacted the real estate broker handling Unrivaled's sale of the Halladay Property, Geoff Foley of Stream Realty. People's counsel informed Mr. Foley that People's intended to file a Notice of Sale and proceed with a trustee's sale. Apparently, despite accepting the LOI only two weeks prior, and with knowledge that the sale of PFC would pay People's the Up-Front Settlement Amount in full, People's intended to foreclose on the Halladay Property. Based on People's apparent intent, on March 27, 2024, Unrivaled filed an *ex parte* application seeking a TRO to prevent People's from recording a Notice of Trustee's Sale. Rather than oppose the application, People's agreed not to record a Notice of Trustee's sale, and the parties filed a stipulation to that effect. That stipulation expired on April 26, 2024. On April 29, 2024, People's recorded a Notice of Trustee's Sale on the Halladay Property, setting the sale date for May 23, 2024.

16.    By mid-May, the PFC transaction, which would satisfy the Up Front Settlement Amount was expected to close on or before May 30, 2024. On that basis, Unrivaled moved *ex parte* for a temporary restraining order enjoining the trustee's sale until the PFC transaction could close. On May 21, 2024, the Court issued a temporary restraining order barring People's from conducting the trustee's sale. The parties waived notice. That same day, Unrivaled's counsel informed the Trustee that a TRO had been entered and that the trustee was *not* to conduct a

trustee's sale.  People's counsel was copied and replied to confirm that the TRO was in place through June 3, 2024.

17.    <u>On May 23, 2024, People's and its trustee violated the TRO and purported to conduct a trustee's sale of the Halladay Property</u>.  Unrivaled's counsel immediately contacted People's counsel who agreed to contact the Trustee and instruct them not to record any documents regarding the purported trustee's sale.  The Trustee later wrote to confirm People's counsel's instructions.  On May 28, 2024, Unrivaled requested a payoff amount from the Trustee, and the Trustee provided a "Beneficiary's Instruction to Bid at Foreclosure Sale."  The payoff amount was based on a May 23, 2024 "sale" date, and did not appear properly to account for all interest payments Unrivaled had previously made to People's.  Also on May 28, 2024, People's filed a supplemental brief on this issue, claiming the amount of interest owed through June 3, 2024 is $253,151.00.  Although Unrivaled did not agree that this was the correct amount due, to avoid dispute, on May 30, 2024, Unrivaled deposited the $253,151.00 in claimed interest into the account of the escrow agent handling the PFC sale.

18.    <u>On June 10, 2024, People's *broke into* the Halladay Property</u>.  Specifically, People's principal, Jay Yadon, instructed a People's employee, Anthony Skoblar to break into the Halladay Property on the spurious basis that it was the "legal owner" of the property based on the invalid May 23, 2024, attempted trustee's sale.  Mr. Skoblar did as he was told and went to the property with a locksmith.  Luckily, Unrivaled had a live security feed at the Halladay Property and was alerted to the effort and was able to call the police and stop it.  Unrivaled was forced to obtain another Temporary Restraining Order to bar People's from the premises.[3]

19.    Also on June 10, 2024, the sale of PFC closed.  After payment of certain broker and trustee fees, People's received $7,653,443 wired directly to its account.  Together with the $800,000 paid on May 17, 2024, People's has received in excess of the $8,000,000 Up-Front Settlement Amount, <u>including the $3,000,000 principal balance owed on the Second Deed of</u>

---

[3] On July 3, 2024, the Superior Court entered a Preliminary Injunction finding that the purported May 23, 2024, trustee's sale was invalid.

<u>Trust</u>.  (As an aside, People's will also receive an additional $1,000,000 paid by the PFC buyer pursuant to a promissory note as part of the PFC sale.)

20.    Following the closure of the PFC sale, Unrivaled used the Beneficiary's Instruction to Bid at Foreclosure Sale provided by the Trustee to calculate any additional interest or fees that may have been owing on June 11, 2024 when People's received the $3,000,000 principal balance due on the $3M Note.   Unrivaled determined the amount owed—based on the Trustee's documentation—to be $66,420.85.  Unrivaled believes that the trustee's calculations did not take into account a $25,000 interest payment made in August 2023.  Nevertheless, in an effort to avoid dispute, on June 24, 2024, Unrivaled deposited the entire $66,420.85 into the escrow account being held for People's benefit, bringing the total amount of interest and fees deposited for People's benefit to $319,571.85.

21.    On October 21, 2024, People's requested that the amounts held in escrow be released and wired to their checking account, and, on October 23, 2024, the escrow officer wired the funds to People's.  People's has not disputed that this amount meets or exceeds all interest and fees due related to the Halladay Property.  Thus, People's received the $3,000,000 principal, and all fees and interest due to satisfy the Second Deed of Trust before any valid trustee's sale was conducted.

22.    Accordingly, the $3,000,000 lien claim held by Peoples and secured by the 2nd DOT on the Property should rightfully be a claim for $0, and the lien for the 2nd DOT should be removed. However, Peoples has refused to remove the lien, and it remains listed as a disputed claim for $3,000,000 against Halladay's bankruptcy estate.

23.    The foregoing is a discussion of only one example of People's tortious litigation conduct draining the resources of these estates.

**b.  <u>Other Litigation</u>**

24.    Below is a detailed account of other key legal actions pursued by People's against the Debtors:

25.     <u>Breach of Contract Lawsuit (July 2022)</u>: People's filed a breach of contract suit against Unrivaled and its subsidiaries, alleging that Unrivaled failed to meet various terms and conditions related to the acquisition agreements. The lawsuit sought significant damages, claiming that Unrivaled's failure to adhere to contractual obligations had caused substantial financial harm to Peoples. This legal battle forced Unrivaled to allocate critical resources to defense rather than focusing on business recovery.

26.     <u>First Derivative Action (August 1, 2022)</u>: People's filed a derivative lawsuit targeting Unrivaled's previous executives and board members, alleging breach of fiduciary duty, abuse of control, self-dealing, corporate waste, and unjust enrichment. The lawsuit came after People's forced the removal of certain Unrivaled executives and directors, followed by the appointment of Tiffany Davis as interim CEO. This legal action sought to hold former leadership personally accountable, adding pressure on Unrivaled's management and resources. The derivative action led to legal expenses, diverting funds from operational needs. It also created a climate of uncertainty, impacting employee morale and investor confidence. The ongoing legal disputes became a central focus, hindering Unrivaled's ability to implement its strategic plans effectively.

27.     <u>Attempt to Secure Writ of Attachment Denied (August 15, 2022)</u>: People's filed an ex parte application for a writ of attachment to seize specific assets as security for their claims. The court denied the application on an emergency basis, finding insufficient grounds for such an attachment. This denial was critical, as it prevented the immediate seizure of assets essential for ongoing operations. The attempted asset seizure created significant operational instability, as management had to prepare contingency plans for potential loss of key assets. This legal maneuver by People's was perceived as an aggressive tactic to destabilize Unrivaled's business and create further operational disruption.

28.     <u>Denial of Receiver Appointment (August 18 and September 1, 2022)</u>: People's filed multiple applications seeking to appoint a receiver to manage Unrivaled's assets, claiming that the company was mismanaging resources. Both applications were denied by the court, citing

lack of sufficient evidence that a receivership was warranted. The denial of these applications allowed Unrivaled to maintain control over its operations and continue its restructuring efforts. Defending against these receiver appointment applications involved significant legal costs, including attorney fees and court-related expenses.

29. <u>Writ of Possession Applications Denied (December 12, 2022, and March 6, 2023)</u>: People's applied for a writ of possession to gain control of certain assets owned by Unrivaled. The applications were denied after full briefing, with the court finding that People's failed to demonstrate an immediate right to possession.

30. <u>Settlement with People's Principals (March 2023)</u>: After a cross-complaint involving allegations of fraud and negligent misrepresentation against People's principals—Frank Kavanaugh, Jay Yadon, and Bernard Steimann—a settlement was reached. Despite the settlement, litigation pressures continued, with People's continuing to pursue new legal avenues to exert pressure on Unrivaled.

31. <u>Temporary Restraining Orders and Injunctions (April - June 2024)</u>: Various TROs were issued to prevent People's affiliates from seizing control of assets leased by PFC and owned by Unrivaled in an effort to tortiously interfere with the business, reduce revenues, and cause Unrivaled to default on settlement performance. One TRO in May 2024 was later extended to a preliminary injunction when the court found People's actions to foreclose on the Halladay Property post-TRO invalid. The TROs were critical in maintaining the status quo and preventing People's from taking unilateral actions that would harm Unrivaled's operational stability.

32. <u>Second Derivative Lawsuit (July 26, 2024)</u>: People's filed a second derivative lawsuit against the new management team, recycling claims from the 2022 suit, including breach of fiduciary duty, corporate waste, and unjust enrichment. This lawsuit came despite People's already receiving over $60 million in value, of which $36 million was cash, from Unrivaled since 2021. The repetition of claims previously litigated and settled suggested a strategy by People's to keep Unrivaled entangled in perpetual legal battles. The second derivative suit was viewed by Unrivaled as another attempt to pressure and intimidate management into further concessions or

settlements. The ongoing litigation created significant fatigue among Unrivaled's stakeholders, including employees, investors, and partners. The inability to achieve a resolution contributed to deteriorating business conditions and impacted stakeholder confidence, further complicating attempts at financial stability.

33.    <u>People's Counsel Withdrawal (January 2024)</u>: People's attorney successfully motioned to withdraw as counsel, indicating potential instability in People's legal strategy.

34.    <u>Civil Theft and Conversion Allegations (March 2024)</u>: People's principal, Bernard Steimann, directed the unauthorized removal of PFC's freeway-visible signage, critical for marketing to approximately 261,700 passing cars daily (again another instance of Peoples' tortious interference with PFC's business, designed to reduce revenues, and cause Unrivaled to default on settlement performance), leading to a lawsuit against Steimann and Troup Construction for civil theft and conversion.

35.    <u>Unlawful Detainer Judgment (June 2024)</u>: The court granted PFC an unlawful detainer judgment and back rent award after a People's subsidiary failed to pay rent. An attempt by the People's subsidiary to secure a restraining order to stop the eviction trial was denied. The unlawful detainer judgment allowed Unrivaled to evict the People's subsidiary from the PFC building, thereby reclaiming control over critical office space and additional parking located on the PFC premises. The judgment also included an award for back rent. As a consequence, Unrivaled was able to maintain revenue and maintain asset value to better enable it to perform on the settlement payments and not default.

36.    <u>Denial of Multi-Million-Dollar Judgment Request (June 28, 2024)</u>: The court denied People's ex parte application to secure a multi-million-dollar judgment against Unrivaled, finding the claims unsupported by the evidence presented. The denial of the multi-million-dollar judgment was based on a lack of substantiated claims from People's.

37.    <u>Defamation Lawsuit (August 13, 2024)</u>: People's filed a lawsuit alleging claims for defamation-libel-per se, intentional interference with contractual relations, negligent interference with contractual relations, intentional interference with economic advantage, and

1  civil conspiracy over a press release which relayed readily available and public contentions about

2  People's principal, Bernard Steimann, taken from his marriage dissolution lawsuits. The company

3  is forced to defend itself pursuant to anti-SLAPP procedures designed to shield constitutionally

4  protected conduct from the undue burden of frivolous litigation.

5       38.    These foregoing legal challenges, characterized by persistent litigation even after

6  settlements, consumed resources and obstructed Unrivaled's ability to move forward effectively.

7  People's continued actions appear to be aimed at applying continued legal pressure, forcing

8  further legal expense, and extracting additional financial gains, all of which contributed

9  significantly to Unrivaled's decision to file for Chapter 11 bankruptcy. The inability to reach a

10  conclusive resolution to these disputes created an untenable situation that left Unrivaled with no

11  viable alternative but to seek court-supervised reorganization in Chapter 11.

12       **C.  The Debtors' Primary Assets**

13       39.    Despite the challenges posed by Peoples, Unrivaled successfully sold down its

14  portfolio in an orderly fashion over more than two years, and, as of the Petition Date, Unrivaled's

15  primary assets are: (A) its 100% membership interests in Halladay Holding, LLC (which owns

16  the "Property," as discussed immediately below); (B) Approximately 9% shares in Mystic

17  Holdings LLC ($MSTH on OTC); and (C) avoidance actions against Peoples.

18            **a.  The Halladay Property**

19       40.    The estates' primary asset is Halladay's real property located at 3242 S. Halladay

20  Street, Santa Ana, California, 92705 (APN 411-151-04) (the "Property").

21       41.    The Property is 0.94 acres of land and approximately 24,468 square feet of

22  improvements located at 3242 S. Halladay Street, Santa Ana, California, 92705 (APN 411-151-

23  04).

24       42.    The Property has a two-story flex building built in 1971 and renovated in 2020,

25  located on a hard corner M1 zoned parcel, ideal for office space use, and positioned for an owner-

26  user or investor. The Property's building has multiple large conference rooms, an extensive full

27  kitchen/break area, and multiple glass executive suites, and it comes with 76 stalls for parking

28

43.     Prepetition, on December 1, 2022, the Debtors entered into an agreement with Marcus & Millichap Real Estate Investment Services, Inc. ("MM") and Stream Realty-Orange County GP, Inc. ("Stream" and with MM, collectively, the "Agents") to list and sell the Property. Pursuant to the listing agreement, the Agents' commission is 6% of the Purchase Price.

44.     Stream is a commercial real estate firm with full-service offerings in leasing, property management, development, construction management, and investments sales services across the commercial real estate industry.  Since 1996, Stream has grown to a staff of more than 950 real estate professionals with regional offices in Atlanta, Chicago, Texas, Southern California, Denver, Nashville, and Washington D.C., with more than $3.3 billion in real estate transactions annually, Stream and an active investor and developer across the nation.  MM holds the top position as the leading commercial brokerage firm across the nation, with nearly 100 offices nationwide, and, on this particular Property, the Agnew Serling Group as one of the top commercial brokerage groups with MM, more than 335 closed transactions, and more than $997 million in transaction volume

45.     The Agents started marketing the Property immediately in December 2022, preparing a 21-page color offering memorandum pitch deck for the Property.  The Agents co-listed the Property and marketed jointly and separately, canvassing the market for the best possible price.  Between their two companies, the Agents have approximately 15,000 investors, tenants, and owner-users in their combined databases.  Collectively, the Agent's marketing efforts were very robust, including email campaigns, paid advertising, direct phone calls, social media, physical mailers, and in-person visits.  Additionally, the Agents' online listings yielded approximately 145,000 visitors through various websites.

46.     The Agents initially went to market with a target price of $7,000,000 in December 2022.  In January 2023, the Agents received an offer from a third party for $4,840,000, which was deemed to be too low at the time.  In April 2023, Halladay and the Agents reduced the target purchase price to $6,500,000.  In August 2023, Halladay executed a purchase sale agreement with a third-party buyer, but the escrow was terminated because the prospective buyer asked for a

$1,000,000 discount at closing.  In November 2023, Halladay went under contract with the current proposed Buyer and a projected scheduled closing of May 2024, which has been extended multiple times due to the ongoing litigation tactics by disputed lien creditor Peoples California, LLC, as discussed in greater detail below.  Accordingly, after this extensive marketing, the Debtors respectfully submit that the proposed sale to the Buyer is the best offer in the marketplace.

47.    On November 16, 2023, the Debtors and Gordineer LLC (the "Buyer") entered into a purchase agreement (the "Purchase Agreement") subject to multiple amendments for the purchase price of $5,303,320.00.  The original term of the Purchase Agreement required the parties to close the sale by May 16, 2024.  However, the parties agreed to cooperatively enter into five amendments extending the closing date because of problems with alleged disputed creditor Peoples.

48.    The closing the proposed Sale to Buyer has been delayed for several months because of the ongoing litigation tactics by Peoples, and during this period of delay interest has continued to accrue on secured debt, taxes continue to accrue, and the Buyer lowered its sale price.

49.    The Halladay Property has been extensively marketed to obtain the currently proposed Buyer in the Sale Motion.  The Debtors' brokers believe that the proposed Sale is the best and highest offer in the marketplace.  Although the Halladay Property has been under contract and listed as "pending" on the market, Debtors' brokers have continued to market the Halladay Property for other offers, but no superior offers have materialized

50.    If this proposed Buyer were to cancel the proposed Sale, Debtors' brokers believe in their professional experience and opinion that it would take nine months to a year to find a replacement buyer, and, in the meantime, property taxes and interest on secured debt against the Halladay Property would continue to accrue, reducing equity for the estates.

51.    On November 8, 2024, the Debtors filed a motion (the "Sale Motion") [ECF 10] to sell the Halladay Property free and clear of all claims, liens, and interests pursuant to 11 U.S.C. § 363(b) and (f). On December 4, 2024, the Court held a hearing (the "Sale Hearing") on the Sale Motion, granting the Sale Motion and entering an order (the "Sale Order") [ECF 53] on December

6, 2024.  At the Sale Hearing, and as set forth in the Sale Order, Peoples agreed to: (i) the granting of the Sale Motion and approval of the proposed Sale of the Property to Buyer free and clear of all liens, claims, and interests; (ii) the payment of closing costs, the allowed claims for the Orange County property taxes, and the First Deed of Trust; and (iii) the balance of the Sale proceeds to be held in Debtors' general bankruptcy counsel's client trust account until further order of the Bankruptcy Court, with Peoples' disputed claim and lien and the third deed of trust claim and lien to attach to the Sale proceeds to the same extent, priority, and validity that existed as of the Petition Date.

52. The Debtors' position is that Peoples' $3 million lien has already been paid prepetition, and, upon closing of the Sale, there should be sufficient sale proceeds to pay all liens against the Property and return a dividend to Unrivaled, which would inure to the benefit of the several creditors on Unrivaled's bankruptcy case.

53. People's refusal to release its lien for the $3M note – which Unrivaled already paid – prevents the other creditors in the Halladay estate from being paid in full, and prevents Unrivaled's creditors of being paid from the excess sale proceeds.  The Debtors filed for chapter 11 bankruptcy relief concurrently to effectuate the proposed sale to Buyer free and clear of all liens, claims, and encumbrances for the benefit of both the estates before any more value is wasted by Peoples' incessant and meritless litigation tactics to the detriment of both estates.

54. The Debtors and Peoples have agreed to participate in judge-lead mediation with the Honorable Robert N. Kwan, United States Bankruptcy Judge for the Central District of California, on February 12, 2025, in an attempt to resolve their disputes.

55. Unrivaled anticipates that creditors in the concurrently filed Halladay estate will be paid in full, and dividends to equity will upstream to the Unrivaled bankruptcy estate, where those funds can be used to pay Unrivaled's creditors.

### b. Shares in Mystic Holdings, Inc.

56. According to the most recent quarterly financial statement filed with the SEC by Mystic Holdings, Inc., Unrivaled owns 8,323,764 common shares, which is approximately 5.5%

of the total 150,376,946 common shares; and Unrivaled owns 8,332 preferred shares, which is approximately 9.7% of the total 86,235 preferred shares (the "Mystic Shares").  Preferred shares convert one-to-one into common shares, and on a total converted basis, Unrivaled would own 8,332,096 of the total 150,463,181 shares, calculated at 5.5%.  The preferred shares have enhanced voting rights.  According to its filings with the SEC, Mystic Holdings, Inc. has certain connections to cannabis.  The ownership of more than 1% of such a company may violate § 854(a) of the Controlled Substances Act ("CSA").  *See*, 21 U.S.C. § 854(a).  Because the Debtors own more than 1% of Mystic Holdings, Inc., this asset is too burdensome to administer in light of Section 854(a) of the Controlled Substances Act, and, therefore, the Debtors propose to abandon it.

57.    On December 6, 2024, the Debtors filed the "*Debtors' Notice of Motion and Motion to Abandon Shares of Mystic Holdings, Inc.*" (the "Abandonment Motion") [ECF 56]. January 8, 2025, Peoples filed its opposition [ECF 93] to the Abandonment Motion, objecting, in part, that the trading value of the Mystic Shares on the OTC (according to the Debtors' bankruptcy schedules) is $833,209.97.  As of January 8, 2025, the trading value was $708,228.  The Abandonment Motion is set for hearing on March 12, 2025, while the Debtors and Peoples participate in mediation.

### c.  Debtors' Avoidance Actions Against Peoples

58.    On December 16, 2024, the Debtors filed an adversary proceeding (2:24-ap-1272-BB) (the "Avoidance Action") against Peoples to recover transfers pursuant to 11 U.S.C. §§ 544, 547, 548, and 550.

59.    Prepetition in 2021, Unrivaled acquired super-majority ownership in multiple of Peoples' subsidiaries in a leveraged buyout from Peoples where Peoples received some cash, retained some minority ownership, and received some notes for tens of millions of dollars.  After 2021, Unrivaled's businesses did not perform well, Unrivaled defaulted on the notes to Peoples, and, after litigation commenced, on March 6, 2023, the parties signed a settlement agreement (the "3/6/23 Agreement"), that required the payment of certain sums to Peoples on certain dates.

60.     The 3/6/23 Agreement provided Peoples with a claim for $23 million divided into subparts, of which the first $8 million would be the "Up-Front Settlement Amount," and, of which $3 million would be secured by a deed of trust on the Halladay Property.  *See*, 3/6/23 Agreement § A.1.a.  In the event of a missed payment (which there was), Unrivaled and Peoples together sitting on a "Sales Committee" would sell subsidiary retail business known as Peoples First Choice LLC ("PFC") with the funds to be paid towards the Up-Front Payment.

61.     On May 17, 2023, Unrivaled paid $800,000 to Peoples towards the Up-Front Settlement Amount.  On June 11, 2024, upon the closing of the sale of PFC, Unrivaled paid $7,653,443 to Peoples.  Thus, Unrivaled has already paid to Peoples $8,453,443 on the $8M Up-Front Settlement Amount, of which the $3M Note is part and parcel.  "Upon payment in full of the $3M Note, the Halladay Property DOT… shall be released."  3/6/23 Agreement § A.1.a.i.  However, Peoples has refused to release the DOT against the Halladay Property.

62.     While the prepetition dispute between the parties was pending, Unrivaled caused hundreds of thousands of dollars to be deposited into escrow for the purpose of paying various claims to Peoples on the $8M Up-Front Settlement Amount.  Fifteen (15) days prior to the Petition Date, on October 22, 2024, Peoples instructed escrow to release (and escrow released to Peoples) a total of $569,571, comprised of (i) $250,000 for an extension fee to extend the payoff date on $8M Up-Front Settlement Amount from March 21, 2024, to June 21, 2024; (ii) $253,151 for interest on the $3M Note; and (iii) $66,420 for disputed interest on the $3M Note.  The avoidable transfers are summarized below:[4]

| Date Paid | Amount | Notation |
|---|---|---|
| 5/17/2023 | $800,000.00 | Down payment towards $8M Up-Front Settlement Amount |
| 3/21/2024 | $250,000.00 | *Extension Fee to extend deadline on settlement* |
| 5/30/2024 | $253,151.00 | *Interest on Note* |
| 6/11/2024 | $7,653,443.00 | PFC Retail Sale Proceeds towards $8M Settlement Amount |

[4] The payments with the "*" asterisk were put into escrow by the Debtors on these specified dates; on October 22, 2024, Peoples instructed escrow to release these funds, which were paid to Peoples on that day.

| 6/25/2024 | $66,420.85 | *Disputed Interest on Note* |
|---|---|---|
| **Total** | **$9,023,014.85** | |
| w/o $800k | $8,223,014.85 | Debtors did not sue for return of the $800,000 in the Avoidance Action |

63.     Additionally, on 15 days prior to the Petition Date, October 22, 2024, Peoples instructed escrow to release (and escrow released to Peoples) a total of $569,571, comprised of (i) $250,000 for an extension fee to extend the payoff date on $8M Up-Front Settlement Amount from March 21, 2024, to June 21, 2024; (ii) $253,151 for interest on the $3M Note; and (iii) $66,420.85 for disputed interest on the $3M Note.

64.     On December 17, 2024, the Debtors removed prepetition state court litigation to the Bankruptcy Court (2:24-ap-1274-BB) (the "Removed Action").  The prepetition disputes in the Removed Action were the foreclosure sale and alleged breach of the 3/6/23 Agreement. The Debtors' position is that both of these disputes are subsumed in and addressed by the Sale Order and the pending Avoidance Action.

**D.  Procedural Background and Reporting Compliance**

65.     On November 6, 2024, the Debtors filed their voluntary chapter 11 cases.

66.     The Debtors have timely filed their monthly operating reports.

**E.  Procedural Matters, Claims Bar Date, Employment Applications, Fee Applications**

67.     On January 7, 2025, Peoples filed its motion to dismiss Unrivaled's bankruptcy Case (the "Motion to Dismiss") [ECF 92], which is currently set for hearing on March 12, 2025.

68.     The deadline for non-governmental creditors to submit claims against the Debtors and their estates is February 18, 2025; the deadline for governmental creditors to submit claims against the Debtors and their estates is May 5, 2025.  ECF 73.  However, the Debtors stipulated that the general claims bar date is extended from February 18, 2025, to March 20, 2025, as to People's California, LLC and its assigns, People's Properties, LLC, Brian Decker, Bernard Steimann, Jay Yadon, Melissa Yadon, and New Patriot Holdings, Inc., only.  ECF 99.

21

69.     According to Unrivaled's bankruptcy schedules of assets and liabilities, Unrivaled has approximately 190 creditors holding approximately $38 million of claims.

70.     On November 13, 2024, the Debtors filed their application [ECF 18] to employ Marcus & Millichap Real Estate Investment Services, Inc. ("MM") and Stream Realty-Orange County GP, Inc. ("Stream" and with MM, collectively, the "Agents") as their real estate brokers for the marketing and sale of the Halladay Property.  On December 4, 2024, the Court entered an order [ECF 49] approving Debtors' employment of the Agents.

71.     On November 14, 2024, the Debtors filed their application [ECF 22] to employ Levene, Neale, Bender, Yoo & Golubchik L.L.P ("LNBYG") as its general bankruptcy counsel. On December 4, 2024, the Court entered an order [ECF 47] approving Debtors' employment of LNBYG.

72.     On November 27, 2024, the Debtors filed a motion [ECF 40] to retain and compensate Adnant LLC and Sabas Carrillo as CRO.  On December 23, 2024, the Court entered an order [ECF 81] approving Debtors' retention of Adnant LLC and Sabas Carrillo as CRO, with subsequent applications required for approval of compensation.

73.     On December 6, 2024, the Debtors filed their "*Application to Employ Buchalter, APC as Special Litigation Counsel Pursuant to 11 U.S.C. § 327(e) With Compensation Pursuant to 11 U.S.C. §§ 330 and 331, Effective as of the Petition Date*" (the "Buchalter Application") [ECF 57].  On December 20, 2024, Peoples filed its objection to the Buchalter Application [ECF 72], and, on December 31, 2024, the Debtors filed their notice setting the hearing on the Buchalter Application.  The Buchalter Application is set for hearing on March 12, 2025, while the Debtors and Peoples participate in mediation.

74.     No estate administrative professional fee applications have been filed as of the date of the filing of this Disclosure Statement.

    **F.   Executory Contracts and Real Property Leases**

75.     On December 1, 2022, Halladay entered into an "Exclusive Right to Represent Owner for Sale or Lease of Real Property" (the "Listing Agreement") with the Agents to list and sell the Halladay Property.

76.     Prepetition, Halladay entered into a sale agreement with Gordineer LLC for the sale of the Halladay Property.

77.     Prepetition, Halladay entered in a "License Agreement for Temporary Use of the Building" with Gordineer LLC for Gordineer to use the Halladay Property and, in exchange, provide for security, utilities, insurance, maintenance, and upkeep of the Halladay Property pending closing of the proposed sale.

78.     Unrivaled is a party to several insurance contract agreements, and, for the avoidance of doubt, all of the insurance policies are being assumed as part of the Plan.

79.     Other than the foregoing, the Debtors do not have any significant unexpired leases or executory contracts.

## II.     **PLAN SUMMARY**

### A.  **Summary of Plan Classes**

Class 1 under the Plan is comprised of the allowed secured tax claim of the County of Orange ("Orange County") secured by a tax lien against the Halladay Property.

Class 2 under the Plan is comprised of the allowed secured claim of "LJ Capital Partners, as to an undivided 38.71% beneficial interest and Jeffrey K. White Profit Sharing Plan, Jeffrey K. White, trustee as to an undivided 25.806% beneficial interest and Michael Weisberg and Leah Weisberg, trustees of the Michael and Leah Weisberg Foundation, as to an undivided 19.355% beneficial interest, and Jack William Purcell and Cheryl E. Purcell, trustees of the Purcell Family Trust dated July 22, 1992, as to an undivided 16.129% beneficial interest" (collectively, the "1st DOT Holders") secured by a first deed of trust against the Halladay Property.

Class 3 under the Plan is comprised of the allowed secured claim (if any) of Peoples' California LLC ("Peoples" and "2nd DOT Holder") secured by a second deed of trust against the Halladay Property.

Class 4 under the Plan is comprised of the allowed secured claim of Dominion Capital LLC and M2B Funding LLC and  ("Dominion" and "M2B" respectively, and, collectively, "3rd DOT Holder") secured by a third deed of trust against the Halladay Property.

Class 5 under the Plan is comprised of the allowed secured claim of Locam LLC ("Locam") secured by a blanket lien on all of Unrivaled's personal property.

Class 6 under the Plan is comprised of the allowed general unsecured claims of Halladay.

Class 7 under the Plan is comprised of the allowed general unsecured claims of Unrivaled.

Class 8 under the Plan is comprised of the equity interest holders of Halladay.

Class 9 under the Plan is comprised of the equity interest holders of Unrivaled.

The Plan also contains non-classified claim holders, as the Bankruptcy Code pre-determines their treatment.  These non-classified claim categories include: (i) post-petition estate professionals; (ii) other post-petition administrative expense claims; (iii) non-tax priority unsecured claims, primarily for prepetition unpaid wages; and (iv) prepetition priority tax claims.

**B.  What Creditors Will Receive Under the Plan**

As required by the Bankruptcy Code, the Plan classifies certain claims and interests in various "classes" according to their right to priority and leaves other types of claims unclassified. Also, as required by the Bankruptcy Code, the Plan states whether each class of claims or interests is impaired or unimpaired and describes the treatment each class will receive.

**1.  Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. The Bankruptcy Code predetermines what type of treatment these claims will receive.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtors have not placed the following claims in a class.

**a.  Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtors' Bankruptcy Cases that are allowed under Bankruptcy Code Section 507(a)(2).  The Bankruptcy

Code requires that all administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment. "Administrative Claim" means a claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code.

The following chart lists all of the Debtors' § 507(a)(2) estate professional administrative claims and their treatment under the Plan.[5]

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Quarterly Fees to the United States Trustee ("UST") | $0 | The Debtors will be current on quarterly fees by the time of the hearing on plan confirmation. |
| LNBYG, Bankruptcy Counsel to the Debtors | $200,000 (est.) | Paid on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Buchalter, APC, Special Litigation Counsel to the Debtors | $50,000 (est.) | Paid on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Adnant LLC Chief Restructuring Officer | $100,000 (est.) | Paid on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| **TOTAL** | **$ 350,000** | **Paid in the manner described above** |

The Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses (except fees owing to the Clerk of the Bankruptcy Court), the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees and expenses

---

[5] The Agents for the sale of the Halladay Property will be paid from the Sale closing, not through the Plan, and, therefore are not listed here.

allowed by the Bankruptcy Court will be required to be paid under the Plan, up to the agreed capped amounts set forth above. The actual administrative claims may be higher or lower than the figures stated above; however, even if the actual amount of such fees and expenses exceed the figures stated above, the professionals have agreed to accept payment of the above amounts as payment in full of their respective administrative claims. The actual accrued administrative claims described above for professionals will be largely dependent upon whether the Debtors are required to engage in any substantial litigation regarding the confirmation of the Plan and/or objecting to claims. To the extent the Debtors are required to engage in any such substantial litigation, the Debtors are likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the figures set forth above. By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims. By including the figures described above, the Debtors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and the Debtors are not waiving any of their rights to object to the allowance of any of these administrative claims, but payment of any such allowed administrative claims will be limited to amounts provided for in the Plan.

### b. Priority Unsecured Tax Claims

Prepetition priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Plan Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date, and not less favorable than other creditors paid under the Plan. Interest rates on these claims are conclusively determined by applicable non-bankruptcy law as of the month that the Plan is confirmed. 11 U.S.C. § 511.

Under the Plan, all allowed Section 507(a)(8) priority tax claims will be paid within 15 days of the Plan Effective Date. Interest on the priority tax claims will accrue and be paid at the applicable non-bankruptcy law statutory rate.

Unless timely contested under the Plan, a failure by the Debtors to make a payment on the priority tax claims pursuant to the terms of the Plan will be an event of default. If the event of default is not cured within thirty (30) days after service of written notice of default from the taxing authority, then the taxing authority may enforce its applicable remedies by application of non-bankruptcy law in non-bankruptcy court. The chart below indicates all priority tax claims which were either scheduled by the Debtors or asserted by the taxing agencies in timely filed proofs of claim. The inclusion of the claims in the chart below is intended simply to reflect the claims that have been scheduled and/or asserted in timely filed proofs of claim as priority tax claims, and is not intended to be a concession by the Debtors regarding the validity of the amount of any such claims or the classification of such claims as priority tax claims under Section 507(a)(8) of the Bankruptcy Code.

| Claimant | Proof of Claim No. | Claim Amount | Objection |
|---|---|---|---|
| CA FTB (Halladay) | 2 | $2,954.72 | |
| CA FTB (Unrivaled) | 14 | $469,747.88 | Yes |
| **Total** | | **$472,702.60** | |

### 2. Classified Claims and Interests

#### a. Non-Tax Pre-Petition Priority Claims

Certain prepetition priority claims that are referred to in Bankruptcy Code Sections 507(a)(4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment under the Bankruptcy Code as each holder of such an allowed claim must receive cash on the Effective Date equal to the allowed amount of such claim. However, the holder of such an unsecured priority claim may agree to accept deferred cash payments of a value,

as of the Effective Date, equal to the allowed amount of such claim.   The below chart summarizes the priority non-tax claims and whether the Debtors are considering an objection at this time:

| Name | Claim No. | Objection | Claim Amount |
|------|-----------|-----------|--------------|
| None | N/A | N/A | $0.00 |

### b.  Class 1 – Allowed Secured Tax Claim of the County of Orange

The following chart identifies the Plan's treatment of Class 1 comprised of the allowed secured tax claim of Orange County:

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---------|-------------|-----------------|-----------|
| 1 | Claimant: Orange County<br><br>Type of Claim: Allowed secured claim<br><br>Claim amount: $304,607.72 plus accrued interest<br><br>Collateral: Halladay Property | Unimpaired<br><br>Deemed to have accepted the Plan by operation of law without voting. | Class 1 will be paid on its allowed secured claim in full upon the earlier of the closing the proposed sale of the Halladay Property or the Plan Effective Date.<br><br>Interest at the applicable rate pursuant to 11 U.S.C. § 511. |

### c.  Class 2 – Allowed Secured Claim of 1st DOT Holder

The following chart identifies the Plan's treatment of Class 2 comprised of the allowed secured claim of the 1st DOT Holder:

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 2 | Claimant:<br>1st DOT Holders<br><br>Type of Claim:<br>Allowed secured claim<br><br>Prepetition Claim amount:<br>$2,875,568.90, plus accrued interest, fees, and costs<br><br>Collateral:<br>Halladay Property | Unimpaired<br><br>Deemed to have accepted the Plan by operation of law without voting. | Class 2 will be paid on its allowed secured claim in full upon the earlier of the closing the proposed sale of the Halladay Property or the Plan Effective Date. |

### d. Class 3 – Allowed Secured Claim of Peoples (2nd DOT Holder)

The following chart identifies the Plan's treatment of Class 3 comprised of the allowed claim (if any) of Peoples (2nd DOT Holder):

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 3 | Claimant: Peoples' California, LLC<br><br>Type of Claim: Allowed secured claim<br><br>Prepetition Claim amount: $3,000,000* plus interest<br><br>Collateral: Halladay Property<br><br>*Debtors dispute the Class 3 Claim, for which Peoples' asserts a lien for $3,000,000, and an adversary proceeding is pending to void the lien and disallow the claim (2:24-ap-1272-BB). | Unimpaired<br><br>Deemed to have accepted the Plan by operation of law without voting. | Class 3 will be paid on its allowed secured claim in full upon the earlier of the closing the proposed sale of the Halladay Property or the Plan Effective Date.<br><br>Class 3 was paid its Class 3 claim in full prior to the Petition Date, and the receipt of additional payment under the Plan is $0. |

**e.  Class 4 – Allowed Secured Claim of Dominion (3rd DOT Holder)**

The following chart identifies the Plan's treatment of Class 4 comprised of the allowed claim of Dominion (3rd DOT Holder):

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 4 | Claimant: Dominion Capital LLC<br><br>Type of Claim: Allowed secured claim<br><br>Prepetition Claim amount: $1,000,000<br><br>Collateral: Halladay Property | Unimpaired<br><br>Deemed to have accepted the Plan by operation of law without voting. | Class 4 will be paid on its allowed secured claim in full upon the earlier of the closing the proposed sale of the Halladay Property or the Plan Effective Date. |

**f.  Class 5 – Allowed Secured Claim of Locam LLC**

The following chart identifies the Plan's treatment of Class 5 comprised of the allowed secured claim of Locam LLC:

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 5 | Claimant: Locam LLC<br><br>Type of Claim: Allowed secured claim<br><br>Prepetition Claim amount: $50,000 plus interest<br><br>Collateral: Substantially all assets of Unrivaled | Impaired<br><br>Entitled to vote. | Class 5 will receive $50,000, on the Plan Effective Date, and waive accrued interest, in exchange for and in full and final satisfaction for its Class 5 Claim. |

### g.  Classes of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).  The Class 6 claims under the Plan are comprised of each allowed claim against **_Halladay_** that is not secured by a charge against, or interest in, any of Halladay's assets, that is not an administrative claim, or otherwise not entitled to priority under Bankruptcy Code Section 507(a).  The following chart identifies the Plan's treatment of Class 6 (see the Claims Chart for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 6 | All allowed general unsecured claims of **_Halladay_** not included in any other class.<br><br>Estimated amount of asserted Class 6 claims is $0.<br><br><br>The Claims Chart attached as **Exhibit 1** to the Disclosure Statement and Plan shows all claims which were scheduled by Halladay and all proofs of claim which have been filed against Halladay that are in Class 6. | Unimpaired.<br><br>Deemed to have accepted the Plan by operation of law without voting. | Class 6 claim holders will be paid in full on the Plan Effective Date with applicable interest. |

The Class 7 claims under the Plan are comprised of each allowed claim against **_Unrivaled_** that is not secured by a charge against, or interest in, any of Unrivaled's assets, that is not an administrative claim, or otherwise not entitled to priority under Bankruptcy Code Section 507(a). The following chart identifies the Plan's treatment of Class 6 (see the Claims Chart for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 7 | All allowed general unsecured claims of Unrivaled not included in any other class.<br><br>Estimated amount of asserted Class 7 claims is $43 million (subject to objection).<br><br><br>The Claims Chart attached as **Exhibit 2** to the Disclosure Statement and Plan shows all claims which were scheduled by Unrivaled and all proofs of claim which have been filed against Unrivaled that are in Class 7. | Impaired.<br><br>Entitled to Vote. | In full and final satisfaction of each, any, and all of their claims against the Debtors, on the Plan Effective Date, each holder of an allowed Claim in Class 7 will receive its pro rata share of the "GUC Distribution," to be distributed by the Liquidating Trustee. |

**h. Class of Interest Holders**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtors.

In compliance with 11 U.S.C. § 1123(a)(6), the Debtors' charters, bylaws, and/or operating agreements will be amended to provide for the inclusion of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among classes.

The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 8 | Sole member of | Impaired | The Class 8 equity interests |

| | | | will be cancelled, and all distributions that Class 8 would otherwise receive will upstream to the Liquidating Trust under the Plan. |
|---|---|---|---|
| | Halladay: Unrivaled Brands, Inc. | The Class 8 interest holder is conclusively presumed to have voted to reject the Plan by operation of law | |

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 9 | Sole shareholder of Unrivaled: Blum Holdings, Inc. | Impaired The Class 9 interest holder is conclusively presumed to have voted to reject the Plan by operation of law | The Class 9 equity interests will be cancelled, and all distributions that Class 9 would otherwise receive will be transferred to the Liquidating Trust under the Plan. |

**C. Means of Effectuating and Implementing the Plan**

**1. Funding for the Plan**

The Plan will be funded with the sale proceeds of the proposed sale of the Halladay Property and the assets to be transferred to the Liquidation Trust.

**2. Composition of the Debtors After the Effective Date**

On the Effective Date, the equity interests in the Debtors shall be cancelled, and all assets of the Debtors shall be transferred Liquidating Trust.

**3. Post-Confirmation Management and Compensation**

On and after the Effective Date, all management of the Liquidating Trust shall be vested in the Liquidating Trustee. To the extent any further actions are required by the Debtors, the Liquidating Trustee shall be vested with the powers to carry out such actions. Compensation and

management of the Liquidating Trust shall be in accordance with the Liquidating Trust Agreement attached as **Exhibit 3** to the Plan.

### 4. Disbursing Agent

The Liquidating Trust will act as the disbursing agent under the Plan and be compensated in accordance with the Liquidating Trust Agreement.

### 5. Objections to Claims

The Liquidating Trust will file objections to all claims that are inconsistent with the Debtors' books and records or are otherwise objectionable to the Liquidating Trustee unless the Liquidating Trustee deems the inconsistency to be insignificant. With respect to disputed claims that are not resolved prior to the Plan Effective Date, the Liquidating Trustee will have the authority, in its sole discretion, and in the reasonable exercise of its business judgment, to settle or compromise any disputed claim without further notice or Court approval up to $100,000.

As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan. As of the Effective Date, the Liquidating Trust shall have the sole authority and standing to file any objections to claims following the confirmation of the Plan, and the Court shall retain jurisdiction over the Liquidating Trust and Bankruptcy Cases to resolve such objections to claims following the confirmation of the Plan. Nothing contained in the Plan shall constitute a waiver or release of any rights of setoff or recoupment, or of any defense that the Debtors may have with respect to any claim, all of which shall be vested in the Liquidating Trust. The Liquidating Trustee shall withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors (the "Disputed Claims") of any particular class as if such

claims were allowed in full, which shall not delay payment to allowed claims that are not Disputed Claims.

### 6. Avoidance Actions, Strong Arm Powers, and Causes of Action

All avoidance actions and strong-arm powers of a trustee under chapter 5 of the Bankruptcy Code and any motions and/or adversary proceedings for substantive consolidation, shall irrevocably vest in the Liquidating Trust and be transferred in total to the Liquidating Trustee upon confirmation of the Plan. The deadline for filing avoidance actions under chapter 5 of the Bankruptcy Code and to file any non-avoidance action shall be the earlier of (i) the statute of limitations for such cause of action and (ii) two years after the Petition Date. Regardless of whether they are listed on the Debtors' bankruptcy schedules of assets or specified in the Plan, all causes of action owned by the Debtors shall vest in the Liquidating Trustee unless specifically settled with such settlement approved by order of the Bankruptcy Court prior to confirmation of the Plan.

### 7. Employment of Professionals by the Liquidating Trustee and Payment of Professional Fees and Expenses After the Effective Date

On and after the Effective Date, the Liquidating Trustee shall have the right to employ and compensate professionals as the Liquidating Trustee determines is appropriate and to compensate any such professionals without the need for any further order of the Bankruptcy Court.

### 8. Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax. Transfers under the Plan that are exempt from taxes under section 1146(a) of the Bankruptcy Code include all transfers by the Debtors after the commencement of the Bankruptcy Case in contemplation of the Plan but prior to the Effective Date. The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and

other similar taxes.

### 9.  Distributions to Be Made Pursuant to the Plan

Except as otherwise agreed to by the Liquidating Trustee in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtors' schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Bankruptcy Court, to such address.  Checks issued to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

### 10. Exculpations and Releases

To the maximum extent permitted by law, not any one of the Debtors, each of its/their management, each of its/their professionals employed or retained by any of them, whether or not by Bankruptcy Court order (collectively, the "Exculpated Parties"), shall have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein, including the distribution of estate funds.

For the avoidance of doubt the exculpation and release applies only to the events of the Debtors' cases and Plan as set forth in the preceding paragraph.  This is not – and shall not be construed to be – a release or exculpation of the Exculpated Parties for matters outside of the Debtors' cases and Plan as set forth in the preceding paragraph.

### 11. Injunctions and Releases

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, equitable remedy, liability or interest released, discharged, stayed, or terminated pursuant to the Plan, including, but not limited to claims for voidable transfers, substantive consolidation,

successor liability, recharacterization, and equitable subordination.  Except as provided in the Plan or the Plan Confirmation Order, as of the Plan Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability or equitable remedy that was stayed or is discharged or an interest or other right of an equity security holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against: (I) (a) the Debtors, (b) the Liquidating Trustee, or (c) alleged alter egos of the Debtors or Liquidating Trustee, or (II) their property; on account of any such discharged, stayed, or enjoined claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan.  By accepting distributions pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section.   The injunction described in this paragraph (the "Injunction") is applicable to *all* creditors and parties in interest with respect to claims or causes of action arising or existing prior to the Plan Effective Date.

All creditors and parties in interest who are presented with a copy of the Plan Confirmation Order are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest ("Actual Knowledge"), such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action. Accordingly, any creditor and/or party in interest charged with such Actual Knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include an award of reasonable attorneys' fees and costs for enforcing the Injunction against

1  any such creditor and/or party in interest.

2  **12. Executory Contracts and Unexpired Leases**

3      On the Effective Date, the Debtors will assume and assign to the Liquidation Trust the

4  executory contracts and unexpired leases set forth on **Exhibit 4** to the Disclosure Statement and

5  Plan with the cure amount set forth on that exhibit.  On the Effective Date, all of the Debtors'

6  remaining executory contracts and unexpired leases which have not previously been assumed or

7  rejected by the Debtors shall be deemed to be rejected by the Debtors effective as of 11:59 PST

8  on the day prior to the Plan Effective Date.  **THE BAR DATE FOR FILING A PROOF OF**

9  **CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN**

10 **UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE**

11 **PLAN EFFECTIVE DATE WILL BE THIRTY (30) DAYS AFTER THE PLAN**

12 **EFFECTIVE DATE.**  Any claim resulting from the Debtors' rejection of an unexpired lease or

13 executory contract will be barred if the proof of claim is not timely filed, unless the Court orders

14 otherwise.  Any allowed claim resulting from the Debtors' rejection of an unexpired lease or

15 executory contract will constitute a Class 5 allowed claim, subject to the limitations set forth in

16 11 U.S.C. § 502(b) and other applicable sections of the Bankruptcy Code.

17 **13. Changes in Rates Subject to Regulatory Commission Approval**

18     The Debtors are not subject to governmental regulatory commission approval of its rates.

19 **14. Retention of Jurisdiction**

20     After confirmation of the Plan and occurrence of the Plan Effective Date, in addition to

21 jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as

22 is legally permissible including for the following purposes:

23     i.    To resolve any and all disputes regarding the operation and interpretation

24 of the Plan and the Plan Confirmation Order;

25     ii.   To determine the allowability, classification, or priority of claims and

26 interests upon objection by the Debtors or the Liquidating Trustee and to consider any objection

27 to claim or interest whether such objection is filed before or after the Effective Date;

28

iii.     To determine the extent, validity and priority of any lien asserted against property of the Debtors and property of the Debtors' estates;

iv.     To construe and take any action to enforce the Plan (subject to the limitations set forth in section III.C.1.a. of this Disclosure Statement and section III.B.1 of the Plan), the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Plan Confirmation Order, and all matters referred to in the Plan and the Plan Confirmation Order, and to determine all matters that may be pending before this Bankruptcy Court in this Bankruptcy Cases on or before the Effective Date with respect to any person or entity related thereto;

v.     To determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi.     To determine any request for payment of administrative expenses;

vii. To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

viii.     To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Cases whether before, on, or after the Effective Date;

ix.     To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

x.     To modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose upon motion by the Liquidating Trustee;

xi.     Except as otherwise provided in the Plan and the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or

appropriate to restrain interference with the Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Plan Confirmation Order;

xii. To issue such orders in aid of consummation of the Plan and the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules;

xiii; To enter a discharge, under 11 U.S.C. § 1141(d), if applicable; and

xiv.    To enter a final decree closing the Bankruptcy Case.

### III.    LIQUIDATING TRUST

#### A. Vesting of Assets in the Liquidating Trust

1.    On the Effective Date, the appointment of the Liquidating Trustee shall become effective and the Liquidating Trustee shall begin to administer the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement and the Plan and may use, acquire and dispose of property of the Liquidating Trust free of any restrictions imposed under the Bankruptcy Code. The Liquidating Trustee shall have the rights, powers and duties provided for by the Plan, the Liquidating Trust Agreement, and by the Confirmation Order. The Liquidating Trustee, in the exercise of its reasonable business judgment, shall be responsible for liquidating the remaining assets of the Debtors, winding up the financial affairs of the Debtors, and for making distributions to holders of claims in as efficient, effective and economical manner as is reasonably practicable so as to produce for holders of claims as favorable a recovery on their claims as is reasonably possible under the circumstances of this case.

2.    The Confirmation Order will provide the Liquidating Trustee with express authority to convey, transfer and assign any and all of the Liquidating Trust Assets and to take all actions necessary to effectuate same and to prosecute, settle and compromise (including, without limitation, by set-off) any and all Estate Causes of Action and Disputed Claims, without any need for notice to creditors or order or approval of the Bankruptcy Court.

3.    As of the Effective Date, the Liquidating Trust assets will be free and clear of all liens, claims and interests of holders of claims and equity interests, except as otherwise provided in the Plan.

**B. Establishment of the Liquidating Trust**

1.  <u>Generally</u>

On the Effective Date the Liquidating Trust Agreement will become effective, and, if not previously signed, the Debtors and the Liquidating Trustee will execute the Liquidating Trust Agreement. The Liquidating Trust is organized and established as a trust for the benefit of the Beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d).

2.  <u>Beneficiaries</u>

In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the Liquidating Trust will be the Holders of all Allowed Claims against the Debtors. The holders of such allowed claims will receive an allocation of the Liquidating Trust assets as provided for in the Plan and the Liquidating Trust Agreement. The beneficiaries of the Liquidating Trust shall be treated as the grantors and owners of such beneficiaries' respective portion of the Liquidating Trust.

3.  <u>Implementation of the Liquidating Trust</u>

On the Effective Date, the Debtors, on behalf of the estates, and the Liquidating Trustee will be authorized and directed to take all such actions as required to transfer to the Liquidating Trust, from the Debtors and estates, the Debtors' assets.  From and after the Effective Date, the Liquidating Trustee will be authorized to, and will, take all such actions to implement the Liquidating Trust Agreement and the provisions of the Plan as are contemplated to be implemented by the Liquidating Trustee, including, without limitation, directing distributions to holders of allowed claims, objecting, compromising and settling claims (including, without limitation, exercising set-off rights and/or seeking the subordination and/or reclassification of claims), prosecuting or otherwise resolving estate causes of action and causing distributions from the Liquidating Trust to be made to the beneficiaries. The funding of the Liquidating Trust will be from the Debtors' cash on hand and assets as of the Effective Date and the proceeds of the liquidation by the Liquidating Trustee of any other Liquidating Trust Assets.

4.  <u>Transfer of the Debtors' Assets</u>

On the Effective Date, pursuant to the Plan and sections 1123, 1141 and 1146(a) of the Bankruptcy Code, the Debtors are authorized and directed to transfer, grant, assign, convey, set over, and deliver to the Liquidating Trustee all of the Debtors' and estates' right, title and interest in and to their assets, including all estate causes of action, free and clear of all liens, claims, encumbrances or interests of any kind in such property, except as otherwise expressly provided in the Plan. To the extent required to implement the transfer of the Debtors' assets from the Debtors and estates to the Liquidating Trust, all persons will cooperate with the Debtors and estates to assist the Debtors and estates to implement said transfers.

5.    Provisions Relating to Federal Income Tax Compliance

A transfer to the Liquidating Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), as a transfer to creditors to the extent creditors are Beneficiaries. For example, such treatment shall apply for purposes of Internal Revenue Code sections 61(a)(12), 483, 1001, 1012 and 1274. Any such transfer shall be treated for federal income tax purposes as a deemed transfer to the beneficiary-creditors followed by a deemed transfer by the beneficiary-creditors to the Liquidating Trust. The beneficiaries of the Liquidating Trust shall be treated for federal income tax purposes as the grantors and deemed owners of the Liquidating Trust.

**C.  Liquidating Trustee and Post-Confirmation Management**

1.    Representative of the Estates

The Debtors shall identify the Liquidating Trustee in its sole discretion, and shall designate the Liquidating Trustee in a notice filed prior to the Plan confirmation hearing. The Liquidating Trustee will be appointed as the representative of the Debtors' estates pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code and as such will be vested with the authority and power (subject to the Liquidating Trust Agreement) to inter alia: (i) object to, settle and compromise claims (including any claim for payment of any administrative expense) against the Debtors (including, without limitation, exercising set-off rights and/or seeking the subordination and/or reclassification of claims) and equity interests in the Debtors; (ii) administer, investigate, prosecute, settle and abandon all estate causes of action assigned to the Liquidating Trust; (iii) make distributions provided for in the Plan, including, but not limited to, on account

of allowed claims; and (iv) take such action as required to administer, wind-down, and close the Chapter 11 Cases.

Except only for the filing of a final decree to close the Chapter 11 Cases pursuant to Rule 3022 of the Bankruptcy Rules, the Liquidating Trustee may take, as representative of the estate, all acts to implement and consummate the Plan and the Liquidating Trust Agreement, including the acts set forth in this Section, without any need for notice to creditors or order or approval of the Bankruptcy Court. As the representative of the estates, the Liquidating Trustee will be vested with all of the rights and powers of the Debtors and estates with respect to all estate causes of action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted in place of the Debtors and estates, as applicable, as the party in interest in all such litigation pending as of the Effective Date.

From and after the Effective Date, the Liquidating Trustee shall, without any further notice or action, order, or approval of the Bankruptcy Court, pay in cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan and Liquidating Trust Agreement incurred by the Liquidating Trust.

2.    No Liability of the Liquidating Trustee

To the maximum extent permitted by law, the Liquidating Trustee, its employees, officers, directors, agents, members, and representatives, and professionals employed or retained by the Liquidating Trustee (collectively, the "**Liquidating Trustee's Agents**"), will not have or incur liability to any person for an act taken or omission made in good faith in connection with or related to the administration of the Liquidating Trust assets, the implementation of the Plan and the distributions made thereunder or distributions made under the Liquidating Trust Agreement; *provided, however***, that the foregoing limitation shall not apply to any damages suffered or incurred by any holder of a claim or beneficiary that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, willful misconduct, or from profit derived from a breach of trust by the Liquidating Trustee or the Liquidating Trustee's Agents**. The Liquidating Trustee, the Liquidating Trustee's Agents, and their respective employees, officers, directors, agents, members, and representatives, and professionals employed or retained by any

of them, will in all respects be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan and the Liquidating Trust Agreement. Entry of the Confirmation Order constitutes a judicial determination that the exculpation provision contained in this Section of the Plan is necessary to, *inter alia*, facilitate Confirmation and feasibility and to minimize potential claims arising after the Effective Date for indemnity, reimbursement or contribution from the Estate, or the Liquidating Trust, or their respective property. The entry of the Confirmation Order confirming the Plan will also constitute a determination of the matters included in the exculpation provisions of the Plan that will be entitled to *res judicata* effect as to any potential claim by any party that would be subject to such exculpation provisions. Notwithstanding the foregoing, nothing herein or in this Section of the Plan will alter any provision in the Liquidating Trust Agreement that provides for the potential liability of the Liquidating Trustee to any Person.

      3.    <u>Compensation of Liquidating Trustee/Removal of Liquidating Trustee</u>

On the Effective Date of the Plan, the Liquidating Trustee shall be appointed to serve under the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee's compensation shall be as provided in the Liquidating Trust Agreement.  The Liquidating Trustee shall serve during the term of the Plan; provided, however, that, upon motion made with notice and an opportunity for a hearing given to the post-Effective Date notice parties, any party-in-interest shall be entitled to request, for cause shown, that the Bankruptcy Court terminate the employment of the Liquidating Trustee and replace it with another Person, who if appointed by final order of the Bankruptcy Court, will have all of the rights, powers and duties provided to the Liquidating Trustee by the Plan, the Liquidating Trust Agreement, the Confirmation Order and by the provisions of the final order of the Bankruptcy Court appointing such replacement Liquidating Trustee.

      4.    <u>Resignation of the Liquidating Trustee</u>

The Liquidating Trustee may resign by giving not less than thirty (30) days' prior written notice thereof to the parties entitled to notice under the Plan. The resignation will be effective on the later of: (a) the date specified in the notice; (b) the date that is thirty (30) days after the date the notice is delivered; and (c) the date the successor Liquidating Trustee accepts his or her

appointment as such.  In the event the original Liquidating Trustee resigns, the Liquidating Trustee shall appoint the successor Liquidating Trustee.  Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment and shall deliver such acceptance to the Bankruptcy Court. Thereupon, such successor Liquidating Trustee shall, without any further act, become vested with all of the properties, rights, powers, trusts and duties of his or her predecessor in the Liquidating Trust with like effect as if originally named herein; provided, however, that the resigning Liquidating Trustee shall, nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor Liquidating Trustee all the estates, properties, rights, powers and trusts of the removed or resigning Liquidating Trustee.

### D.    Cooperation and Funding

All holders of claims, holders of equity interests and other parties-in-interest shall cooperate with the Liquidating Trustee by executing any documents, and by taking any acts, reasonably necessary and appropriate to implement the provisions of the Plan.

The Liquidating Trust shall be entitled to incur, and to be reimbursed for, post-Effective Plan expenses in performing its duties and obligations under the Plan and Liquidating Trust Agreement. All post-Effective Date plan expenses shall be expenses of the Liquidating Trust. The Liquidating Trustee shall have no personal liability for any post-Effective Date plan expenses. The Liquidating Trustee shall disburse funds from the Liquidating Trust assets for the purpose of funding the post-Effective Date plan expenses.

### IV.    TAX CONSEQUENCES OF THE PLAN

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtors.  The Debtors CANNOT and DO NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

The implementation of the Plan may have Federal, state, and local tax consequences to the Debtors, and the Debtors' creditors and equity holders.  No tax opinion has been sought or

will be obtained with respect to any tax consequences of the Plan. *This Disclosure Statement does not constitute and is not intended to constitute either a tax opinion or a tax advice to any person, and the summary contained herein is provided for informational purposes only.*

THE FOLLOWING IS INTENDED TO BE ONLY A SUMMARY OF SELECTED FEDERAL AND STATE INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH, AND RECEIPT OF TAX ADVICE FROM, A TAX PROFESSIONAL. THE SELECTED FEDERAL AND STATE TAX CONSEQUENCES THAT ARE DESCRIBED HEREIN AND OTHER FEDERAL, STATE AND LOCAL TAX CONSEQUENCES THAT ARE NOT ADDRESSED HEREIN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH TAX CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST. ACCORDINGLY, EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST IS STRONGLY ADVISED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN. THE BELOW SUMMARY OF TAX CONSEQUENCES IS NOT INTENDED TO BE AND IS NOT TAX ADVICE.

THE DEBTORS DO NOT INTEND TO REQUEST A TAX RULING FROM THE INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WITH RESPECT TO ANY OF THE TAX CONSEQUENCES OF THE PLAN. CONSEQUENTLY, THE INTERNAL REVENUE SERVICE OR ANOTHER TAXING AUTHORITY MAY DISAGREE WITH AND MAY CONTEST ONE OR MORE OF THE TAX CONSEQUENCES DESCRIBED HEREIN TO THE DEBTORS, HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS.

1.    <u>Federal Income Tax Consequences to Certain Creditors</u>

a.    *In General*

Generally, a holder of a Claim should in most, but not all circumstances, recognize gain or loss equal to the difference between the "amount realized" by such holder in exchange for its Claim and such holder's adjusted tax basis in the Claim. The "amount realized" is equal to the

sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a holder's Claim. The tax basis of a holder in a Claim will generally be equal to the holder's cost therefor. To the extent applicable, the character of any recognized gain or loss (e.g., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year.

A creditor who received cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss as a result of surrendering its Claim. A creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the holders of certain Claims will likely receive only a partial distribution of their allowed claims. Whether the applicable holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the holder and its Claims. Creditors should consult their own tax advisors.

2.    Information Reporting and Backup Withholding

Distributions pursuant to the Plan will be subject to any applicable federal income tax reporting and withholding. The IRC imposes "backup withholding" on certain "reportable" payments to certain taxpayers, including payments of interest. Under the IRC's backup

withholding rules, a holder of a Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan, unless the holder (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional federal income tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of income tax. A holder of a Claim may be required to establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

**THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

## V.    CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Debtors CANNOT and DO NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a plan.  Some of the requirements include that the plan must be proposed in good faith, acceptance of the plan, whether the plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and whether the plan is feasible.  These requirements are not the only requirements for confirmation.

**A.    Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan, but, as explained below, not everyone is entitled to vote to accept or reject the Plan.

### a. Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim or interest which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

### b. What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest files an objection to the claim or interest. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

The deadline for non-governmental creditors to submit claims against the Debtors and their bankruptcy estates is February 18, 2025. The deadline for governmental creditors to submit claims against the Debtors and their bankruptcy estates is May 5, 2025. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtors' schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

A detailed Claims Chart is attached as **Exhibit 5** to the Disclosure Statement. The Claims Chart identifies claims which were scheduled by the Debtors, including the amounts and priorities of the claims and whether the Debtors contends that the claims are disputed, contingent or unliquidated. The Claims Chart also identifies all proofs of claim which were filed by creditors asserting claims against the Debtors, including the amounts and priorities of the claims asserted.

Finally, the Claims Chart indicates whether the Debtors have disputed or presently disputes any portion of the claims.  The Debtors reserve the right to update and modify the Claims Chart at any time and to file objections to claims even if the Claims Chart does not identify any dispute relating to a particular claim.

### c.  What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest has the right to vote only if it is in a class that is <u>impaired</u> under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

The Debtors believe that members of classes 5, 7, 8, and 9 are impaired and entitled to vote to accept or reject the Plan.  Parties who dispute the Debtors' characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Debtors have incorrectly characterized the class.

### d.  Who Is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**e. Who Can Vote in More Than One Class**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**f. Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

**g. Votes Necessary for a Class to Accept the Plan**

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted on the plan, voted in favor of the plan. A class of interests is considered to have "accepted" a plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted on the plan, voted to accept the plan.

**h. Treatment of Non-Accepting Classes**

As noted above, even if <u>all</u> impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if at least one impaired class consents (excluding the votes of any insider) and the non-accepting classes are treated in the manner required by the Bankruptcy Code. The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

**i.    Request for Confirmation Despite Nonacceptance by Impaired Class(es)**

The Debtors will ask the Court to confirm the Plan by cramdown on any and all impaired classes that do not vote to accept the Plan.

**j.    Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims.  Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation of the Debtors.  The Debtors maintain that this requirement is clearly met.

The impaired classes under the Plan consist of classes 5, 7, 8 and 9.  The Debtors must therefore satisfy the "best interest of creditors test" with respect to members of classes 5, 7, 8 and 9 that do not vote to accept the Plan.

In a hypothetical chapter 7 liquidation, the Debtors project that Classes 5, 7, 8, and 9 would receive nothing.  In a hypothetical chapter 7 case, the chapter 7 trustee would hire his/her

own counsel and undertake an investigation of the Bankruptcy Cases and the estates, then bring lawsuits, adding a new layer of administrative expenses in addition to the chapter 11 expenses already incurred. All of these administrative expenses must be paid before payments can be made to Classes 5, 7, 8, and 9. The formula payment to the chapter 7 trustee pursuant to Bankruptcy Code Section 326(a) would also significantly reduce the funds available for distribution to Classes 5, 7, 8, and 9. Because secured creditors are paid before unsecured creditors, the chapter 7 trustee would also have to succeed in disallowing the claims held by the secured creditors to return a recovery Classes 5, 7, 8, and 9. Whatever funds might be in the estates would be used as a litigation fund to bring causes of action in an effort to defeat their multi-million-dollar secured claims and post-petition administrative claims, collect any judgments against them, and then pay those proceeds to the holders of general unsecured claims only after the chapter 7 and chapter 11 administrative expense professional fees had been paid in full. Under these circumstances, the Debtors submit that Plan passes the Best Interest of Creditors Test because it provides at least as much as would be achieved in a hypothetical chapter 7 liquidation. The hypothetical liquidation analysis is attached as **Exhibit 6** to the Disclosure Statement.

### k. Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Liquidating Trustee.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtors will have enough cash on hand on the Plan Effective Date to pay all the claims and expenses which are entitled to be paid on such date. Here the Plan is feasible because it is contemplated that the estates will have funds available from the Sale of the Halladay Property.

The second aspect considers whether the Liquidating Trustee will have enough cash over the life of the Plan to make the required Plan payments. This consideration does not apply here because the Plan contemplates the establishment of a liquidating trust rather than ongoing operations and disbursement from profits of operations.

## VII.    RISK FACTORS REGARDING THE PLAN

One risk posed by the Plan is the potential uncertainty on recovery by the Liquidating Trustee on liquidating the assets in the liquidation trust.  Another risk is that Class 5 may not vote to accept the Plan, in which case the Plan cannot be confirmed.

## VIII.    EFFECT OF CONFIRMATION OF THE PLAN

### A.    Discharge and Channeling Injunction.

The Debtors will not receive a discharge under the Plan.  The Plan shall include an injunction to channel creditors' claims against the Debtors to the Liquidating Trust for payment of their claims.

### B.    Modification of the Plan.

The Debtors may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or re-voting on the Plan if the Debtors modify the Plan before confirmation.  The Liquidating Trustee may also seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

### C.    Post-Confirmation Status Reports.

Until a final decree closing the Debtors' chapter 11 cases being entered, the Liquidating Trustee will file quarterly post-confirmation status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan.

### D.    Post-Confirmation Operations

There shall be no operations post-confirmation.  All of the Debtors' assets and property of the estates shall vest in Liquidating Trust.

### E.    Post-Confirmation Conversion/Dismissal.

A creditor or any other party in interest may bring a motion to convert or dismiss the Bankruptcy Case under Section 1112(b) of the Bankruptcy Code after the Plan is confirmed, but

before the final decree is entered, if there is a default in performing the Plan.  If the Bankruptcy Court orders the Bankruptcy Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Debtors' chapter 11 estates that has not been disbursed pursuant to the Plan will revest in the chapter 7 estates, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during the Bankruptcy Case.  The Plan Confirmation Order may also be revoked under very limited circumstances.  The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation before 180 days after the entry of the Plan Confirmation Order pursuant to 11 U.S.C. § 1144.  If the Debtors and/or the Liquidating Trustee successfully defends against an adversary proceeding or other lawsuit to revoke discharge, revoke the Plan Confirmation Order, or otherwise allege confirmation by fraud, then Debtors and/or the Liquidating Trustee shall be entitled to an award of reasonable attorneys' fees and costs against any such plaintiff and its counsel.

## F.  Final Decree.

Once these estates have been fully administered as referred to in Bankruptcy Rule 3022, the Liquidating Trustee will file a motion with the Bankruptcy Court to obtain a final decree to close the Bankruptcy Cases.  The Liquidating Trustee will be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

/ / /

/ / /

1  | Presented By:

2  | LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

3  |

4  | By:  _/s/ John-Patrick M. Fritz_
   |       JOHN-PATRICK M. FRITZ

5  |       Attorneys for Chapter 11
   |       Debtors and Plan Proponents

6  |
7  | Unrivaled Brands, Inc.
   | Halladay Holding, LLC

8  |

9  |

10 | By:_____
   |       Sabas Carrillo
11 |       Adnant, LLC
   |       Authorized Agent for Debtors
12 |

# EXHIBIT "1"

| Creditor | Address1 | Address2 | City | State | Zip | FILED CLAIM | | | | | SCHEDULED CLAIM | | | | OBJECTION | PROPOSED TREATMENT OF CLAIM | | | |
| | | | | | | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C U D | Basis of Objection, if Any | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount |
| Franchise Tax Board | Bankruptcy Section MS A340 | PO Box 2952 | Sacramento | CA | 95812-2952 | 2 | 1/30/25 | | $2,618.83 | $335.89 | | | | | | | $2,618.83 | $335.89 |

Exhibit 1

# EXHIBIT "2"

| Creditor | Address1 | Address2 | City | State | Zip | Claim # Filed | Date Claim Filed | Secured | Priority | General Unsecured | Schedule "E" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C | U | D | Basis of Objection, if Any | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1149 South LA Street Fashion District | 3435 WILSHIRE BL STE 2820 | | Los Angeles | Ca | 90010-0000 | | | | | | | | $580,000.00 | | | | | | | $580,000.00 |
| 1848 Newport WAM TIC, LLC | 17752 Fitch | | Irvine | CA | 94612-0000 | | | | | | | | $29,165.00 | | | | | | | $29,165.00 |
| 414 Lesser Street, LLC | c/o Avison Young | | San Diego | CA | 92121-0000 | | | | | | | | $5,336.63 | | | | | | | $5,336.63 |
| ACCO Engineered Systems, Inc | PO Box 847360 | | Los Angeles | CA | 90084-7360 | | | | | | | | $854.00 | | | | | | | $854.00 |
| Adnant, LLC | 11516 Downey Ave | | Downey | CA | 90241-0000 | | | | | | | | $4,387,117.76 | | | | | | | $4,387,117.76 |
| ADP Screening & Selection Services, Inc. | PO Box 645177 | | Cincinnati | OH | 45264-0000 | | | | | | | | $846.75 | | | | | | | $846.75 |
| ADT | P.O. Box 371878 | | Pittsburgh | PA | 15250-7878 | | | | | | | | $13.45 | | | | | | | $13.45 |
| AEI Consultants | 2500 Camino Diablo | | Walnut Creek | CA | 94597-0000 | | | | | | | | $2,300.00 | | | | | | | $2,300.00 |
| Affordable Security Shutters | 2213 Silver Fox Circle | | Fairfield | CA | 94534-0000 | | | | | | | | $500.00 | | | | | | | $500.00 |
| Alameda County | 1221 Oak St | Room 131 | Oakland | CA | 94612-0000 | 11 | 12/27/24 | $1,408.82 | | | | | $1,003.05 | | | | | $1,408.82 | | $0.00 |
| Amaren Group | 260 Newport Center Drive, | | Newport Beach | CA | 92660-0000 | | | | | | | | $625.00 | | | | | | | $625.00 |
| AP Triton Consulting | 1851 Heritage Ln. | Suite 138 | Sacramento | CA | 95815-0000 | | | | | | | | $4,400.00 | | | | | | | $4,400.00 |
| Archer Public Affairs | P.O. Box 280 | | Trenton | NJ | 08602-0000 | | | | | | | | $25,000.00 | | | | | | | $25,000.00 |
| Architectural Dimensions | 801 Ygnacio Valley Road | Road Suite 230 | Walnut Creek | CA | 94596-0000 | | | | | | | | $1,406.25 | | | | | | | $1,406.25 |
| Arthur Chan | 1055 Clay Street | | San Fransisco | CA | 94108-0000 | | | | | | | | $3,107,500.00 | | | | | | | $3,107,500.00 |
| Arturo Manuel Sanchez | 224 Riverbrook Way | | Sacramento | CA | 95831-0000 | | | | | | | | $52,650.00 | | | | | | | $52,650.00 |
| Assets Empire LLC | 6763 W Charleston Blvd | | Las Vegas | NV | 89146-0000 | | | | | | | | $4,754.97 | | | | | | | $4,754.97 |
| Auroral Group LLC | 2618 San Miguel Drive | #480 | Newport Beach | CA | 92660-0000 | | | | | | | | $31,000.00 | | | | | | | $31,000.00 |
| B&B Mechanical Services Inc | 1040 Serpentine Lane | #202 | Pleasanton | CA | 94566-0000 | | | | | | | | $16,808.25 | | | | | | | $16,808.25 |
| Baker and Hostetler | P.O Box 70189 | | Cleveland | OH | 44190-0189 | | | | | | | | $153,999.91 | | | | | | | $153,999.91 |
| Bay Air Systems Inc | 1300 Galaxy Ave | Suite 9 | Concord | CA | 94520-0000 | | | | | | | | $15,045.75 | | | | | | | $15,045.75 |
| Bay Alarm Company | PO Box 51041 | | Los Angeles | CA | 90051-5337 | | | | | | | | $421.17 | | | | | | | $421.17 |
| Biotherm Hydronic, Inc | 476 Primero Ct. | | Cotati | CA | 94931-0000 | | | | | | | | $6,844.24 | | | | | | | $6,844.24 |
| Birddog HR | 4453 NW Urbandale Dr | | Des Moines | IA | 50322-0000 | | | | | | | | $4,995.00 | | | | | | | $4,995.00 |
| Brent N Robbins CPA | 5015 Birch St. | | Newport Beach | CA | 92660-0000 | | | | | | | | $27,250.00 | | | | | | | $27,250.00 |
| Broadridge ICS | PO Box 416423 | | Boston | MA | 02241-6423 | 8 | 11/29/24 | $71,090.50 | | | | | $7,126.15 | | | | | | | $71,090.50 |
| Buchalter | 1000 Wilshire Blvd | #1500 | Los Angeles | CA | 90017-0000 | 1 | 11/13/24 | | $571,469.80 | | | | $392,576.10 | | | | | | | $571,469.80 |
| Burns & Levinson LLP | 125 High Street | Attn: Finance Department | Boston | MA | 02110-0000 | | | | | | | | $675.00 | | | | | | | $675.00 |
| C&H Capital Inc. | 2020 Stone Meadow Way | | Cumming | GA | 30041-0000 | | | | | | | | $36,000.00 | | | | | | | $36,000.00 |
| California Department of Financial Protection and Innovation | 2101 Arena Boulevard | | Sacramento | CA | 95834-0000 | | | | | | | | $2,500.00 | | | | | | | $2,500.00 |
| Capitol Services | 206 E 9th St | Suite 1300 | Austin | TX | 78701-0000 | | | | | | | | $2,171.00 | | | | | | | $2,171.00 |
| City of Irvine | Business License Division | | Irvine | CA | 92623-0000 | | | | | | | | $89.00 | | | | | | | $89.00 |
| Clark Hill PLC | 500 Woodward Ave. | Suite 3500 | Detroit | MI | 48226-0000 | | | | | | | | $33,935.75 | | | | | | | $33,935.75 |
| Clean Mist Disinfecting | 245 N Pageant St | | Anaheim | CA | 92807-0000 | | | | | | | | $4,251.08 | | | | | | | $4,251.08 |
| Colorado Nine LLC | 515 East 72nd St, 25F | | New York | NY | 10021-0000 | | | | | | | | $12,000.00 | | | | | | | $12,000.00 |
| Connell Foley LLP | 56 Livingston Avenue | | Roseland | NJ | 07068-0000 | | | | | | | | $77,471.18 | | | | | | | $77,471.18 |
| Comman & Swartz | P.O. Box 10604 | | Newport Beach | CA | 92658-0000 | | | | | | | | $2,265.00 | | | | | | | $2,265.00 |
| County of Alameda, Wts. & Measures | 224 W. Winton Avenue | | Hayward | CA | 94544-0000 | | | | | | | | $623.80 | | | | | | | $623.80 |
| County of Orange | PO Box 4005 | | Santa Ana | CA | 92702-1438 | 5 | 11/22/24 | $2,717.27 | $3,142.49 | | | | $2,021.85 | | | | | $2,717.27 | $3,142.49 | |
| Crawford Integrated Technologies | 3307 Pinole Valley Road | | Pinole | CA | 94564-0000 | | | | | | | | $71,650.30 | | | | | | | $71,650.30 |
| CrossPlans | 23041 Avenida de la Carlota | #300 | Laguna Hills | CA | 92653-0000 | | | | | | | | $1,800.00 | | | | | | | $1,800.00 |
| Crowe LLP | PO Box 51660 | | Los Angeles | CA | 90051-5960 | | | | | | | | $75,447.53 | | | | | | | $75,447.53 |
| CT Corporation | PO Box 4349 | | Carol Stream | IL | 60197-4349 | | | | | | | | $5,310.10 | | | | | | | $5,310.10 |
| CT Lien Solutions | P.O. Box 301133 | | Dallas | TX | 75303-0000 | | | | | | | | $222.00 | | | | | | | $222.00 |
| Culhane, Meadows, Haughian, & Walsh, PLL | PO Box 49716 | | Atlanta | GA | 30359-0000 | | | | | | | | $5,000.00 | | | | | | | $5,000.00 |
| CV Resources | 8583 Irvine Center Drive | #405 | Irvine | CA | 92618-0000 | | | | | | | | $2,569.86 | | | | | | | $2,569.86 |
| Cybba Inc | 580 Harrison Ave | Suite 401 | Boston | MA | 02118-0000 | | | | | | | | $5,630.98 | | | | | | | $5,630.98 |
| Dallas Imbimbo | 17595 Harvard Avenue | #C552 | Irvine | CA | 92614-0000 | | | | | | | | $5,000.00 | | | | | | | $5,000.00 |
| Delaware Secretary of State | Division of Corporations | | Binghamton | NY | 13902-0509 | | | | | | | | $7,394.40 | | | | | | | $7,394.40 |
| DLA Piper LLP | 666 Burrard Street, | Suite 2800 | Vancouver, BC V6C 2Z7 | | | | | | | | | | $3,075.43 | | | | | | | $3,075.43 |
| DLC | 20750 Ventura Blvd., Suite 300 | | Woodland Hills | CA | 91364-0000 | | | | | | | | $4,600.00 | | | | | | | $4,600.00 |
| Dominion Capital, LLC | 256 West 38th St | 15th FL | New York | NY | 10018-0000 | | | | | | | | $1,753,000.00 | | | | | | | $1,753,000.00 |
| Douglas Wilson Companies | 1620 Fifth Ave, Suite 400 | | San Diego | CA | 92101-0000 | | | | | | | | $38,181.25 | | | | | | | $38,181.25 |
| Duane Morris LLP | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | | | | | | | $33,951.83 | | | | | | | $33,951.83 |
| E&E Electronic Engineering Research Inc | 12346 Valley Blvd | Unit #E | El Monte | CA | 91732-0000 | | | | | | | | $11,330.00 | | | | | | | $11,330.00 |
| Elevated Equipment Supply | 2651 E. 45th St | | Vernon | CA | 90058-0000 | | | | | | | | $110.40 | | | | | | | $110.40 |
| Elite Security Group Inc. | 640 Bailey RD | #124 | Pittsburg | CA | 94565-0000 | | | | | | | | $23,520.00 | | | | | | | $23,520.00 |
| Empyreal Enterprises LLC | 2000 Oxford Drive | Suite 440 | Bethel Park | PA | 15102-0000 | | | | | | | | $7,865.00 | | | | | | | $7,865.00 |
| Engin8 LLC | 4701 Victoria Beach Way | | Las Vegas | NV | 89130-0000 | | | | | | | | $3,735.00 | | | | | | | $3,735.00 |
| ENTRC Inc. dba Canix | 2261 Market Street | Ste 5049 | San Francisco | CA | 94114-0000 | | | | | | | | $7,200.00 | | | | | | | $7,200.00 |
| Envirocheck | 2211 West Orangewood Ave | | Orange | CA | 92868-0000 | | | | | | | | $1,170.00 | | | | | | | $1,170.00 |
| Equisolve | 3500 SW Corporate Parkway | Suite 206 | Palm City | FL | 34990-0000 | | | | | | | | $898.00 | | | | | | | $898.00 |
| Eric Baum | 210 N Church Street | Unit 2914 | Charlotte | NC | 28202-0000 | | | | | | | | $31,000.00 | | | | | | | $31,000.00 |
| Face and Body Inc | 1900 Midway Lane | | Smyrna | TN | 37167-0000 | | | | | | | | $110.27 | | | | | | | $110.27 |
| FFG Valuations | 535 Anton Blvd | Suite 1050 | Costa Mesa | CA | 92626-0000 | | | | | | | | $6,750.00 | | | | | | | $6,750.00 |
| FinancialForce, Inc | 595 Market Street, | Suite 2700 | San Francisco | CA | 94105-0000 | | | | | | | | $10,564.61 | | | | | | | $10,564.61 |
| Fire & Security Co | 1152 Beach Street | | Oakland | CA | 94608-0000 | | | | | | | | $2,459.00 | | | | | | | $2,459.00 |
| Ford Credit | P.O. Box 552679 | | Detroit | MI | 48255-0000 | | | | | | | | $700.63 | | | | | | | $700.63 |
| Fox Rothschild LLP | 33 Arch Street, Suite 3110 | | Boston | MA | 02110-0000 | | | | | | | | $45,841.00 | | | | | | | $45,841.00 |
| Franchise Tax Board | PO Box 942857 | | Sacramento | CA | 94257-0531 | 14 | 1/30/25 | $469,747.88 | $93,681.51 | | | | $540,159.44 | | | | Amend. Return | $469,747.88 | $93,681.51 | |
| Fusion LLF, LLC | 80 Broad ST | | New York | NY | 10004-0000 | | | | | | | | $4,550,000.00 | | | | | | | $4,550,000.00 |
| Gateway Acceptance Co | P.O. Box 4053 | | Concord | CA | 94520-0000 | | | | | | | | $379,106.98 | | | | | | | $379,106.98 |
| Glaser Weil Fink Howard Johnson, et al. | 10250 Constellation Boulevard | 19th Floor | Los Angeles | CA | 90067-0000 | 9 | 12/1/24 | | | $282,495.75 | | | $280,000.00 | | | | | | | $282,495.75 |
| Go To Premium Finance | 6200 Canoga Ave | Suite 400 | Woodland Hills | CA | 91367-0000 | | | | | | | | $9,794.39 | | | | | | | $9,794.39 |
| Goodwin Procter LLP | 100 Northern Ave | | Boston | MA | 02210-0000 | | | | | | | | $917.00 | | | | | | | $917.00 |
| Green Engineers | 1031 Marengo Dr | | Glendale | CA | 91206-0000 | | | | | | | | $5,000.00 | | | | | | | $5,000.00 |
| Greenlane Holdings, LLC | C/O Wallin & Russell LLP | 26000 Towne Centre Drive Sui | Foothill Ranch | CA | 92610-0000 | 2 | 11/13/24 | $1,919,769.57 | | | | | $1,858,398.00 | | | | Not Secured | $0.00 | | $1,919,769.57 |
| H2S Engineers Inc | 1124 N Boatswain Circle | | Anaheim | CA | 92801-0000 | | | | | | | | $4,500.00 | | | | | | | $4,500.00 |
| Hay & Associates Inc | 15455 an Fernando Mission Bl | Suite 202 | Mission Hills | CA | 91345-0000 | | | | | | | | $22,733.75 | | | | | | | $22,733.75 |
| Henry C. Levy | 1221 Oak Street | Room 131 | Oakland | CA | 94612-4285 | | | | | | | | $137.91 | | | | | | | $137.91 |
| Henry G. Wykowski & Associates | Attn: Henry Wykowski | | San Francisco | CA | 94104-0000 | | | | | | | | $22,091.76 | | | | | | | $22,091.76 |
| Ice Systems, Inc | 100 Paico Court | Unit 9 | 0 | | 00000-0000 | | | | | | | | $104.63 | | | | | | | $104.63 |
| inCorp Services Inc | 3773 Howard Hughes Parkway | Suite 500S | Las Vegas | NV | 89169-0000 | | | | | | | | $129.00 | | | | | | | $129.00 |
| Inova Employee Assistance | 3949 Pender Dr | Suite 310 | Fairfax | VA | 22030-0000 | | | | | | | | $4,505.96 | | | | | | | $4,505.96 |
| Intelligent Discovery Solutions, Inc | 3000 K Street NW | Suite 330 | Washington | DC | 20007-0000 | | | | | | | | $7,006.82 | | | | | | | $7,006.82 |
| Joe Gerlach | 895 Airport Drive | | Cave Junction | OR | 97523-0000 | | | | | | | | $186,224.00 | | | | | | | $186,224.00 |
| Jolie Kahn | 12E. 49th Street | 11th Floor | New York | NY | 10017-0000 | | | | | | | | $20,000.00 | | | | | | | $20,000.00 |

Exhibit 2

| Creditor | Address1 | Address2 | City | State | Zip | Claim Number | Date Claim Filed | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C U D | Basis of Objection if Any | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| KCSA Strategic Communications, Inc. | 420 Fifth Ave. | 3rd Floor | New York | NY | 10018-0000 | | | | | | | | $7,500.00 | | | | | $7,500.00 |
| Kling Consulting Group | 18008 Sky Park Circle | Circle Suite 250 | Irvine | CA | 92614-0000 | | | | | | | | $1,780.00 | | | | | $1,780.00 |
| Knobbe, Martens, Olsen & Bear | 2040 Main St. | 14th Floor | Irvine | CA | 92614-0000 | | | | | | | | $40,579.16 | | | | | $40,579.16 |
| Ladd Partners | PO Box 8593 | | San Jose | CA | 95155-0000 | | | | | | | | $3,948.75 | | | | | $3,948.75 |
| Leafly Holdings, Inc. | PO Box 92116 | | Las Vegas | NV | 89193-2116 | | | | | | | | $12,900.00 | | | | | $12,900.00 |
| Manatt, Phelps & Phillips, LLP | 2049 Century Park East | | Los Angeles | CA | 90067-0000 | | | | | | | | $599,926.13 | | | | | $599,926.13 |
| MARCA Strategic | 3891 Vrain St. | | Denver | CO | 80212-0000 | | | | | | | | $5,000.00 | | | | | $5,000.00 |
| Marcum, LLP | 600 Anton Blvd | Suite 1600 | Costa Mesa | CA | 92626-0000 | | | | | | | | $192,746.11 | | | | | $192,746.11 |
| Master Bango | 5355 Skylane Blvd | | Santa Rosa | CA | 95403-0000 | | | | | | | | $0.00 | | | | | $0.00 |
| Mayer Brown LLP | 311 W. Monroe Street, STE. 600 | | Chicago | IL | 60606-0000 | | | | | | | | $150,570.80 | | | | | $150,570.80 |
| Miller Nash | 111 SW 5th Avenue, Suite 3400 | | Portland | OR | 92704-0000 | | | | | | | | $87,890.37 | | | | | $87,890.37 |
| Mobile Notary Public | 211 N Sycamore St | | Santa Ana | CA | 92701-0000 | | | | | | | | $205.00 | | | | | $205.00 |
| Monzo HVAC Consulting | 1495 Driftwood Circle | | Fairfield | CA | 94534-0000 | | | | | | | | $647.50 | | | | | $647.50 |
| More Consulting | 96 West 2nd Street | | Morgan Hill | CA | 95037-0000 | | | | | | | | $1,247.50 | | | | | $1,247.50 |
| MX2 Global Protection, Inc. | 27472 Portola Pkwy. | Suite 205-314 | Foothill Ranch | CA | 92610-0000 | | | | | | | | $50,756.38 | | | | | $50,756.38 |
| New Age Compassion Care Center, Inc. | 350 W Martin Luther King Jr Blvd | | Los Angeles | CA | 90037-0000 | | | | | | | | $0.00 | | | | | $0.00 |
| New York State Insurance Fund | 199 Church St | | New York | NY | 10007-0000 | | | | | | | | $407.01 | | | | | $407.01 |
| Nison Consulting | 444 Baist Sr. | | Sayreville | NJ | 08872-0000 | | | | | | | | $47,500.00 | | | | | $47,500.00 |
| No Smoking Allowed Except Turn, LLC | 125 W. LA CADENA DR. | | Riverside | CA | 92501-0000 | | | | | | | | $600,000.00 | | | | | $600,000.00 |
| Nossaman | 777 South Figueroa Street | 34th Floor | Los Angeles | CA | 90017-0000 | | | | | | | | $1,821.50 | | | | | $1,821.50 |
| Okamoto Structural Engineering | 3186 Airway Ave | Suite F | Costa Mesa | CA | 92626-0000 | | | | | | | | $1,250.00 | | | | | $1,250.00 |
| Omni Real Estate IX LLC | 1212 S Flower Street | | Los Angeles | CA | 90015-0000 | | | | | | | | $3,590.54 | | | | | $3,590.54 |
| Orange County Heritage Council | 1754 W. Willits Street | | Santa Ana | CA | 92703-0000 | | | | | | | | $1,000.00 | | | | | $1,000.00 |
| OTC Markets Group, Inc. | 304 Hudson St. | 2nd Floor | New York | NY | 10013-1115 | | | | | | | | $10,000.00 | | | | | $10,000.00 |
| Oxford & Bond LLC | 9249 S Broadway | | Highlands Ranch | CO | 80129-0000 | | | | | | | | $3,500.00 | | | | | $3,500.00 |
| Pacific Plumbing Systems, Inc | 2120 Adams Avenue | | San Leandro | CA | 94577-0000 | | | | | | | | $7,775.00 | | | | | $7,775.00 |
| Paradise Village Associates NF LLC | 2000 McKinney Ave | | Dallas | TX | 75201-0000 | | | | | | | | $31,438.51 | | | | | $31,438.51 |
| PAS, Inc | 10804 Bigge Street | | San Leandro | CA | 94577-0000 | | | | | | | | $38,110.00 | | | | | $38,110.00 |
| Paycom Payroll LLC | 7501 W. Memorial Rd | | Oklahoma City | OK | 73142-0000 | | | | | | | | $43.95 | | | | | $43.95 |
| Payne & Fears | 4 Park Plaza | Suite 1100 | Irvine | CA | 92614-0000 | 13 | 1/9/25 | | $67,705.64 | | | | $61,200.00 | | | | | $67,705.64 |
| PCAOB | 1666 K Street NW | Suite 300 | Washington | DC | 20006-0000 | | | | | | | | $400.00 | | | | | $400.00 |
| People's California, LLC | 3843 S BRISTOL STREET | #614 | Santa Ana | CA | 92704-0000 | | | | | | | | ########### | | | | | $14,821,140.00 |
| People's Guru | 101 S Hoover Blvd, | | Tampa | FL | 33609-0000 | | | | | | | | $8,170.00 | | | | | $8,170.00 |
| Pilrs Design Studio | 9270 Onesto Ave | | Las Vegas | NV | 89148-0000 | | | | | | | | $10,024.00 | | | | | $10,024.00 |
| Precision Advocacy Group LLC | 915 L St. | Suite C-445 | Sacramento | CA | 95814-0000 | | | | | | | | $52,000.00 | | | | | $52,000.00 |
| Precision Air & Refrigeration LLC | 1901 Golden Delicious Ct | | Bakersfield | CA | 93312-0000 | | | | | | | | $14,943.09 | | | | | $14,943.09 |
| Print Zone Plus | 432 W Broadway | | Glendale | CA | 91204-0000 | | | | | | | | $2,513.98 | | | | | $2,513.98 |
| Proactive Investors LLC | 767 3rd Avenue | | New York | NY | 10017-0000 | | | | | | | | $7,442.19 | | | | | $7,442.19 |
| Progressive | 300 North Commons Blvd | | Mayfield Village | OH | | | | | | | | | $7.00 | | | | | $7.00 |
| Pro-Tech Electric | PO Box 986 | | Corona | CA | 92878-0000 | | | | | | | | $6,100.00 | | | | | $6,100.00 |
| Reach Headwear | 2848 Leonis Blvd | | Vernon | CA | 90058-0000 | | | | | | | | $4,070.79 | | | | | $4,070.79 |
| Reno Print Store | 280 Greg St. | #5 | Reno | NV | 89502-0000 | | | | | | | | $9,954.35 | | | | | $9,954.35 |
| Revenue River LLC | 2081 Youngfield St | | Golden | CO | 80401-0000 | | | | | | | | $101,800.00 | | | | | $101,800.00 |
| Sam's Signs Neon & Electrical, Inc | 16719 E. 14th St. | | | | 0 00000-0000 | | | | | | | | $3,530.61 | | | | | $3,530.61 |
| Sectran Security Inc | PO Box 227267 | | Los Angeles | CA | 90022-0000 | | | | | | | | $1,895.96 | | | | | $1,895.96 |
| Shawn Lambert HVAC Inc | PPO Box 1866 | | Huntington Beach | CA | 92647-0000 | | | | | | | | $404.17 | | | | | $404.17 |
| Shout Public Relations, Inc. | 1032 W. 18th St. | Suite A-4 | Costa Mesa | CA | 92627-0000 | | | | | | | | $6,000.00 | | | | | $6,000.00 |
| Shred-It | 28883 Network Place | | Chicago | IL | 60673-1288 | | | | | | | | $4,696.03 | | | | | $4,696.03 |
| Silver State Elevator Co | PO Box 5309 | | Reno | NV | 89513-0000 | | | | | | | | $250.00 | | | | | $250.00 |
| Silver Streak Matthew Guild | 4264 Flowerline Rd | | Olivehurst | CA | 95961-0000 | | | | | | | | $293,387.00 | | | | | $293,387.00 |
| Silver Streak Sterling Harlan | 7273 Kara Drive | | Sacramento | CA | 92528-0000 | | | | | | | | $1,173,601.00 | | | | | $1,173,601.00 |
| SK Builders | 300 Frank H Ogawa Plaza, | #386 | Oakland | CA | 94612-0000 | | | | | | | | $6,890.72 | Will be treated as unsecured | | | | $6,890.72 |
| Sklar Williams PLLC | 410 South Rampart Boulevard | Suite 350 | Las Vegas | NV | 89145-0000 | | | | | | | | $49,533.68 | | | | | $49,533.68 |
| Slater Builders Inc | 3100-B Pullman St | | Costa Mesa | CA | 92626-0000 | | | | | | | | $13,163.34 | | | | | $13,163.34 |
| Sonitrol Orange County | 1334 Blue Oaks Blvd | | Roseville | CA | 95678-0000 | | | | | | | | $646.98 | | | | | $646.98 |
| Sparkletts | PO Box 660579 | | Dallas | TX | 75266-0000 | | | | | | | | $63.58 | | | | | $63.58 |
| Spectrum Business | PO BOX 60074 | | Saint Louis | MO | 63131-0000 | | | | | | | | $194.00 | | | | | $194.00 |
| Spektor Security Solutions | 430 South Empire St | | Anaheim | CA | 92804-0000 | | | | | | | | $4,387.80 | | | | | $4,387.80 |
| Springbig Inc | 621 NW 53rd St | Suite 260 | Boca Raton | FL | 33487-0000 | | | | | | | | $12,000.00 | | | | | $12,000.00 |
| SSBC Owners Association | 8600 Technology Way, | #170 | Reno | NV | 89521-0000 | | | | | | | | $1,018.20 | | | | | $1,018.20 |
| Stanley Convergent Security | Solutions Inc. | Dept. CH 10651 | Palatine | IL | 60055-0000 | | | | | | | | $7,399.49 | | | | | $7,399.49 |
| State of New Jersey | P.O. Box 929 | | Trenton | NJ | 08646-0929 | | | | | | | | $1,896.71 | | | | | $1,896.71 |
| State Water Resources Control Board | PO Box 1888 | | Sacramento | CA | 95812-0000 | | | | | | | | $370.00 | | | | | $370.00 |
| Steptoe & Johnson LLP | 1330 Connecticut Ave, NW | | Washington | DC | 20036-0000 | | | | | | | | $8,574.00 | | | | | $8,574.00 |
| Sterling Consulting Solution LLC | 6853 Copper Glen Circle | | Roseville | CA | 95678-0000 | | | | | | | | $10,492.42 | | | | | $10,492.42 |
| Strategies 360 | 1505 Westlake Ave | N Suite 1000 | Seattle | WA | 98109-0000 | | | | | | | | $24,000.00 | | | | | $24,000.00 |
| Suburban Propane | 240 Route 10 West | | Whippany | NJ | 07981-0000 | 6 | 11/22/24 | | $1,125.80 | | | | $165.00 | | | | | $1,125.80 |
| Sullivan & Worcester LLP | PO BOX 842482 | | New York | NY | 10019-0000 | | | | | | | | $10,000.00 | | | | | $10,000.00 |
| Surfside Solutions Inc. | 64 Wooster St, FL 2 | | New York | NY | 10012-0000 | | | | | | | | $365.00 | | | | | $365.00 |
| Target Corporation | 1000 Nicollet Mall | | Minneapolis | MN | 55403-0000 | | | | | | | | $8.23 | | | | | $8.23 |
| Taz Plumbing | 407 Whitney St | | San Leandro | CA | 94577-0000 | | | | | | | | $2,900.00 | | | | | $2,900.00 |
| Teamviewer | 5741 Rio Vista Drive | | Largo | FL | 33760-0000 | | | | | | | | $1,956.00 | | | | | $1,956.00 |
| Terminix Pest Control | P.O. Box 742592 | | Cincinnati | OH | 45274-2592 | | | | | | | | $174.00 | | | | | $174.00 |
| The Cult Creatives, LLC | 2801 East Spring St | #275 | Long Beach | CA | 90806-0000 | | | | | | | | $3,000.00 | | | | | $3,000.00 |
| The Production Truck Inc. | 1120 Chestnut St. | | Burbank | CA | 91506-0000 | | | | | | | | $320.50 | | | | | $320.50 |
| The Toll Roads | P.O. Box 57011 | | Irvine | CA | 92619-0000 | | | | | | | | $1,794.20 | | | | | $1,794.20 |
| Thomas Love | 385 S Lemon Ave | #234 | Walnut | CA | 91789-0000 | | | | | | | | $14,435.49 | | | | | $14,435.49 |
| Thompson Hine | 335 Madison Avenue | 12th Floor | New York | NY | 10017-0000 | | | | | | | | $535,955.77 | | | | | $535,955.77 |
| Tool Tech | 9265 Research Drive | | Irvine | CA | 92618-0000 | | | | | | | | $97,754.17 | | | | | $97,754.17 |
| Toshiba Business Solutions, USA | File 57202 | | Los Angeles | CA | 90074-7202 | | | | | | | | $235.27 | | | | | $235.27 |
| Toshiba Financial Services | P.O. Box 790448 | | ST Louis | MO | 63179-0000 | | | | | | | | $2,558.01 | | | | | $2,558.01 |
| Towns & Country Event Rentals, Inc. | 7725 Airport Business Park Way | | Van Nus | CA | 91406-0000 | | | | | | | | $1,388.00 | | | | | $1,388.00 |
| UniFirst Corp | 14266 Catalina Street | | San Leandro | CA | 94577-0000 | | | | | | | | $4,768.26 | | | | | $4,768.26 |
| United Lock and Security, Inc. | 3401 Sirius Ave | Suite 9 | Las Vegas | NV | 89102-0000 | | | | | | | | $104.00 | | | | | $104.00 |
| Valvoline Instant Oil Change | P.O. Box 74008513 | | Chicago | IL | 60674-0000 | | | | | | | | $166.36 | | | | | $166.36 |
| Vegas Godspeed, LLC | 6763 W. Charleston Blvd. | | Las Vegas | NV | 89146-0000 | | | | | | | | $32.61 | | | | | $32.61 |
| Verizon Wireless | PO BOX 660108 | | Dallas | TX | 75266-0108 | | | | | | | | $401.50 | | | | | $401.50 |
| Vicente Sederberg LLP | 455 Sherman St | Suite 390 | Denver | CO | 80203-0000 | | | | | | | | $911.68 | | | | | $911.68 |

Exhibit 2

| Creditor | Address1 | Address2 | City | State | Zip | FILED CLAIM | | | | | SCHEDULED CLAIM | | | | OBJECTION | PROPOSED TREATMENT OF CLAIM | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C U D | Basis of Objection, if Any | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount |
| Vvanet Security | Lock Pox 912730 | | Pasadena | CA | 91110-0000 | | | | | | | | $2,518.36 | | | | | $2,518.36 |
| WAMCO | 17752 Fitch | | Irvine | CA | 92614-0000 | | | | | | | | $29,165.00 | | | | | $29,165.00 |
| Washoe County Treasurer | P.O. Box 30039 | | Reno | NV | 89520-3039 | | | | | | | | $1,401.67 | | | | | $1,401.67 |
| WCC MGMT LLC | 2505 Front St | | W. Sacramento | CA | 95691-0000 | | | | | | | | $0.00 | | | | | $0.00 |
| We Architects Group | 7545 Irvine Center Dr. | Suite 200 | Irvine | CA | 92618-0000 | | | | | | | | $3,800.00 | | | | | $3,800.00 |
| Westland Mechanical, LLC | 12223 Highland Avenue | #106-569 | Rancho Cucamonga | CA | 91739-0000 | | | | | | | | $14,500.00 | | | | | $14,500.00 |
| Wex Bank | P.O. Box 4337 | | Carol Stream | IL | 60197-4337 | | | | | | | | $266.00 | | | | | $266.00 |
| WGS Group, Inc | 9454 Wilshire Blvd | | Beverly Hills | Ca | 90212-0000 | | | | | | | | $135,572.42 | | | | | $135,572.42 |
| Wolf Rifkin Sharpiro Schulman & Rabkin | 11400 W. Olympic Blvd. | 9th Floor | Los Angeles | CA | 90064-0000 | | | | | | | | $18,691.97 | | | | | $18,691.97 |
| Woodruff-Sawyer & Co. | P.O. Box 45057 | | SAN FRANCISCO | CA | 94145-9950 | | | | | | | | $10,300.00 | | | | | $10,300.00 |
| Workiva Inc. | 2900 University Blvd | | Ames | IA | 50010-0000 | | | | | | | | $18,960.00 | | | | | $18,960.00 |
| YHLA Architects | 1617 Clay Street | | Oakland | CA | 94612-0000 | | | | | | | | $1,235.00 | | | | | $1,235.00 |
| Zuber Lawler Del Duca LLP | 350 S Grand Ave | Ave Suite 3200 | Los Angeles | CA | 90071-0000 | | | | | | | | $9,605.42 | | | | | $9,605.42 |
| Sterling Harlan | 540 N. Golden Cir. Dr. | Suite 303 | Santa Ana | CA | 92705 | 3 | 11/21/24 | | | ########## | | | | | Duplicate | | | $3,600,000.00 |
| Matthew Guild | 540 N. Golden Cir. Dr. | Suite 303 | Santa Ana | CA | 92705 | 4 | 11/21/24 | | | $900,000.00 | | | | | Duplicate | | | $900,000.00 |
| Uline | 12575 Uline Dr. | | Pleasant Prairie | WI | 53158 | 7 | 11/26/24 | | | $25,010.70 | | | | | | | | $25,010.70 |
| Amex TRS Co., Inc. | Becket and Lee LLP | PO Box 3001 | Malvern | PA | 19355-0701 | 10 | 12/6/24 | | | $1,286.72 | | | | | | | | $1,286.72 |
| Creditors Adjustment Bureau, Inc. | Attn: Kenneth J. Freed | 4340 Fulton Ave., 3d Floor | Sherman Oaks | CA | 91423 | 12 | 1/2/25 | | | $127,803.45 | | | | | | | | $127,803.45 |

Exhibit 2

# EXHIBIT "3"

### UNRIVALED BRANDS, INC., *ET AL.* CREDITOR TRUST AGREEMENT AND DECLARATION OF TRUST

This Creditor Trust agreement and declaration of trust (the "Agreement"), dated as of

_____, 2025, is made by and between Unrivaled Brands, Inc. and Halladay Holdings, LLC

(collectively, the "Debtors"), and _____ (the "Trustee," and together with the

Debtors, the "Parties").

### RECITALS

A.    On November 6, 2024, the Debtors filed voluntary petitions for relief under

chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District

of California, Northern Division (the "Bankruptcy Court").  The Debtors' chapter 11 cases are

being jointly administered under Case No.: 2:24-bk-19227-BB.

B.    On December 4, 2024, the Bankruptcy Court entered an order approving the

employment of Levene Neale Bender Yoo & Golubchik L.L.P. ("LNBYG") as counsel to the

Debtors.

C.    On February 4, 2025, the Debtors filed their Joint Chapter 11 Plan [Docket No.

__] and Disclosure Statement Describing the Plan [Docket No. ___].

D.    On _____, 2025, the Bankruptcy Court entered an order (the "Confirmation

Order") [Docket No. ___] confirming the Plan, which became effective on _____, 2025   (the

"Effective Date").

E.    The Plan provides for the establishment of a Liquidating Trust (the "Trust") upon

the Effective Date of the Plan.

F.    The Confirmation Order provides for the appointment of the Trustee as trustee of

the Trust, and the Plan and this Agreement provide for the appointment as necessary of any

successor to the Trustee.

G.      The Trust is established for the benefit of the Holders of Allowed Claims.

H.      The Trust is established for the purpose of collecting, holding, administering, distributing, and liquidating the Trust Assets (defined in Article 1.3 of this Agreement) for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

I.      Pursuant to the Plan, the Debtors, Trust, Trustee, and Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

J.      The Trust is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code of 1986, as amended ("IRC"), and also (ii) to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).

K      The Trust is further intended to be exempt from the requirements of (i) pursuant to section 1145 of the Bankruptcy Code, the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

**NOW, THEREFORE**, in accordance with the Plan and the Confirmation Order, and in consideration of the premises, and the mutual covenants and agreements of the Parties contained

2

in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement for the purposes of collecting, holding, administering, distributing, and liquidating the Trust Assets for the benefit of the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to Article ___ of the Plan, paragraphs __ and __ of the Confirmation Order, and section 2.3 of this Agreement, all right, title, and interest in, under, and to the Trust Assets shall be absolutely and irrevocably assigned to the Trust and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust;

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth herein and for the benefit of the holders of allowed Claims, as and to the extent provided in the Plan, and for the performance of and compliance with the terms hereof and of the Plan;

PROVIDED, HOWEVER, that upon termination of the Creditor Trust, this Agreement shall cease, terminate, and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Trust Assets and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, "Trust Assets") are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein and in the Plan, solely for the benefit of the Beneficiaries and for no other party.

## ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS, AND INTERPRETATION

3

1.1     <u>Recitals</u>. The Recitals are incorporated into and made terms of this Agreement.

1.2     <u>Use of Plan Definitions</u>. All terms which are used in this Agreement and not defined herein shall have the same meaning set forth in the Plan.

1.3     <u>Definitions</u>. For purposes of this Agreement, "<u>Trust Assets</u>" means all assets of the Debtors transferred to the Trust on the Effective Date of the Plan pursuant to Article _____ of the Plan.

1.4     <u>Interpretation; Headings</u>. All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.5     <u>Conflict Among Plan Documents</u>. In the event of any inconsistency between the Plan or Confirmation Order, as applicable, on the one hand, and this Agreement, on the other hand, the Plan or Confirmation Order, as applicable, shall control and take precedence.

## ARTICLE II

## ESTABLISHMENT OF TRUST

2.1     <u>Effectiveness of Agreement; Name of Trust</u>. This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "Unrivaled Creditor Trust."

2.2     <u>Purpose of Trust</u>. The Debtors and the Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Trust for the primary purpose of collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of

the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan, and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3    Transfer of Trust Assets.

2.3.1    Conveyance of Trust Assets. The Debtors hereby grant, release, assign, transfer, convey, and deliver, on behalf of the Beneficiaries, the Trust Assets to the Trust as of the Effective Date in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement and the Plan.  The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers.

2.3.2    Title to Trust Assets. Pursuant to the Plan, all of the Debtors' right, title and interest in and to the Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date, free and clear of all liens, claims, encumbrances and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the Beneficiaries to establish the Trust.  The Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties; file, litigate, and settle objections to Disputed Claims; and pursue the Estate Causes of Action.  On the Effective Date, the Trust shall stand in the shoes of the Debtors for all purposes with respect to the Trust Assets and administration of the Claims.  To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtors to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole

5

use and purposes set forth in section 2.2 hereof, this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.4     Capacity of Trust. Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5     No Retention of Excess Cash. Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Trust or Trustee retain cash or cash equivalents in excess of a reasonable amount to meet claims, expenses, and contingent liabilities or to maintain the value of the Trust Assets during liquidation other than reserves established pursuant to section 4.1.2 of this Agreement, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

2.6     Acceptance by Trustee. The Trustee accepts his appointment as Trustee of the Trust.

**ARTICLE III**

**ADMINISTRATION OF TRUST**

3.1    <u>Rights, Powers, and Privileges of Trustee Generally</u>. Except as otherwise

provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Trust

Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise

authority over the Trust Assets, over the acquisition, management and disposition thereof, and

over the management and conduct of the affairs of the Trust.  In administering the Trust Assets,

the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue

haste in the administration of the Trust Assets may fail to maximize value for the benefit of the

Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1    <u>Power to Contract</u>. In furtherance of the purpose of the Trust, and except

as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the

Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to

enter into any covenants or agreements binding the Trust, and to execute, acknowledge and

deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with

and advisable in furthering the purpose of the Trust.

3.1.2    <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>.

Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to

take any action on behalf of the Trust that, based upon the advice of counsel or other

professionals, the Trustee determines it is obligated to take or to refrain from taking in the

performance of any duty that the Trustee may owe the Beneficiaries or any other Person under

the Plan, Confirmation Order, or this Agreement.

3.2    <u>Powers of Trustee</u>. Without limiting the generality of the above section 3.1, in

addition to the powers granted in the Plan, the Trustee shall have the power to take the following

actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in

its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

3.2.1    hold legal title to the Trust Assets and to any and all rights of the Debtors and the Beneficiaries in or arising from the Trust Assets;

3.2.2    receive, manage, invest, supervise, protect, and where appropriate, cause the Trust to abandon the Trust Assets, including causing the Trust to invest any moneys held as Trust Assets in accordance with the terms of section 3.7 hereof;

3.2.3    open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.4    cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Agreement, and to perform all obligations thereunder;

3.2.5    collect and liquidate all Trust Assets, including the Estate Causes of Action (as defined in the Plan);

3.2.6    protect and enforce the rights to the Trust Assets (including the Estate Causes of Action) vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.7    investigate any Trust Assets, including the Estate Causes of Action, and any objections to Claims, and cause the Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004 or otherwise;

3.2.8    cause the Trust to employ and pay professionals, claims agents, disbursing agents, and other agents and third parties pursuant to this Agreement;

3.2.9    cause the Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities, and make all other payments relating to the Trust Assets;

3.2.10  cause the Trust to pursue, commence, prosecute (and shall take over, and continue prosecuting, any outstanding claim objections initiated by the Debtors or any other representative of the Estates), compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve the Estate Causes of Action;

3.2.11  calculate and make all Distributions (as defined in the Plan) on behalf of the Trust to the Beneficiaries provided for in, or contemplated by, the Plan and this Agreement;

3.2.12  establish, adjust, and maintain reserves for Disputed Claims required to be administered by the Trust;

3.2.13  cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.14  in reliance initially solely upon the Debtors' Schedules and the official claims registers maintained in the Debtors' bankruptcy cases, review, and where appropriate, cause the Trust to allow or object to Claims and Interests; and supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims required to be administered by the Trust;

3.2.15  in reliance upon the Debtors' Schedules and the official Claims registers maintained in the Chapter 11 Cases, maintain a register evidencing the beneficial interest herein held by each Beneficiary and, in accordance with section 3.8 of this Agreement, such register may be the official Claims register maintained in the Chapter 11 Cases;

3.2.16  cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof, and pay taxes, if any, payable for and on behalf of the Trust; provided, however, that notwithstanding any other provision of this Agreement, the Trustee shall have no personal responsibility for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

3.2.17  cause the Trust to abandon or donate to the ABI Endowment Fund any Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries;

3.2.18  cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.2.19  cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.20  cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.21  cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.2.22 if the Trustee has a conflict or if any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction in accordance with the terms of this Agreement;

3.2.23 undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust; and

3.2.24 take all other actions consistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3    <u>Exclusive Authority to Pursue Estate Causes of Action</u>. The Trust shall have the exclusive right, power, and interest to pursue, settle, waive, release, abandon, or dismiss the Estate Causes of Action. The Trust shall be the sole representative of the Estate under section 1123(b)(3) of the Bankruptcy Code with respect to the Estate Causes of Action.

3.4    <u>Abandonment</u>. If, in the Trustee's reasonable judgment, any non-cash Trust Assets cannot be sold in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to the ABI Endowment Fund.

3.5    <u>Responsibility for Administration of Claims</u>. As of the Effective Date, the Trust shall become responsible for administering and paying Distributions to the Beneficiaries. The Trust shall have the right to object to the allowance of any Claim on any ground and shall be entitled to assert all defenses of the Debtors and its Estate. The Trust shall also be entitled to assert all of the Estate's rights under, without limitation, section 558 of the Bankruptcy Code.

The Trust may also seek estimation of any Claims under and subject to section 502(c) of the Bankruptcy Code.

3.6    <u>Agents and Professionals</u>. The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Debtors.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trustee from engaging counsel or other professionals, including the Trustee itself or the Trustee's firm or their affiliates, to do work for the Trust.  The Trustee may pay the reasonable salaries, fees, and expenses of such Persons out of the Trust Assets in the ordinary course of business.

3.7    <u>Safekeeping and Investment of Trust Assets</u>.  All moneys and other assets received by the Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets, unless and to the extent required by law or the Plan. The Trustee shall not be under any obligation to invest Trust Assets.  Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for Distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan.  Except as otherwise provided by the Plan, the powers of the Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; <u>provided, however,</u> that the scope of

12

permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise.  Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.8    <u>Maintenance and Disposition of Trust Records</u>. The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust.  The books and records maintained by the Trustee may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries or (ii) upon the termination and completion of the winding down of the Trust.

3.9    <u>Conflicts of Interest</u>. The Trustee will appoint a disinterested Person to handle any matter where the Trustee has identified a conflict of interest or the Bankruptcy Court, on motion of a party in interest, determines one exists.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.

3.10    <u>No Bond Required; Procurement of Insurance</u>. Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee

and its agents, representatives, employees or independent contractors under this Agreement. The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

## ARTICLE IV

## DISTRIBUTIONS

4.1    <u>Distribution and Reserve of Trust Assets</u>. Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Trust Assets, subject to the reserves required under the Plan or this Agreement.

4.1.1    <u>Distributions</u>. The Trustee shall cause the Trust to distribute the Trust's net Cash income and net Cash proceeds from the liquidation of the Trust Assets to the Beneficiaries, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust and Trustee, and retention of such amount may preclude Distributions to the Beneficiaries.

4.1.2    <u>Reserves; Pooling of Reserved Funds</u>. Before any Distribution can be made, the Trustee shall, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the Trust, including attorneys' fees and expenses, the fees and expenses of other professionals, and fees owed to the United States Trustee. The Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; <u>provided</u>, <u>however</u>, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

4.1.3    <u>Distributions Net of Reserves and Costs</u>. Distributions shall be made net of reserves in accordance with the Plan and also net of the actual and reasonable costs of making the Distributions.

4.1.4    <u>Right to Rely on Professionals</u>. Without limitation of the generality of section 6.6 of this Agreement, in determining the amount of any Distribution or reserves, the Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

4.2    <u>Method and Timing of Distributions</u>. Distributions to the Beneficiaries will be made from the Trust in accordance with the terms of the Plan (in particular, Article ___) and this Agreement.    The Trust may engage disbursing agents and other Persons to help make Distributions.

4.3    <u>Withholding from Distributions</u>. The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary.    The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.

4.4    <u>Tax Identification Numbers</u>. The Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service and may condition any Distribution to any Beneficiary upon receipt of such identification number.    If a Beneficiary does not timely provide the Trustee with its taxpayer identification number in the

manner and by the deadline established by the Trustee, then the Distribution to such Beneficiary shall be administered in accordance with section 4.5 of this Agreement.

4.5     <u>Unclaimed and Undeliverable Distributions</u>. If any Distribution to a Beneficiary is returned to the Trustee as undeliverable or is otherwise unclaimed, no further Distributions to such Beneficiary shall be made unless and until the Beneficiary claims the Distributions by timely notifying the Trustee in writing of any information necessary to make the Distribution to the Beneficiary in accordance with this Agreement, the Plan, and applicable law, including such Beneficiary's then-current address or taxpayer identification number. If the Beneficiary timely provides the Trustee such missing information, all missed Distributions shall be made to the Beneficiary as soon as is practicable, without interest. Undeliverable or unclaimed Distributions shall be administered in accordance with Article ____ of the Plan.

4.5.1     <u>No Responsibility to Attempt to Locate Beneficiaries</u>. The Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.5.2     <u>Disallowance of Claims; Cancellation of Corresponding Beneficial Interests</u>. All Claims in respect of undeliverable or unclaimed Distributions that pursuant to Article ____ of the Plan have become unclaimed property under section 347(b) of the Bankruptcy Code, shall be deemed Disallowed and expunged, and the corresponding beneficial interests in the Trust of the Beneficiary holding such Disallowed Claims shall be deemed canceled.  The Holder of any such Disallowed Claim shall no longer have any right, claim, or interest in or to any Distributions in respect of such Disallowed Claims.  The Holder of any such Disallowed Claim is forever barred, estopped, and enjoined from receiving any Distributions under this Agreement and from asserting such Disallowed Claim against the Trust or Trustee.

4.5.3    Inapplicability of Unclaimed Property or Escheat Laws. Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit.

4.6    Voided Checks. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Distributions in respect of voided checks shall be treated as unclaimed Distributions under the Plan and administered under section 4.5 of this Agreement and Article ___ of the Plan.

4.7    Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.7.1    The Trustee may elect to cause the Trust to make no payment or Distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.7.2    The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or (ii) all differences have been resolved by a valid written agreement among all such parties to the

satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee. Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the beneficial interest in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee. The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.7.3   In acting or refraining from acting under and in accordance with section 4.7 of this Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person to the extent set forth in Article 6 of this Agreement.

4.8     Priority of Expenses of Trust. The Trust must pay or reserve for all of its expenses before making Distributions.

## ARTICLE V

## BENEFICIARIES

5.1     Interest Beneficial Only. The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2     Ownership of Beneficial Interests Hereunder. Each Beneficiary shall own a beneficial interest herein which shall, subject to section 4.1 herein and the Plan, be entitled to a Distribution in the amounts, and at the times, set forth in the Plan.

5.3     Evidence of Beneficial Interest. Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4    <u>No Right to Accounting</u>. Except as set forth in section 8.4 of this Agreement, neither the Beneficiaries nor their successors, assigns, creditors, or any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or Distribution out of proceeds of Trust Assets.

5.5    <u>No Standing</u>. Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

5.6    <u>Requirement of Undertaking</u>. The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; <u>provided</u>, <u>however</u>, that the provisions of this section 5.6 shall not apply to any suit by the Trustee.

5.7    <u>Limitation on Transferability</u>. It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries

19

until receipt of proper notification and proof of assignment by operation of law. The Trustee may rely upon such proof without the requirement of any further investigation.

5.8    <u>Exemption from Registration</u>. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

5.9    <u>Delivery of Distributions</u>. Subject to the terms of this Agreement, the Trustee shall cause the Trust to make Distributions to the Beneficiaries in the manner provided in the Plan.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1    <u>Parties Dealing With the Trustee</u>. In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2    <u>Limitation of Trustee's Liability</u>. In exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded. But, notwithstanding anything herein or in the Plan to the contrary, neither the Trustee, nor its firms, companies,

affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered. In no event shall the Trustee be liable for indirect, punitive, special, incidental or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action.

6.3     No Liability for Acts of Other Persons. None of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4     No Liability for Acts of Predecessors. No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.5     No Liability for Good Faith Error of Judgment. The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent or engaged in willful misconduct in ascertaining the pertinent facts.

6.6     <u>Reliance by Trustee on Documents and Advice of Counsel or Other Persons</u>.
Except as otherwise provided herein, the Trustee may rely and shall be protected in acting upon
any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order,
or other paper or document believed by them to be genuine and to have been signed or presented
by the proper party or parties.  The Trustee also may engage and consult with its legal counsel
and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered by
them in reliance upon the advice of such counsel, agents, or advisors.

6.7     <u>No Liability For Acts Approved by Bankruptcy Court</u>. The Trustee shall have the
right at any time to seek instructions from the Bankruptcy Court concerning the administration or
disposition of the Trust Assets and the Claims required to be administered by the Trust.  The
Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy
Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud,
gross negligence, or willful misconduct.

6.8     <u>No Personal Obligation for Trust Liabilities</u>. Persons dealing with the Trustee
shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any
such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal,
individual obligation to satisfy any such liability.

6.9     <u>Indemnification</u>. The Trustee and its firms, companies, affiliates, partners,
officers, directors, members, employees, professionals, advisors, attorneys, financial advisors,
investment bankers, disbursing agents, or agents and any of such parties' successors and assigns
(collectively, the "<u>Indemnified Parties</u>" and each, an "<u>Indemnified Party</u>") shall, to the fullest
extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust
from time to time and receive reimbursement from and against any and all loss, liability, expense

(including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under this Agreement or in rendering services by the Indemnified Party to the Trust or the Trustee (the "Indemnified Conduct"), including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

6.9.1 Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this section 6.9 shall be an expense of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust.  The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.9.2 Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 6.9 on submission of invoices for such amounts by the Indemnified Party. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay

such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

6.10    <u>No Implied Obligations</u>. The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

6.11    <u>Confirmation of Survival of Provisions</u>. Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VII

## TAX MATTERS

7.1    <u>Tax Treatment of Trust</u>. Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust. The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

7.2    <u>Annual Reporting and Filing Requirements</u>. Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

7.3    <u>Tax Treatment of Reserves for Disputed Claims</u>. The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any reserve for Disputed Claims, including (i) filing a tax election to treat any and all reserves for Disputed Claims as a Disputed Ownership Fund ("<u>DOF</u>") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

7.4    <u>Valuation of Trust Assets</u>. After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Trust Assets as of the Effective Date, based on the Trustee's good faith determination, and (b) establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

## ARTICLE VIII

## SELECTION, REMOVAL, REPLACEMENT, AND COMPENSATION OF TRUSTEE

8.1    <u>Initial Trustee</u>. The Trustee has been selected by the Debtors and is appointed effective as of the Effective Date. The initial trustee shall be the Trustee.

8.2    <u>Term of Service</u>. The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, incapacity or removal. In the event the Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of termination, whether or not previously invoiced. The provisions of Article VI of this Agreement shall survive the resignation or removal of any Trustee.

8.3    <u>Removal of Trustee</u>. Any Person serving as Trustee may be removed at any time for cause. Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

8.4    <u>Resignation of Trustee</u>. The Trustee may resign at any time on written notice to the parties listed in Article ___ of the Plan (the "<u>Post-Effective Date Notice Parties</u>"), and through the filing of a notice with the Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty days (30) after the date such notice is filed with the Bankruptcy Court. In the event of a resignation, the resigning Trustee shall render to the Post-Effective Date Notice Parties a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

8.5    <u>Appointment of Successor Trustee</u>. Upon the resignation, death, incapacity, or removal of a Trustee, a successor Trustee shall be appointed by the Trustee after notice to the Post-Effective Date Notice Parties.  In the event no party in interest seeks the appointment of a successor Trustee, the Bankruptcy Court may do so on its own motion.  Any successor Trustee so appointed shall consent to and accept its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee.  Any successor Trustee may be appointed to serve only on an interim basis.

8.6    <u>Powers and Duties of Successor Trustee</u>. A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7    <u>Trust Continuance</u>. The resignation, death, incapacitation, dissolution, liquidation, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8    <u>Compensation of Trustee and Costs of Administration</u>. The Trustee shall receive fair and reasonable compensation for its services, which shall be a charge against and paid out of the Trust Assets.  All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Trust Assets prior to any Distribution to the Beneficiaries. The terms of the compensation of the Trustee and the timing and manner of payment are set forth on Exhibit __ hereto.

8.9    <u>Appointment of Supplemental Trustee</u>. If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental Trustee</u>") in such state or jurisdiction and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  The Trustee may confer upon such Supplemental Trustee all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary).  The Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all the Trust Assets by the Supplemental Trustee.  The Trustee may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE IX

## DURATION OF TRUST

9.1    <u>Duration</u>. Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

9.2    <u>Termination On Payment of Trust Expenses and Distribution of Trust Assets</u>. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the Distribution of all Trust Assets in accordance with the

28

provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3    <u>Termination After Five Years</u>. If the Trust has not been previously terminated pursuant to Article 9.2 hereof, on the fifth anniversary of the Effective Date, and unless the Trust term has been extended (such extension to be approved by the Bankruptcy Court within six months of the beginning of the extended term), the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan, and immediately thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in section 9.5 of this Agreement.

9.4    <u>No Termination by Beneficiaries</u>. The Trust may not be terminated at any time by the Beneficiaries.

9.5    <u>Continuance of Trust for Winding Up; Discharge and Release of Trustee</u>. After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed.  Except as otherwise specifically provided herein, upon the Distribution of the Trust Assets including all excess reserves, the Trustee, and the Trust's professionals and agents shall be deemed discharged under this Agreement and have no further duties or obligations hereunder. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, and the Trust's professionals and agents of any further duties, discharging and releasing the Trustee from all liability related to the Trust, and releasing the Trustee's bond, if any.

**ARTICLE X**

## MISCELLANEOUS

10.1    <u>Cumulative Rights and Remedies</u>. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2    <u>Notices</u>. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Beneficiaries at the addresses appearing on the books kept by the Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

<u>Debtors</u>:

Unrivaled Brands, Inc. & Halladay Holding LLC
Attn:
[address]
[address]

With a copy to:

Attn:
[address]
[address]

or to such other address as may from time to time be provided in written notice by the Trustee.

10.3    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to rules governing the conflict of laws.

10.4    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.5    <u>Particular Words</u>. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof,"

"herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.6    <u>Execution</u>. All funds in the Trust shall be deemed in custodia legis until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this Agreement.

10.7    <u>Amendment</u>. This Agreement may be amended by written agreement of the Trustee and by order of the Bankruptcy Court; <u>provided</u>, <u>however</u>, that such amendment may not be inconsistent with the Plan or Confirmation Order.

10.8    <u>No Waiver</u>. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.9    <u>No Relationship Created</u>. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

10.10    <u>Severability</u>. If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.11    <u>Further Assurances</u>. Without limitation of the generality of section 2.4 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent

31

and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

10.12  <u>Counterparts</u>. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.13  <u>Jurisdiction</u>. The Bankruptcy Court shall have jurisdiction over the Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.  The Bankruptcy Court shall have exclusive jurisdiction and venue to hear and finally determine all matters among the Parties arising out of or related to this Agreement or the administration of the Trust.

IN  WITNESS  WHEREOF,  the  Parties  have  or  are  deemed  to  have  executed  this Agreement as of the day and year written above.

_____
SABAS CARRILLO
ADNANT LLC
CHIEF RESTRUCTURING OFFICER
UNRIVALED BRANDS, INC.
HALLADAY HOLDING, LLC

# EXHIBIT "4"

**Unrivaled Brands, Inc., and Halladay Holding, LLC**

**Executory Contracts and Unexpired Leases**

| Contract/Lease | Counterparty | Assume or Reject | Cure Amount |
|---|---|---|---|
| TBD | TBD | TBD | TBD |

# EXHIBIT "5"

| Creditor | Address1 | Address2 | City | State | Zip | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | D U D | Basis of Objection, If Any | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| People's California, LLC | 3843 S BRISTOL STREET | #614 | Santa Ana | Ca | 92704-0000 | | | | | | $3,000,000.00 | | | D | Yes | $0.00 | | |
| FIDELITY MORTGAGE LENDERS, INC. | 11952 WILSHIRE BLVD | | LOS ANGELES | CA | 90025-0000 | | | | | | $2,752,828.44 | | | | | $2,752,828.44 | | |
| Dominion Capital, LLC | 256 West 38th St | 15th FL | New York | NY | 10018-0000 | | | | | | $1,000,000.00 | | | | | $1,000,000.00 | | |
| COUNTY OF ORANGE | ATTN TREASURER TAX COL | PO BOX 1438 | Santa Ana | CA | 92702-0000 | 1 | 11/22/24 | $304,607.72 | | | $239,795.98 | | | | | $304,607.72 | | |
| Franchise Tax Board | Bankruptcy Section MS A340 | PO Box 2952 | Sacramento | CA | 95812-2952 | 2 | 1/30/25 | | $2,618.83 | $335.89 | | | | | | | $2,618.83 | $335.89 |
| **Total** | | | | | | | | $304,607.72 | $2,618.83 | $335.89 | $6,992,624.42 | | | | | $4,057,436.16 | $2,618.83 | $335.89 |

Exhibit 5

| Creditor | Address | Address2 | City | State | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Schedule Secured | Schedule Priority | Schedule "F" Unsecured | C U D | Basis of Objection, if Any | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Locam LLC | 8108 CALIFORNIA CITY BLVD | | California City | CA | 93505-0000 | | | | | $50,000.00 | | | | | | $50,000.00 | |
| 1149 South LA Street Fashion District | 3435 WILSHIRE BL STE 2820 | | Los Angeles | CA | 90010-0000 | | | | | $580,000.00 | | | | | | | $580,000.00 |
| 1848 Newport WAM TIC, LLC | 17752 Fitch | | Irvine | CA | 94612-0000 | | | | | $29,165.00 | | | | | | | $29,165.00 |
| 414 Lesser Street, LLC | c/o Avison Young | | San Diego | CA | 92121-0000 | | | | | $5,336.63 | | | | | | | $5,336.63 |
| ACCO Engineered Systems, Inc | PO Box 847360 | | Los Angeles | CA | 90084-7360 | | | | | $854.00 | | | | | | | $854.00 |
| Adnant, LLC | 11516 Downey Ave | | Downey | CA | 90241-0000 | | | | | $4,387,117.76 | | | | | | | $4,387,117.76 |
| ADP Screening & Selection Services, Inc. | PO Box 645177 | | Cincinnati | OH | 45264-0000 | | | | | $846.75 | | | | | | | $846.75 |
| ADT | P.O. Box 371878 | | Pittsurgh | PA | 15250-7878 | | | | | $13.45 | | | | | | | $13.45 |
| AEI Consultants | 2500 Camino Diablo | | Walnut Creek | CA | 94597-0000 | | | | | $2,300.00 | | | | | | | $2,300.00 |
| Affordable Security Shutters | 2213 Silver Fox Circle | | Fairfield | CA | 94534-0000 | | | | | $500.00 | | | | | | | $500.00 |
| Alameda County | 1221 Oak St | | Oakland | CA | 94612-0000 | 11 | 12/27/24 | $1,408.82 | | | $1,003.05 | | | | | | $1,408.82 | $0.00 |
| Alameda County Environmental Health | PO BOX N | | Alameda | CA | 94501-0000 | | | | | $2,044.25 | | | | | | | $2,044.25 |
| Amaren Group | 260 Newport Center Drive, | | Newport Beach | CA | 92660-0000 | | | | | $625.00 | | | | | | | $625.00 |
| AP Triton Consulting | 1851 Heritage Ln. | Suite 138 | Sacramento | CA | 95815-0000 | | | | | $4,400.00 | | | | | | | $4,400.00 |
| Archer Public Affairs | P.O. Box 280 | | Trenton | NJ | 08602-0000 | | | | | $25,000.00 | | | | | | | $25,000.00 |
| Architectural Dimensions | 801 Ygnacio Valley Road | Road Suite 230 | Walnut Creek | CA | 94596-0000 | | | | | $1,406.25 | | | | | | | $1,406.25 |
| Arthur Chan | 1055 Clay Street | | San Fransisco | CA | 94108-0000 | | | | | $3,107,500.00 | | | | | | | $3,107,500.00 |
| Arturo Manuel Sanchez | 224 Riverbrook Way | | Sacramento | CA | 95831-0000 | | | | | $52,650.00 | | | | | | | $52,650.00 |
| Assets Empire LLC | 6763 W Charleston Blvd | | Las Vegas | NV | 89146-0000 | | | | | $4,754.97 | | | | | | | $4,754.97 |
| Auroral Group LLC | 2618 San Miguel Drive | #480 | Newport Beach | CA | 92660-0000 | | | | | $31,000.00 | | | | | | | $31,000.00 |
| B&B Mechanical Services Inc | 1040 Serpentine Lane | #202 | Pleasanton | CA | 94566-0000 | | | | | $16,808.25 | | | | | | | $16,808.25 |
| Baker and Hostetler | P.O Box 70189 | | Cleveland | OH | 44190-0189 | | | | | $153,999.91 | | | | | | | $153,999.91 |
| Bay Air Systems Inc | 1300 Galaxy Ave | Suite 9 | Concord | CA | 94520-0000 | | | | | $15,045.75 | | | | | | | $15,045.75 |
| Bay Alarm Company | PO Box 51041 | | Los Angeles | CA | 90051-5337 | | | | | $421.17 | | | | | | | $421.17 |
| Biotherm Hydronic, Inc | 476 Primero Ct. | | Cotati | CA | 94931-0000 | | | | | $6,844.24 | | | | | | | $6,844.24 |
| Birddog HR | 4453 NW Urbandale Dr | | Des Moines | IA | 50322-0000 | | | | | $4,995.00 | | | | | | | $4,995.00 |
| Brent N Robbins CPA | 5015 Birch St. | | Newport Beach | CA | 92660-0000 | | | | | $27,250.00 | | | | | | | $27,250.00 |
| Broadridge ICS | PO Box 416423 | | Boston | MA | 02241-6423 | 8 | 11/29/24 | $71,090.50 | | | $7,126.15 | | | | | | | $71,090.50 |
| Buchalter | 1000 Wilshire Blvd | #1500 | Los Angeles | CA | 90017-0000 | 1 | 11/13/24 | $571,469.80 | | | $392,576.10 | | | | | | | $571,469.80 |
| Burns & Levinson LLP | 125 High Street | Attn: Finance Department | Boston | MA | 02110-0000 | | | | | $675.00 | | | | | | | $675.00 |
| C&H Capital Inc. | 2020 Stone Meadow Way | | Cumming | GA | 30041-0000 | | | | | $36,000.00 | | | | | | | $36,000.00 |
| California Department of Financial | Protection and Innovation | 2101 Arena Boulevard | Sacramento | CA | 95834-0000 | | | | | $2,500.00 | | | | | | | $2,500.00 |
| Capitol Services | 206 E 9th St | Suite 1300 | Austin | TX | 78701-0000 | | | | | $2,171.00 | | | | | | | $2,171.00 |
| City of Irvine | Business License Division | | Irvine | CA | 92623-0000 | | | | | $89.00 | | | | | | | $89.00 |
| Clark Hill PLC | 500 Woodward Ave. | Suite 3500 | Detroit | MI | 48226-0000 | | | | | $33,935.75 | | | | | | | $33,935.75 |
| Clean Mist Disinfecting | 245 N Pageant St | | Anaheim | CA | 92807-0000 | | | | | $4,251.08 | | | | | | | $4,251.08 |
| Colorado Nine LLC | 515 East 72nd St, 25F | | New York | NY | 10021-0000 | | | | | $12,000.00 | | | | | | | $12,000.00 |
| Connell Foley LLP | 56 Livingston Avenue | | Roseland | NJ | 07068-0000 | | | | | $77,471.18 | | | | | | | $77,471.18 |
| Cornman & Swartz | P.O. Box 10064 | | Newport Beach | CA | 92658-0000 | | | | | $2,265.00 | | | | | | | $2,265.00 |
| County of Alameda, Wts. & Measures | 224 W. Winton Avenue | | Hayward | CA | 94544-0000 | | | | | $623.80 | | | | | | | $623.80 |
| County of Orange | PO Box 4005 | | Santa Ana | CA | 92702-1438 | 5 | 11/22/24 | $2,717.27 | $3,142.49 | | $2,021.85 | | | | | | $2,717.27 | $3,142.49 |
| Crawford Integrated Technologies | 3307 Pinole Valley Road | | Pinole | CA | 94564-0000 | | | | | $71,650.30 | | | | | | | $71,650.30 |
| CrossPlans | 23041 Avenida de la Carlota | #300 | Laguna Hills | CA | 92653-0000 | | | | | $1,800.00 | | | | | | | $1,800.00 |
| Crowe LLP | PO Box 51660 | | Los Angeles | CA | 90051-5960 | | | | | $75,447.53 | | | | | | | $75,447.53 |
| CT Corporation | PO Box 4349 | | Carol Stream | IL | 60197-4349 | | | | | $5,310.10 | | | | | | | $5,310.10 |
| CT Lien Solutions | P.O. Box 301133 | | Dallas | TX | 75303-0000 | | | | | $222.00 | | | | | | | $222.00 |
| Culhane, Meadows, Haughian, & Walsh, PLL | PO Box 49716 | | Atlanta | GA | 30359-0000 | | | | | $5,000.00 | | | | | | | $5,000.00 |
| CV Resources | 8583 Irvine Center Drive | #405 | Irvine | CA | 92618-0000 | | | | | $2,569.86 | | | | | | | $2,569.86 |
| Cybba Inc | 580 Harrison Ave | Suite 401 | Boston | MA | 02118-0000 | | | | | $5,630.98 | | | | | | | $5,630.98 |
| Dallas Imbimbo | 17595 Harvard Avenue | #C552 | Irvine | CA | 92614-0000 | | | | | $5,000.00 | | | | | | | $5,000.00 |
| Delaware Secretary of State | Division of Corporations | | Binghamton | NY | 13902-5509 | | | | | $7,394.40 | | | | | | | $7,394.40 |
| DLA Piper LLP | 666 Burrard Street | Suite 2800 | Vancouver, BC V6C 2Z7 | | | | | | | $3,075.43 | | | | | | | $3,075.43 |
| DLC | 20750 Ventura Blvd., Suite 300 | | Woodland Hills | CA | 91364-0000 | | | | | $4,600.00 | | | | | | | $4,600.00 |
| Dominion Capital, LLC | 256 West 38th St | 15th FL | New York | NY | 10018-0000 | | | | | $1,753,000.00 | | | | | | | $1,753,000.00 |
| Douglas Wilson Companies | 1620 Fifth Ave, Suite 400 | | San Diego | CA | 92101-0000 | | | | | $8,181.25 | | | | | | | $8,181.25 |
| Duane Morris LLP | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | | | | $3,951.83 | | | | | | | $3,951.83 |
| E&E Electronic Engineering Research Inc | 12346 Valley Blvd | Unit #E | El Monte | CA | 91732-0000 | | | | | $11,330.00 | | | | | | | $11,330.00 |
| Elevated Equipment Supply | 2651 E. 45th St | | Vernon | CA | 90058-0000 | | | | | $110.40 | | | | | | | $110.40 |
| Elite Security Group Inc. | 640 Bailey RD | #124 | Pittsburg | CA | 94565-0000 | | | | | $23,520.00 | | | | | | | $23,520.00 |
| Empyreal Enterprises LLC | 2000 Oxford Drive, | Suite 440 | Bethel Park | PA | 15102-0000 | | | | | $7,865.00 | | | | | | | $7,865.00 |
| Engin8 LLC | 4701 Victoria Beach Way | | Las Vegas | NV | 89130-0000 | | | | | $3,735.00 | | | | | | | $3,735.00 |
| ENTRC Inc. dba Canix | 2261 Market Street | Ste 5049 | San Francisco | CA | 94114-0000 | | | | | $7,200.00 | | | | | | | $7,200.00 |
| Envirocheck | 2211 West Orangewood Ave | | Orange | CA | 92868-0000 | | | | | $1,170.00 | | | | | | | $1,170.00 |
| Equisolve | 3500 SW Corporate Parkway | Suite 206 | Palm City | FL | 34990-0000 | | | | | $898.00 | | | | | | | $898.00 |
| Eric Baum | 210 N Church Street | Unit 2914 | Charlotte | NC | 28202-0000 | | | | | $31,000.00 | | | | | | | $31,000.00 |
| Face and Body Inc | 1900 Midway Lane | | Smyrna | TN | 37167-0000 | | | | | $110.27 | | | | | | | $110.27 |
| FFG Valuations | 535 Anton Blvd | Suite 1050 | Costa Mesa | CA | 92626-0000 | | | | | $6,750.00 | | | | | | | $6,750.00 |
| FinancialForce, Inc | 595 Market Street, | Suite 2700 | San Francisco | CA | 94105-0000 | | | | | $10,564.61 | | | | | | | $10,564.61 |
| Fire & Security Co | 1152 Beach Street | | Oakland | CA | 94608-0000 | | | | | $2,459.00 | | | | | | | $2,459.00 |
| Ford Credit | P.O. Box 552679 | | Detroit | MI | 48255-0000 | | | | | $700.63 | | | | | | | $700.63 |
| Fox Rothschild LLP | 33 Arch Street, Suite 3110 | | Boston | MA | 02110-0000 | | | | | $45,841.00 | | | | | | | $45,841.00 |
| Franchise Tax Board | PO Box 942857 | | Sacramento | CA | 94257-0531 | 14 | 1/30/25 | $469,747.88 | $93,681.51 | | | | | | | Amend. Return | | $469,747.88 | $93,681.51 |
| Fusion LLF, LLC | 80 Broad ST | | New York | NY | 10004-0000 | | | | | $4,500,000.00 | | | | | | | $4,500,000.00 |
| Gateway Acceptance Co | P.O. Box 4053 | | Concord | CA | 94520-0000 | | | | | $379,106.98 | | | | | | | $379,106.98 |
| Glaser Weil Fink Howard Johnson, et al. | 10250 Constellation Boulevard | 19th Floor | Los Angeles | CA | 90067-0000 | 9 | 12/1/24 | $282,495.75 | | | $280,000.00 | | | | | | | $282,495.75 |
| Go To Premium Finance | 6200 Canoga Ave | Suite 400 | Woodland Hills | CA | 91367-0000 | | | | | $9,794.39 | | | | | | | $9,794.39 |
| Goodwin Procter LLP | 100 Northern Ave | | Boston | MA | 02210-0000 | | | | | $917.00 | | | | | | | $917.00 |
| Green Engineers | 1031 Marengo Dr | | Glendale | CA | 91206-0000 | | | | | $5,000.00 | | | | | | | $5,000.00 |
| Greenlane Holdings, LLC | C/O Wallin & Russell LLP | 26000 Towne Centre Drive Sui | Foothill Ranch | CA | 92610-0000 | 2 | 11/13/24 | $1,919,769.57 | | | $1,858,398.00 | | | Not Secured | $0.00 | | | | $1,919,769.57 |
| H2S Engineers Inc | 1124 N Boardman Circle | | Anaheim | CA | 92801-0000 | | | | | $4,500.00 | | | | | | | $4,500.00 |
| Hay & Associates | 15455 an Fernando Mission Bl | Suite 202 | Mission Hills | CA | 91345-0000 | | | | | $22,733.75 | | | | | | | $22,733.75 |
| Henry C. Levy | 1221 Oak Street | | Oakland | CA | 94612-4285 | | | | | $137.91 | | | | | | | $137.91 |
| Henry G. Wykowski & Associates | Attn: Henry Wykowski | | San Francisco | CA | 94104-0000 | | | | | $22,091.76 | | | | | | | $22,091.76 |
| Ice Systems, Inc. | 100 Patco Court | Unit 9 | | NV | | | | | | $104.63 | | | | | | | $104.63 |
| InCorp Services Inc | 3773 Howard Hughes Parkway | Suite 500S | Las Vegas | NV | 89169-0000 | | | | | $129.00 | | | | | | | $129.00 |
| Inova Employee Assistance | 3949 Pender Dr. | Suite 330 | Fairfax | VA | 22030-0000 | | | | | $4,505.96 | | | | | | | $4,505.96 |
| Intelligent Discovery Solutions, Inc | 3000 K Street NW | Suite 330 | Washington | DC | 20007-0000 | | | | | $7,006.82 | | | | | | | $7,006.82 |
| Joe Gerlach | 895 Airport Drive | | Cave Junction | OR | 97523-0000 | | | | | $186,224.00 | | | | | | | $186,224.00 |

Exhibit 5

| Creditor | Address1 | Address2 | City | State | Zip | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C U D | Basis of Objection, if Any | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jolie Kahn | 12E. 49th Street | 11th Floor | New York | NY | 10017-0000 | | | | | | | | $20,000.00 | | | | | $20,000.00 |
| KCSA Strategic Communications, Inc. | 420 Fifth Ave. | 3rd Floor | New York | NY | 10018-0000 | | | | | | | | $7,500.00 | | | | | $7,500.00 |
| Kling Consulting Group | 18008 Sky Park Circle | Circle Suite 250 | Irvine | CA | 92614-0000 | | | | | | | | $1,780.00 | | | | | $1,780.00 |
| Knobbe, Martens, Olsen & Bear | 2040 Main St. | 14th Floor | Irvine | CA | 92614-0000 | | | | | | | | $40,579.16 | | | | | $40,579.16 |
| Ladd Partners | PO Box 8593 | | San Jose | CA | 95155-0000 | | | | | | | | $3,948.75 | | | | | $3,948.75 |
| Leafly Holdings, Inc. | PO Box 92116 | | Las Vegas | NV | 89193-2116 | | | | | | | | $12,900.00 | | | | | $12,900.00 |
| Manatt, Phelps & Phillips, LLP | 2049 Century Park East | | Los Angeles | CA | 90067-0000 | | | | | | | | $599,926.13 | | | | | $599,926.13 |
| MARCA Strategic | 3891 Vrain St. | | Denver | CO | 80212-0000 | | | | | | | | $5,000.00 | | | | | $5,000.00 |
| Marcum, LLP | 600 Anton Blvd | Suite 1600 | Costa Mesa | CA | 92626-0000 | | | | | | | | $192,746.11 | | | | | $192,746.11 |
| Master Bango | 5355 Skylane Blvd | | Santa Rosa | CA | 95403-0000 | | | | | | | | $0.00 | | | | | $0.00 |
| Mayer Brown LLP | 311 W. Monroe Street, STE. 600 | | Chicago | IL | 60606-0000 | | | | | | | | $150,570.80 | | | | | $150,570.80 |
| Miller Nash | 111 SW 5th Avenue, Suite 3400 | | Portland | OR | 92704-0000 | | | | | | | | $87,890.37 | | | | | $87,890.37 |
| Mobile Notary Public | 211 N Sycamore St | | Santa Ana | CA | 92701-0000 | | | | | | | | $205.00 | | | | | $205.00 |
| Monzo HVAC Consulting | 1495 Driftwood Circle | | Fairfield | CA | 94534-0000 | | | | | | | | $647.50 | | | | | $647.50 |
| More Consulting | 96 West 2nd Street | | Morgan Hill | CA | 95037-0000 | | | | | | | | $1,247.50 | | | | | $1,247.50 |
| MX2 Global Protection, Inc. | 27472 Portola Pkwy, | Suite 205-314 | Foothill Ranch | CA | 92610-0000 | | | | | | | | $50,756.38 | | | | | $50,756.38 |
| New Age Compassion Care Center, Inc. | 350 W Martin Luther King Jr Blvd | | Los Angeles | CA | 90037-0000 | | | | | | | | $0.00 | | | | | $0.00 |
| New York State Insurance Fund | 199 Church St | | New York | NY | 10007-0000 | | | | | | | | $407.01 | | | | | $407.01 |
| Nison Consulting | 444 Bald Sr. | | Sayreville | NJ | 08872-0000 | | | | | | | | $47,500.00 | | | | | $47,500.00 |
| No Smoking Allowed Except Turn, LLC | 125 W. LA CADENA DR. | | Riverside | CA | 92501-0000 | | | | | | | | $600,000.00 | | | | | $600,000.00 |
| Nossaman | 777 South Figueroa Street | 34th Floor | Los Angeles | CA | 90017-0000 | | | | | | | | $1,821.50 | | | | | $1,821.50 |
| Okamoto Structural Engineering | 3186 Airway Ave | Suite F | Costa Mesa | CA | 92626-0000 | | | | | | | | $1,250.00 | | | | | $1,250.00 |
| Omni Real Estate IX LLC | 1212 S Flower Street | | Los Angeles | CA | 90015-0000 | | | | | | | | $3,590.54 | | | | | $3,590.54 |
| Orange County Heritage Council | 1754 W. Wilts Street | | Santa Ana | CA | 92703-0000 | | | | | | | | $1,000.00 | | | | | $1,000.00 |
| OTC Markets Group, Inc. | 304 Hudson St. | 2nd Floor | New York | NY | 10013-1015 | | | | | | | | $10,000.00 | | | | | $10,000.00 |
| Oxford & Bond LLC | 9249 S Broadway | | Highlands Ranch | CO | 80129-0000 | | | | | | | | $3,500.00 | | | | | $3,500.00 |
| Pacific Plumbing Systems, Inc | 2120 Adams Avenue | | San Leandro | CA | 94577-0000 | | | | | | | | $7,775.00 | | | | | $7,775.00 |
| Paradise Village Associates NF LLC | 2000 McKinney Ave | | Dallas | TX | 75201-0000 | | | | | | | | $31,438.51 | | | | | $31,438.51 |
| PAS, Inc | 10804 Bigge Street | | San Leandro | CA | 94577-0000 | | | | | | | | $38,110.00 | | | | | $38,110.00 |
| Paycom Payroll LLC | 7501 W. Memorial Rd | | Oklahoma City | OK | 73142-0000 | | | | | | | | $43.95 | | | | | $43.95 |
| Payne & Fears | 4 Park Plaza | Suite 1100 | Irvine | CA | 92614-0000 | 13 | 1/9/25 | $67,705.64 | | | | | $61,200.00 | | | | | $67,705.64 |
| PCAOB | 1666 K Street NW | Suite 300 | Washington | DC | 20006-0000 | | | | | | | | $400.00 | | | | | $400.00 |
| People's California, LLC | 3843 S BRISTOL STREET | #614 | Santa Ana | Ca | 92704-0000 | | | | | | ########## | | $14,821,140.00 | | | | | $14,821,140.00 |
| People's Guru | 101 S Hoover Blvd, | | Tampa | FL | 33609-0000 | | | | | | | | $8,170.00 | | | | | $8,170.00 |
| Pilns Design Studio | 9270 Onesto Ave | | Las Vegas | NV | 89148-0000 | | | | | | | | $10,024.00 | | | | | $10,024.00 |
| Precision Advocacy Group LLC | 915 L St. | Suite C-445 | Sacramento | CA | 95814-0000 | | | | | | | | $52,000.00 | | | | | $52,000.00 |
| Precision Air & Refrigeration LLC | 1901 Golden Delicious Ct | | Bakersfield | CA | 93312-0000 | | | | | | | | $14,943.09 | | | | | $14,943.09 |
| Print Zone Plus | 432 W Broadway | | Glendale | CA | 91204-0000 | | | | | | | | $2,513.98 | | | | | $2,513.98 |
| Proactive Investors LLC | 767 3rd Avenue | | New York | NY | 10017-0000 | | | | | | | | $7,442.19 | | | | | $7,442.19 |
| Progressive | 300 North Commons Blvd | | Mayfield Village | OH | 44143-0000 | | | | | | | | $7.00 | | | | | $7.00 |
| Pro-Tech Electric | PO Box 986 | | Corona | CA | 92878-0000 | | | | | | | | $6,100.00 | | | | | $6,100.00 |
| Reach Headwear | 2848 Leonis Blvd | | Vernon | CA | 90058-0000 | | | | | | | | $4,070.79 | | | | | $4,070.79 |
| Reno Print Store | 280 Greg St. | #5 | Reno | NV | 89502-0000 | | | | | | | | $9,954.35 | | | | | $9,954.35 |
| Revenue River LLC | 2081 Youngfield St | | Golden | CO | 80401-0000 | | | | | | | | $101,800.00 | | | | | $101,800.00 |
| Sam's Signs Neon & Electrical, Inc | 16719 E. 14th St. | | 0 | | 00000-0000 | | | | | | | | $3,530.61 | | | | | $3,530.61 |
| Sectran Security Inc | PO Box 227267 | | Los Angeles | CA | 90022-0000 | | | | | | | | $1,895.96 | | | | | $1,895.96 |
| Shawn Lambert HVAC Inc | PPO Box 1866 | | Huntington Beach | CA | 92647-0000 | | | | | | | | $404.17 | | | | | $404.17 |
| Shout Public Relations, Inc. | 1032 W. 18th St. | Suite A-4 | Costa Mesa | CA | 92627-0000 | | | | | | | | $6,000.00 | | | | | $6,000.00 |
| Shred-It | 28883 Network Place | | Chicago | IL | 60673-1288 | | | | | | | | $4,696.03 | | | | | $4,696.03 |
| Silver State Elevator Co | PO Box 5309 | | Reno | NV | 89513-0000 | | | | | | | | $250.00 | | | | | $250.00 |
| Silver Streak Matthew Guild | 4264 Powerline Rd | | Olivehurst | CA | 95961-0000 | | | | | | | | $293,387.00 | | | | | $293,387.00 |
| Silver Streak Sterling Harlan | 7273 Kara Drive | | Sacramento | CA | 92528-0000 | | | | | | | | $1,173,601.00 | | | | | $1,173,601.00 |
| SK Builders | 200 Frank H Ogawa Plaza. | #386 | Oakland | CA | 94612-0000 | | | | | | | | $6,890.72 | | Will be treated as unsecured | | | $6,890.72 |
| Sklar Williams PLLC | 410 South Rampart Boulevard | Suite 350 | Las Vegas | NV | 89145-0000 | | | | | | | | $49,533.68 | | | | | $49,533.68 |
| Slater Builders Inc. | 3100-B Pullman St | | Costa Mesa | CA | 92625-0000 | | | | | | | | $13,163.34 | | | | | $13,163.34 |
| Sonitrol Orange County | 1334 Blue Oaks Blvd. | | Roseville | CA | 95678-0000 | | | | | | | | $646.98 | | | | | $646.98 |
| Sparkletts | PO Box 660579 | | Dallas | TX | 75266-0000 | | | | | | | | $63.58 | | | | | $63.58 |
| Spectrum Business | PO BOX 60074 | | Saint Louis | MO | 63131-0000 | | | | | | | | $194.00 | | | | | $194.00 |
| Spektor Security Solutions | 430 South Empire St | | Anaheim | CA | 92802-0000 | | | | | | | | $4,387.80 | | | | | $4,387.80 |
| Springbig Inc | 621 NW 53rd St | Suite 260 | Boca Raton | FL | 33487-0000 | | | | | | | | $12,000.36 | | | | | $12,000.36 |
| SSBC Owners Association | 8600 Technology Way, | #170 | Reno | NV | 89521-0000 | | | | | | | | $1,018.20 | | | | | $1,018.20 |
| Stanley Convergent Security | Solutions Inc. | Dept. CH 10651 | Palatine | IL | 60055-0000 | | | | | | | | $7,399.49 | | | | | $7,399.49 |
| State of New Jersey | P.O. Box 929 | | Trenton | NJ | 08646-0929 | | | | | | | | $1,896.71 | | | | | $1,896.71 |
| State Water Resources Control Board | PO Box 1888 | | Sacramento | CA | 95812-0000 | | | | | | | | $370.00 | | | | | $370.00 |
| Steptoe & Johnson LLP | 1330 Connecticut Ave, NW | | Washington | DC | 20036-0000 | | | | | | | | $8,574.00 | | | | | $8,574.00 |
| Sterling Consulting Solution LLC | 6853 Copper Glen Circle | | Roseville | CA | 95678-0000 | | | | | | | | $10,492.42 | | | | | $10,492.42 |
| Strategies 360 | 1505 Westlake Ave | N Suite 1000 | Seattle | WA | 98109-0000 | | | | | | | | $24,000.00 | | | | | $24,000.00 |
| Suburban Propane | 240 Route 10 West | | Whippany | NJ | 07981-0000 | 6 | 11/22/24 | $1,125.80 | | | | | $165.00 | | | | | $1,125.80 |
| Sullivan & Worcester LLP | PO BOX 842482 | | New York | NY | 10019-0000 | | | | | | | | $10,000.00 | | | | | $10,000.00 |
| Surfside Solutions Inc | 64 Wooster St. FL 2 | | New York | NY | 10012-0000 | | | | | | | | $365.00 | | | | | $365.00 |
| Target Corporation | 1000 Nicollet Mall | | Minneapolis | MN | 55403-0000 | | | | | | | | $8.23 | | | | | $8.23 |
| T2 Plumbing | 407 Whitney St | | San Leandro | CA | 94577-0000 | | | | | | | | $2,900.00 | | | | | $2,900.00 |
| Teamviewer | 5741 Rio Vista Drive | | Largo | FL | 33760-0000 | | | | | | | | $1,956.00 | | | | | $1,956.00 |
| Terminix Pest Control | P.O. Box 742592 | | Cincinnati | OH | 45274-2592 | | | | | | | | $174.00 | | | | | $174.00 |
| The Cult Creatives, LLC | 2801 East Spring St | #275 | Long Beach | CA | 90808-0000 | | | | | | | | $3,000.00 | | | | | $3,000.00 |
| The Production Truck Inc. | 1120 Chestnut St. | | Burbank | CA | 91506-0000 | | | | | | | | $320.50 | | | | | $320.50 |
| The Toll Roads | P.O. Box 57011 | | Irvine | CA | 92619-7011 | | | | | | | | $1,794.20 | | | | | $1,794.20 |
| Thomas Love | 385 S Lemon Ave | #234 | Walnut | CA | 91789-0000 | | | | | | | | $14,435.49 | | | | | $14,435.49 |
| Thompson Hine | 335 Madison Avenue | 12th Floor | New York | NY | 10017-0000 | | | | | | | | $535,955.77 | | | | | $535,955.77 |
| Todi Tech | 9265 Research Drive | | Irvine | CA | 92618-0000 | | | | | | | | $97,754.17 | | | | | $97,754.17 |
| Toshiba Business Solutions, USA | File 57202 | | Los Angeles | CA | 90074-7222 | | | | | | | | $235.27 | | | | | $235.27 |
| Toshiba Financial Services | P.O. Box 790448 | | ST Louis | MO | 63179-0000 | | | | | | | | $2,558.01 | | | | | $2,558.01 |
| Towns & Country Event Rentals, Inc | 7725 Airport Business Park Way | | Van Nuys | CA | 91406-0000 | | | | | | | | $1,388.00 | | | | | $1,388.00 |
| UniFirst Corp | 14266 Catalina Street | | San Leandro | CA | 94577-0000 | | | | | | | | $4,768.26 | | | | | $4,768.26 |
| United Lock and Security, Inc | 3401 Sirius Ave | Suite 9 | Las Vegas | NV | 89102-0000 | | | | | | | | $104.00 | | | | | $104.00 |
| Valvoline Instant Oil Change | P.O. Box 74008513 | | Chicago | IL | 60674-0000 | | | | | | | | $166.36 | | | | | $166.36 |
| Vegas Godspeed, LLC | 6763 W. Charleston Blvd. | | Las Vegas | NV | 89146-0000 | | | | | | | | $32.61 | | | | | $32.61 |
| Verizon Wireless | PO BOX 660108 | | Dallas | TX | 75266-0108 | | | | | | | | $401.50 | | | | | $401.50 |

Exhibit 5

| Creditor | Address1 | Address2 | City | State | Zip | Claim No. | Date Claim Filed | Secured | Priority | General Unsecured | Schedule "F" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C U D | Basis of Objection, If Any | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | FILED CLAIM | | | SCHEDULED CLAIM | | | | OBJECTION | PROPOSED TREATMENT OF CLAIM | | |
| Vicente Sederberg LLP | 455 Sherman St | Suite 390 | Denver | CA | 80203-0000 | | | | | | | | $911.68 | | | | | $911.68 |
| Vvanet Security | Lock Pox 912730 | | Pasadena | CA | 91110-0000 | | | | | | | | $2,518.36 | | | | | $2,518.36 |
| WAMCO | 17752 Fitch | | Irvine | CA | 92614-0000 | | | | | | | | $29,165.00 | | | | | $29,165.00 |
| Washoe County Treasurer | P.O. Box 30039 | | Reno | NV | 89520-3039 | | | | | | | | $1,401.67 | | | | | $1,401.67 |
| WCC MGMT LLC | 2505 Front St | | W. Sacramento | CA | 95691-0000 | | | | | | | | $0.00 | | | | | $0.00 |
| We Architects Group | 7545 Irvine Center Dr. | Suite 200 | Irvine | CA | 92618-0000 | | | | | | | | $3,800.00 | | | | | $3,800.00 |
| Westland Mechanical, LLC | 12223 Highland Avenue | #106-569 | Rancho Cucamonga | CA | 91739-0000 | | | | | | | | $14,500.00 | | | | | $14,500.00 |
| Wex Bank | P.O. Box 4337 | | Carol Stream | IL | 60197-4337 | | | | | | | | $266.00 | | | | | $266.00 |
| WGS Group, Inc | 9454 Wilshire Blvd | | Beverly Hills | Ca | 90212-0000 | | | | | | | | $135,572.42 | | | | | $135,572.42 |
| Wolf Rifkin Sharpiro Schulman & Rabkin | 11400 W. Olympic Blvd. | 9th Floor | Los Angeles | CA | 90064-0000 | | | | | | | | $18,691.97 | | | | | $18,691.97 |
| Woodruff-Sawyer & Co. | P.O. Box 45057 | | SAN FRANCISCO | CA | 94145-9950 | | | | | | | | $10,300.00 | | | | | $10,300.00 |
| Workiva Inc. | 2900 University Blvd | | Ames | IA | 50010-0000 | | | | | | | | $18,960.00 | | | | | $18,960.00 |
| YHLA Architects | 1617 Clay Street | | Oakland | CA | 94612-0000 | | | | | | | | $1,235.00 | | | | | $1,235.00 |
| Zuber Lawler Del Duca LLP | 350 S Grand Ave | Ave Suite 3200 | Los Angeles | CA | 90071-0000 | | | | | | | | $9,605.42 | | | | | $9,605.42 |
| Sterling Harlan | 540 N. Golden Cir. Dr. | Suite 303 | Santa Ana | CA | 92705 | 3 | 11/21/24 | | | ########### | | | | | Duplicate | | | $3,600,000.00 |
| Matthew Guild | 540 N. Golden Cir. Dr. | Suite 303 | Santa Ana | CA | 92705 | 4 | 11/21/24 | | | $900,000.00 | | | | | Duplicate | | | $900,000.00 |
| Uline | 12575 Uline Dr. | | Pleasant Prairie | WI | 53158 | 7 | 11/26/24 | | | $25,010.70 | | | | | | | | $25,010.70 |
| Amex TRS Co., Inc. | Becket and Lee LLP | PO Box 3001 | Malvern | PA | 19355-0701 | 10 | 12/6/24 | | | $1,286.72 | | | | | | | | $1,286.72 |
| Creditors Adjustment Bureau, Inc. | Attn: Kenneth J. Freed | 4340 Fulton Ave., 3d Floor | Sherman Oaks | CA | 91423 | 12 | 1/2/25 | | | $127,803.45 | | | | | | | | $127,803.45 |
| Total | | | | | | | | $1,919,769.57 | $473,873.97 | ########### | $50,000.00 | $0.00 | ########### | | | $50,000.00 | $473,873.97 | $43,106,122.46 |

Exhibit 5

# EXHIBIT "6"

Unrivaled Brands, Inc. & Halladay Holding, LLC
Plan & Disclosure Statement - Hypothetical Liquidation Analysis

| Halladay Asset | Chapter 11 | Liquidation Discount | Chapter 7 | |
|---|---|---|---|---|
| Halladay Property | $5,303,320.00 | 0% | $5,303,320.00 | |
| | | | | |
| **Less Claims:** | | | | |
| Price Reduction Credits | $200,000.00 | | $200,000.00 | |
| Broker Commission | $318,199.20 | | $318,199.20 | |
| Closing Costs at 1% | $53,033.20 | | $53,033.20 | |
| County of Orange | $242,483.38 | | $242,483.38 | 7/1/2024 |
| County of Orange 24-25 Tax Yr | $62,124.34 | | $62,124.34 | 2/7/2025 |
| Prorated Tax Credit | -$24,509.33 | | -$24,509.33 | |
| LJ Capital Partners, et al. | $2,840,716.84 | | $2,840,716.84 | |
| People's California LLC | $0.00 | | $0.00 | |
| Dominion Capital LLC et al. | $1,000,000.00 | | $1,000,000.00 | |
| **Total Claims** | **$4,692,047.63** | | **$4,692,047.63** | |
| | | | | |
| **Net Sale Proceeds** | **$611,272.37** | | **$611,272.37** | |
| | | | | |
| **Less: Admin Expenses & Taxes** | | | | |
| Chapter 7 Trustee compensation | $0.00 | | $182,349.60 | |
| Chapter 7 Legal and accounting fees | $0.00 | | $100,000.00 | |
| Chapter 11 Estate Prof. fees | $250,000.00 | | $250,000.00 | |
| Priority Taxes | $2,955.00 | | $2,955.00 | |
| **Total** | **$252,955.00** | | **$535,304.60** | |
| | | | | |
| **Excess Halladay Sale Proceeds** | **$358,317.37** | | **$75,967.77** | |

| Unrivaled Asset | Chapter 11 | Liquidation Discount | Chapter 7 |
|---|---|---|---|
| Excess Halladay Sale Proceeds | $358,317.37 | see above | $75,967.77 |
| Cash on Hand | $45,000.00 | | $45,000.00 |
| Mystic Holdings, Inc. Shares | $0.00 | N/A | $0.00 |
| Avoidance Actions | Unknown | N/A | Unknown |
| **Total Unrivaled Assets** | **$403,317.37** | | **$120,967.77** |
| | | | |
| **Less Claims:** | | | |
| Locam LLC (secured) | $50,000.00 | N/A | $55,000.00 |
| Chapter 7 Trustee compensation | $0.00 | N/A | $5,250.00 |
| Chapter 7 Legal and accounting fees | $0.00 | N/A | included above |
| Chapter 11 Estate Prof. fees | included above | N/A | included above |
| Priority Tax Claims | $469,748.00 | N/A | $15,717.77 |
| | | | |
| **Available for General Unsec. Creditors** | **$0.00** | | **$0.00** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document **Disclosure Statement Describing Debtors' Joint Chapter 11 Plan, Dated February 4, 2025**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 4, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Reem J Bello    rbello@goeforlaw.com, kmurphy@goeforlaw.com**
- **Robert Carrasco    rmc@lnbyg.com, rmc@lnbyg.com**
- **John-Patrick M Fritz    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com**
- **David Samuel Shevitz    David.S.Shevitz@usdoj.gov**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Daniel Wall    dwall@wallinrussell.com**
- **Pamela Kohlman Webster    pwebster@buchalter.com, smartin@buchalter.com**

**2. SERVED BY UNITED STATES MAIL**: On **February 4, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| | |
|---|---|
| The Honorable Sheri Bluebond<br>United States Bankruptcy Court<br>Central District of California<br>Edward R. Roybal Federal Building and Courthouse<br>255 E. Temple Street, Suite 1534 / Courtroom 1539<br>Los Angeles, CA 90012 | Securities Exchange Commission<br>444 S. Flower Street<br>Suite 900<br>Los Angeles, CA 90071 |

☐ *Additional service on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 4, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| February 4, 2025 | J. Klassi | /s/ J. Klassi |
| *Date* | *Type Name* | *Signature* |