JOHN-PATRICK M. FRITZ (SBN 245240)
ROBERT M. CARRASCO (SBN 334642)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: JPF@LNBYG.COM

Attorneys for Chapter 11 Debtors
and Debtors in Possession

FILED & ENTERED

JUN 15 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY vandenst DEPUTY CLERK

CHANGES MADE BY COURT

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

In re:

UNRIVALED BRANDS, INC.,

Debtor and Debtor in Possession.

In re:

HALLADAY HOLDING, LLC,

Debtor and Debtor in Possession.

☒ Affects both Debtors
☐ Affects Unrivaled Brands, Inc. only
☐ Affects Halladay Holding, LLC only

Lead Case No.: 2:24-bk-19127-BB

Jointly administered with Halladay Holding LLC (2:24-bk-19128-BB)

Chapter 11 Case

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER CONFIRMING DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN, DATED APRIL 10, 2026**

Hearing on Plan Confirmation:
Date: June 4, 2026
Time: 10:00 a.m.
Place: Courtroom 1539
255 East Temple Street
Los Angeles, CA 90012

On June 4, 2026, at 10:00 a.m., the Honorable Sheri Bluebond, United States Bankruptcy Judge for the Central District of California (the "Court") held a hearing (the "Hearing") in Courtroom 1539 on the 15th Floor of the United States Bankruptcy Courthouse located at 255 East Temple Street, Los Angeles, California, to consider the confirmation of the *Debtors' First Amended Joint Chapter 11 Plan, Dated April 10, 2026* (the "Plan") [ECF 334] filed by Unrivaled Brands, Inc. ("Unrivaled") and Halladay Holding, LLC ("Halladay" and with Unrivaled, collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned, jointly administered chapter 11 bankruptcy cases. Appearances were made as set forth on the record of the Court at the Hearing.

**I. THE RECORD**

A. In support of, opposition to, or in connection with the Plan, the parties in interest filed the following, and the Court read and considered the same, in conjunction with plan confirmation pursuant to 11 U.S.C. § 1129:

(i) The Plan;

(ii) The *Disclosure Statement Describing Debtors' First Amended Joint Chapter 11 Plan, Dated April 10, 2026* [ECF 335] (the "Disclosure Statement");

(iii) The *Declaration of Service of: [i] Debtors' First Amended Joint Chapter 11 Plan, Dated April 10, 2026; [ii] Disclosure Statement Describing Debtors' First Amended Joint Chapter 11 Plan, Dated April 10, 2026; [iii] Ballot for Accepting or Rejecting Plan; [iv] Notice: (1) Hearing on Confirmation of Debtors' First Amended Joint Chapter 11 Plan, Dated April 10, 2026; (2) Deadline for Voting; and (3) Deadlines for Filing Briefs* [ECF 343] (the "Declaration of Service");

(iv) The *Notice of: (1) Hearing on Confirmation of Debtors' First Amended Joint Chapter 11 Plan, Dated April 10, 2026; (2) Deadline for Voting; and (3) Deadlines for Filing Briefs* [ECF 344] (the "Notice");

(v) The *Debtors' Confirmation Brief in Support of Debtors' First Amended Joint Chapter 11 Plan, Dated April 10, 2026; Motion to Allow Late Balloting* [ECF 355] (the "Motion");

(vi) The *Declaration of Sabas Carrillo in Support of Debtors' First Amended Joint Chapter 11 Plan, Dated April 10, 2026; Motion to Allow Late Balloting* [ECF 356] (the "Carrillo Declaration");

(vii) The *Declaration of John-Patrick M. Fritz in Support of Debtors' First Amended Joint Chapter 11 Plan, Dated April 10, 2026; Ballot Summary; Ballots* [ECF 357] (the "Fritz Declaration");

(viii) The Plan Ballot Summary [ECF 358]; and

(ix) The *Supplemental Declaration of John-Patrick M. Fritz in Support of Debtors' First Amended Joint Chapter 11 Plan, Dated April 10, 2026; Ballot Summary; Ballot* [ECF 359] (the "Supplemental Fritz Declaration").

B. In addition to the foregoing pleadings, documents, and evidence, the Court considered the record in the Cases, the docket in the Cases, and the oral arguments of counsel made on the record at the Hearing. The Court may consider the cumulative record and evidence amassed throughout the case in confirming a plan. *In re Acequia, Inc.*, 787 F.2d 1352, 1359 (9th Cir. 1986). Additionally, the Court made findings and conclusions on the Court's official record of the Hearing at the Hearing, which are incorporated here by reference as though set forth in full.

C. Upon consideration of the foregoing, the Court has separately and concurrently signed the Court's Order Confirming the Debtors' First Amended Joint Chapter 11 Plan, Dated April 10, 2026 (the "Plan Order") to accompany this, the Court's Findings of Facts and Conclusions of Law in Support of the Court's Order Confirming the Debtors' First Amended Joint Chapter 11 Plan, Dated April 10, 2026 (the "Findings"). The Plan, as modified by these Findings and the Plan Order, is referred to herein as the "Plan."

D. Upon consideration of the foregoing, and good cause appearing, pursuant to Rule 52 of the Federal Rules of Civil Procedure (the "FRCP") as made applicable by Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "FRBP" or "Bankruptcy Rules"), the Court hereby makes the following findings of fact and conclusions of law with respect to confirmation of the Plan:

## II. JURISDICTION, VENUE, CORE PROCEEDING

This Court has jurisdiction over the Debtors' Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), over which this Court has exclusive jurisdiction.

## III. THE DEBTORS CARRIED THEIR BURDEN OF PROOF

**A.** The Court finds and concludes that the Debtors carried their burden of proof for confirmation of the Plan based on the presentation of the evidence, as detailed in these Findings. The plan proponent must demonstrate each element of §1129 by a preponderance of evidence. *In re Arnold & Baker Farms*, 177 B.R. 648, 654(9th Cir.B.A.P.1994), *aff'd,* 85 F.3d 1415, *cert. denied,* 519 U.S. 1054 (1997). The Court may consider the cumulative record and evidence amassed throughout the case in confirming a plan. *In re Acequia, Inc*., 787 F.2d 1352, 1359 (9th Cir. 1986). The Court finds that the Debtors carried their burden of proof on the Plan, Motion, Carrillo Declaration, Fritz Declaration, and Supplemental Fritz Declaration as detailed throughout these Findings.

**B.** The Court further finds and concludes that no party refuted confirmation because "for those creditors who object, it is up to that objecting party to 'produce evidence to establish the validity of the objection before the ultimate burden … is shifted to the plan proponent.'" *In re Art & Architecture Books of the 21st Century*, 2016 WL 118743 *7 (Bankr.C.D.Cal. Mar.18, 2016) (quoting *In re Future Energy Corp.*, 83 B.R. 470, 482 n.21 (Bankr.S.D. Ohio 1988) (collecting cases)). Parties in interest are permitted 28 days' notice for filing objections and the hearing to consider confirmation of a chapter 11 plan. FED.R.BANKR.P. 2002(b). The Plan

provided the requisite 28 days' notice period for voting and objection. ECF 344 (Notice). Opposition must be a complete written statement of all reasons in opposition with declarations and evidence. LBR 9013-1(f)(2). Direct testimony is taken by declaration. LBR 9013-1(i)(3). The failure by a party in interest to file a written and fully supported opposition may be deemed by the Court to be waiver of objection to confirmation of the Plan. LBR 9013-1(h).

**C.** The Court finds and concludes that the Debtors put on their evidence, and that no party submitted any objection in response.

**D.** No party filed any objection to confirmation of the Plan.

**E.** The standard for plan confirmation is by preponderance of the evidence, even for cramdown plan confirmation under § 1129(b). *Aetna Realty Investors v. Monarch Beach Venture (In re Monarch Beach Venture)*, 166 B.R. 428, 432 (C.D.Cal.1993). Moreover, the Debtors' burden of proof on cramdown issues does not even arise until after voting is complete. *See*, *In re Rexford Props. LLC*, 558 B.R. 352, 365-66 (Bankr.C.D.Cal.2016). The Court finds and concludes that the Debtors carried all of their burden on these issues in the Motion, the Carrillo Declaration, the Fritz Declaration, and the Supplemental Fritz Declaration, as explained in greater detail in these Findings below.

## IV. JUDICIAL NOTICE, BACKGROUND, FACTUAL FINDINGS

**A. <u>Judicial Notice</u>**. This Court takes judicial notice of the docket of the Debtors' Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed with, all orders entered by, and all evidence and argument made, proffered or adduced at the hearings held before this Court during the pendency of the Cases. The Court considers the cumulative record and evidence amassed throughout the Cases in confirming the Plan. *In re Acequia, Inc.*, 787 F.2d 1352, 1359 (9th Cir. 1986). The Court has closely observed these Cases since the Petition Date on November 6, 2024. The Court takes judicial notice of the matters that have taken place throughout these Cases, which are included herein as findings of fact and conclusions of law.

**B. Procedural Background and Plan**

1. The Debtors commenced their bankruptcy cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code on November 6, 2024, (the "Petition Date"). The Debtors continue to manage their financial affairs and administer their bankruptcy estates as debtors in possession.

2. On April 10, 2026, the Debtors filed the Plan and Disclosure Statement.

3. On April 10, 2026, the Court entered its order (the "Disclosure Statement Order") [ECF 340] approving the Disclosure Statement, establishing voting deadlines, and setting the plan confirmation briefing schedule.

4. On April 20, 2026, the Debtors filed the Notice of the plan confirmation Hearing.

5. On April 20, 2026, the Debtors filed the Declaration of Service.

6. The Plan is a liquidation plan with a "pot plan" distribution to pay creditors shortly after the Effective Date and establish a liquidating trust (the "Liquidating Trust") with a liquidation trustee ("Liquidation Trustee") to monetize assets of the estates and distribute them to creditors.

**C. The Debtors' Primary Assets**

7. As of the Petition Date, Unrivaled's primary assets were: (A) its 100% membership interests in Halladay Holding, LLC (which owns the "Property," as discussed immediately below); (B) Approximately 9% shares in Mystic Holdings, Inc. ($MSTH on OTC); (C) employee retention tax credit refunds from the IRS; and (D) avoidance actions against Peoples.[1] As of the Petition Date, Halladay's primary asset was Halladay's real property located at 3242 S. Halladay Street, Santa Ana, California, 92705 (APN 411-151-04) (the "Property" or the "Halladay Property" or "Halladay's Property").

[1] Capitalized terms used herein that are not otherwise defined in this order shall have the meanings given such terms in the Disclosure Statement.

8. The Property is 0.94 acres of land and approximately 24,468 square feet of improvements located at 3242 S. Halladay Street, Santa Ana, California, 92705 (APN 411-151-04).

9. The Property has a two-story flex building built in 1971 and renovated in 2020, located on a hard corner M1 zoned parcel, ideal for office space use, and positioned for an owner-user or investor. The Property's building has multiple large conference rooms, an extensive full kitchen/break area, and multiple glass executive suites, and it comes with 76 stalls for parking.

10. On November 16, 2023, Halladay entered into a purchase agreement (the "Purchase Agreement") with Gordineer LLC (the "Buyer") for the sale (the "Sale") of the Property for a purchase price of $5,303,320.00.

11. On November 8, 2024, the Debtors filed their "*Debtors' Motion for an Order: (1) Approving the Sale of the Debtor's Real Property Free and Clear of All Liens, Claims, Encumbrances, and Interests; (2) Finding that the Buyer is a Good Faith Purchaser; (3) Authorizing and Approving the Payment of Certain Claims from Sale Proceeds; (4) Waiving the Fourteen-Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and (5) Providing Related Relief*" (the "Sale Motion") [ECF 10], seeking a court order authorizing the Debtors to sell the Halladay Property free and clear of all claims, liens, and interests pursuant to 11 U.S.C. § 363(b) and (f).

12. On December 4, 2024, the Court held a hearing (the "Sale Hearing") on the Sale Motion, granting the Sale Motion and entering an order (the "Sale Order") [ECF 53] on December 6, 2024. At the Sale Hearing, and as set forth in the Sale Order, Peoples agreed to: (i) the granting of the Sale Motion and approval of the proposed Sale of the Property to Buyer free and clear of all liens, claims, and interests; (ii) the payment of closing costs, the allowed claims for the Orange County property taxes, and the First Deed of Trust; and (iii) the balance of the Sale proceeds (the "Net Sale Proceeds") to be held in Debtors' general bankruptcy counsel's account until further order of the Bankruptcy Court, with Peoples' disputed claim and lien and

the third deed of trust claim and lien to attach to the Net Sale Proceeds to the same extent, priority, and validity that existed as of the Petition Date.

13. The Sale closed on February 14, 2025. On February 24, 2025, Debtors filed a notice of the Sale closing with the Bankruptcy Court and attached thereto a true and correct copy of the closing statement and related documents. Property taxes, commissions, closing costs, and the first deed of trust were paid from escrow, and, on February 18, 2025, Debtors' general bankruptcy counsel received a wire for the net sale proceeds in the amount of $1,593,637.21, in accordance with the Court's Sale Order.

14. The Debtors did not receive any of the net sale proceeds. Prior to the Petition Date, on January 11, 2024, the Debtors received the amount of $150,000 when the buyer's initial deposit was released upon the expiration of the contingency period on December 29, 2023, in accordance with section 30 of the asset purchase agreement (referred to on the closing statement as "Prior Release of Funds p/30 Of The Contract"), which is contractually required to be credited towards the purchase price. The closing statement reflects a debit of $50,000 against the purchase price because, in accordance with the fifth amendment to the asset purchase agreement, the sale did not close by December 15, 2024.

**D. <u>Debtors' Post-Petition Settlement with Peoples</u>**

15. On December 16, 2024, the Debtors filed an adversary proceeding (2:24-ap-1272-BB) (the "<u>Avoidance Action</u>") against Peoples to recover transfers pursuant to 11 U.S.C. §§ 544, 547, 548, and 550.

16. On December 17, 2024, the Debtors removed prepetition state court litigation with Peoples to the Bankruptcy Court (2:24-ap-1274-BB) (the "<u>Removed Action</u>"). The prepetition disputes in the Removed Action were a foreclosure sale of the Property and the alleged breach of a prepetition settlement agreement with Peoples.

17. At a status conference hearing in the main bankruptcy case on December 18, 2024, the Debtors and People's, through counsel, suggested that the various disputes between the parties might be resolved by a judicial settlement conference. Thereafter, on December 23,

2024, the Court entered an order appointing the Honorable Robert N. Kwan, United States Bankruptcy Judge as settlement judge (the "Settlement Judge") for the disputes between the Debtors and People's [ECF 80].

18. On February 12, 2025, the parties attended the judicial settlement conference and reached a settlement, which was put on the record the same day, subject to documentation, which eventually took the form of a settlement (the "Post-petition Peoples Settlement") memorialized in a settlement agreement (the "Post-Petition Peoples Settlement Agreement").

19. On April 9, 2025, the Debtors filed a motion (the "Peoples Settlement Motion") [ECF 150] seeking court approval of the Post-petition Peoples Settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. At a hearing held on April 30, 2025, the Court granted the motion and approved the settlement. ECF 175.

20. Pursuant to the Post-petition Peoples Settlement Agreement, as of the effective date of the agreement (which was May 19, 2025), People's was to have an allowed secured claim for four-hundred-thousand dollars ($400,000) (the "People's Allowed Settled Claim"), to be paid from the Net Sale Proceeds to People's as soon as reasonably practicable by wire transfer. (Debtors' counsel caused the payment of $400,000 to be sent to Peoples shortly after May 19, 2025.)

21. As of the effective date of the Post-petition Peoples Settlement, the Debtors were to cause the sum of one-million dollars ($1,000,000) (the "Disputed Funds") from the Net Sale Proceeds to be deposited into an interest-bearing account (the "Disputed Funds Account") to be held until the dispute between People's and the holder of the third deed of trust on the Halladay Property (the "3rd DOT holder") was settled or judicially determined.

22. The Court entered the order approving the Post-petition Peoples Settlement on May 2, 2025.

**E. Mediated Settlement of the Disputed Funds Between Peoples and 3rd DOT Holder**

23. On April 22, 2025, Peoples and the 3rd DOT holder filed a stipulation for binding mediation and/or arbitration regarding their dispute and agreed to arbitrate and/or mediate their dispute over the $1 million Disputed Funds. ECF 165.

24. On September 2, 2025, the Court entered an order approving the mediation award between Peoples and the 3rd DOT Holder with $440,000 of the Disputed Funds going to Peoples and $560,000 of the Disputed Funds going to the 3rd DOT Holder. ECF 263.

**F. Shares in Mystic Holdings, Inc.**

25. One asset listed in Unrivaled's schedules of assets is its ownership interests in Mystic Holdings, Inc. ("Mystic Holdings"). According to the fourth quarter 2024 quarterly financial statement filed with the SEC by Mystic Holdings, Unrivaled owns 8,323,764 Mystic Holdings common shares, which is approximately 5.5% of the total 150,376,946 common shares; and Unrivaled owns 8,332 Mystic Holdings preferred shares, which is approximately 9.7% of the total 86,235 preferred shares (the "Mystic Shares"). Preferred shares convert one-to-one into common shares, and on a total converted basis, Unrivaled would own 8,332,096 of the total 150,463,181 shares, calculated at 5.5%. The preferred shares have enhanced voting rights.

26. According to its filings with the SEC, Mystic Holdings has certain connections to cannabis. The ownership of more than 1% of such a company may violate § 854(a) of the Controlled Substances Act ("CSA"). *See*, 21 U.S.C. § 854(a). Because the Debtors own more than 1% of Mystic Holdings, on December 6, 2024, the Debtors filed the "*Debtors' Notice of Motion and Motion to Abandon Shares of Mystic Holdings, Inc.*" (the "Abandonment Motion") [ECF 56].

27. On January 8, 2025, Peoples filed its objection (the "Abandonment Objection") [ECF 93] to the Abandonment Motion; however, Peoples withdrew the Abandonment Objection pursuant to the Post-petition Peoples Settlement, discussed above. ECF 180.

28. However, on May 28, 2025, Greenlane filed its objection to the Abandonment Motion (the "Greenlane Abandonment Objection") [ECF 183] (re-filed for technical corrections as ECF 185 on June 2, 2025), and the Debtors filed a reply on June 4, 2025. ECF 190. Greenlane and the Debtors were unable to resolve this objection consensually, and on January 6, 2026, the Court denied the Abandonment Motion without prejudice.

**G. Executory Contracts and Real Property Leases**

29. Unrivaled is a party to several insurance contract agreements, and, for the avoidance of doubt, all of the insurance policies are being assumed as part of the Plan.

30. Other than the foregoing, the Debtors do not have any significant unexpired leases or executory contracts.

**H. Requested Modifications of the Plan**

31. The Debtors request that the treatment of Class 5 in the Plan be modified to render Class 5 unimpaired by providing for payment in full of the Class 5 secured claim of $50,000 principal with $9,166.67 of simple interest at 11%.

32. The Debtors believe that the $9,166.67 interest payment to Class 5 to make that class unimpaired is immaterial compared to the alternative administrative costs of proving up secured creditor cramdown or amending and re-soliciting another plan.

33. The Debtors also request that the Plan Exhibit "2" list of general unsecured creditors in Class 7 be corrected with the attached, updated version of Exhibit "2" attached to the Carrillo Declaration. During the cases, the Debtors amended their schedules of liabilities to add six general unsecured creditors.[2] *See*, ECF 133 at p.7-8 and ECF 287 at p.35. These six creditors were on the master mailing list and received the plan solicitation package, as one of these creditors (Thurston Elevator Concepts) contacted Debtors' counsel regarding the ballot and inadvertent omission on Exhibit 2.

---

[2] (1) Creditor's Adjustment Bureau, Inc.; (2) HB Computers, Inc.; (3) Kurtis Michael Magee; (4) Mark Pierce; (5) Number 9, LLC; and (6) Thurston Elevator Concepts.

34. The Debtors request that the Court extend the Plan balloting deadline to allow late ballots to be counted. There is no prejudice to any creditors in allowing counting of the late ballots because the material terms of the Plan are not worsened, and the Plan already provides the maximum recovery possible for the creditor body. If the balloting deadline is not extended so that the Plan can be confirmed, the result will cause creditors greater prejudice because amendment and re-solicitation of an amended plan would increase administrative costs and result in smaller distributions to creditors.

**V. SOLICITATION OF THE PLAN AND VOTING**

**A.** *Transmittal and Mailing of Solicitation Materials and Notices*. The Court finds and concludes that service of the Plan, Disclosure Statement, Notice, Motion, and other solicitation materials was appropriate and sufficient. The Court set the Hearing and briefing schedule by its order and in accordance with Bankruptcy Rule 3017. Appropriate and sufficient notice of the Hearing and the other deadlines and matters was given in compliance with 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") and the Rule 2002(b) of the Federal Rules of Bankruptcy Procedure, and no other or further notice is or shall be required, because 28 days' notice was provided for creditors and interest holders to vote on and object to the Plan.

**B.** *Adequacy of Solicitation Procedures*. All procedures used to distribute the solicitation materials to the appropriate creditors entitled to vote on the Plan and to tabulate the ballots returned by creditors were fair and were conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the order entered by this Court approving the Disclosure Statement as containing adequate information under Section 1125(b) of the Bankruptcy Code and setting forth the solicitation procedures to be followed by the Debtors as set forth in the Court's Disclosure Statement Order. Votes for acceptance or rejection of the Plan were solicited and cast in good faith, and only after transmittal of a disclosure statement containing adequate information, and otherwise in compliance with 11 U.S.C. §§ 1125, 1126, and 1127 and Bankruptcy Rules 3017, 3018, and 3019.

**C.** *Good Faith Solicitation*. The Court finds and concludes that the Debtors and their advisors, attorneys, professionals, officers, directors, members, and affiliates of the foregoing (but solely in their respective capacities as such), have acted in good faith within the meaning of Sections 1125(e) and 1129(a)(3) of the Bankruptcy Code, and in compliance with all other applicable provisions of the Disclosure Statement Order, Bankruptcy Code, and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and are entitled to the protections afforded by the exculpation provisions set forth in Section II.B.10 of the Plan.

**D.** *Impaired Classes that Have Voted to Accept or Reject the Plan*. Classes 5 and 7 are each impaired under and entitled to vote on the Plan. As set forth in the Ballot Summary, Fritz Declaration, and Supplemental Fritz Declaration, Class 7 voted to accept the Plan. Class 5 did not vote. Through the Motion and at the Hearing, the Debtors modified the Plan such that Class 5 is unimpaired and conclusively presumed to have accepted the Plan without voting.

**E.** *Unimpaired Classes Deemed to Have Accepted the Plan*. Classes 1, 2, 3, 4, and are each unimpaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, the holder of claims in Classes 1, 2, 3, 4, and 6 are conclusively presumed to have accepted the Plan. Class 5 did not vote. Through the Motion and at the Hearing, the Debtors modified the Plan such that Class 5 is unimpaired and conclusively presumed to have accepted the Plan without voting.

**F.** *Classes of Interests Deemed to Rejected the Plan*. With respect to classes of interests in the Debtors, Classes 8 and 9 are comprised of equity interests in Unrivaled and Halladay, respectively, and are impaired under the Plan. Pursuant to Section 1126(g) of the Bankruptcy Code, because they are to receive nothing under the Plan, the holders of interests in Classes 8 and 9 are conclusively presumed to have rejected the Plan.

## VI. RELEASES, EXCULPATIONS, AND INJUNCTIONS

**A.** *Releases, Discharge, Exculpations and Injunctions*. Each of the release, exculpation, and injunction provisions set forth in the Plan: (i) is within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (ii) is an essential means of

implementing the Plan pursuant to 11 U.S.C. § 1123(a)(5); (iii) is an integral element of the transactions incorporated into the Plan; (iv) confers material benefits on, and is in the best interests of, the Debtors, their estates, and their creditors; (v) is important to the overall objectives of the Plan to finally resolve all claims among or against the key parties in interest in the Cases; and (vi) is consistent with Sections 105, 524, 1123, 1129, and 1141 of the Bankruptcy Code, and all other applicable provisions of the Bankruptcy Code. The record of the Hearing and the Cases is sufficient to support the release, exculpation, and injunction provisions contained in the Plan.

**B.** *Actual Knowledge of Discharge and Injunction*. The plain language of the Plan is sufficient and clear as to the injunction of the Plan. All creditors and parties in interest who are presented with a copy of the Plan Confirmation Order are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest ("Actual Knowledge"), such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action. Accordingly, any creditor and/or party in interest charged with such Actual Knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include an award of the Liquidating Trust's reasonable attorneys' fees and costs for enforcing the Injunction against any such creditor and/or party in interest.

## VII. THE PLAN COMPLIES WITH 11 U.S.C. § 1129(a)(1)

**A.** *The Plan Compliance with Bankruptcy Code - 11 U.S.C. § 1129(a)(1)*. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1129(a)(1) of the Bankruptcy Code. Based upon the following, the Court finds and concludes that the Plan complies with all of the provisions of Section 1129(a)(1) by complying with Sections 1122 and 1123 of the Bankruptcy Code, as well as the applicable Federal Rules of Bankruptcy Procedure.

**B.** *Proper Classification - 11 U.S.C. §§ 1122, 1123(a)(1)*. Aside from administrative claims and priority tax claims, which need not be classified, the Plan designates 7 classes of claims against the Debtors and 2 classes of interests in the Debtors. The claims and interests placed in each class, where applicable, are substantially similar to other claims and interests in each such class. Valid business, factual, and legal reasons exist for separately classifying the various classes of claims created under the Plan. Classes 1, 2, 3, 4, and 5 are comprised of allowed secured claims against the Debtors, and each is in a different class because each creditor class has a different lien priority. Class 6 is comprised of the general unsecured claim against Halladay, and Class 7 is comprised of the general unsecured claims against Unrivaled, which are separately classified because they hold no liens or priority claims. Classes 8 and 9 are separately classified as the equity interest holders in Halladay and Unrivaled, respectively, because they do not hold a creditor claim, and they are the only parties in interest holding equity. Therefore, the Plan meets the requirements of § 1122 and § 1123(a)(1).

**C.** *Specify Unimpaired Classes - 11 U.S.C. § 1123(a)(2)*. The Court finds and concludes that Section II.A.2 of the Plan specifies that Classes 1, 2, 3, 4, and 6 are unimpaired under the Plan, and by the Motion and at the Hearing, the Plan is modified to specify that Class 5 is unimpaired, thereby satisfying Section 1123(a)(2) of the Bankruptcy Code.

**D.** *Specify Treatment of Impaired Classes - 11 U.S.C. § 1123(a)(3)*. The Court finds and concludes that Section II.A.2 of the Plan specifies that Classes 7, 8, and 9 are impaired as well as the treatment of claims in those classes, thereby satisfying Section 1123(a)(3) of the Bankruptcy Code.

**E.** *No Discrimination - 11 U.S.C. § 1123(a)(4)*. The Court finds and concludes that the Plan provides for the same treatment by the Debtors for each claim in each respective class unless the holder of a particular claim has agreed to a less favorable treatment of such claim, thereby satisfying Section 1123(a)(4) of the Bankruptcy Code.

**F.** *Implementation of Plan - 11 U.S.C. § 1123(a)(5)*. The Court finds and concludes that Section II.B of the Plan appropriately sets forth the means of implementation and execution

of the Plan. The Plan provides for its implementation by way of, *inter alia*, Section 1123(a)(5)(B). The Debtors will implement the Plan through the Liquidating Trust. The Plan meets the requirements of Section 1123(a)(5).

**G.** *Non-Voting Equity Securities - 11 U.S.C. § 1123(a)(6)*. The Court finds and concludes that Section II.A.2.h of the Plan provides that the Debtors' charter, bylaws, and/or operating agreement will be amended to provide for the inclusion of a provision prohibiting issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among classes. Accordingly, the Court finds and concludes that the Plan complies with Section 1123(a)(6) of the Bankruptcy Code.

**H.** *Selection of Officers and Directors - 11 U.S.C. § 1123(a)(7)*. The Court finds and concludes that there is no provision of the Plan that is contrary to the best interests of creditors and equity holders or public policy with respect to the manner of selection of any officer, director or trustee. Accordingly, the Court finds and concludes that the requirements of Section 1123(a)(7) of the Bankruptcy Code are satisfied.

**I.** *Post-petition Earnings of an Individual Debtor Necessary for Execution of the Plan – 11 U.S.C. § 1123(a)(8)*. This subsection does not apply in this Case because the Debtors are not individuals.

**J.** *Additional Plan Provisions - 11 U.S.C. § 1123(b)*. The Court finds and concludes that the Plan's additional provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code. Subsection 1123(b) is a list of optional provisions, none of which are mandatory, and, therefore, the absence of a finding or conclusion as to any provision of 1123(b) is not grounds to deny confirmation of the Plan.

1. Section 1123(b)(2) of the Bankruptcy Code specifies that, subject to Section 365, a plan may provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously rejected. The Court finds and concludes that Section II.B.12 of the Plan and **Exhibit 4** thereto, provide the assumption and rejection of executory

contracts and prepetition unexpired leases subject to this provision. Unrivaled is a party to several insurance contract agreements, and, for the avoidance of doubt, all of the insurance policies are being assumed as part of the Plan.

2. The Bankruptcy Code specifies that a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate," and/or "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." 11 U.S.C. § 1123(b)(3). The Court finds and concludes that the Plan is consistent with § 1123(b)(3) because of Sections II.B.5 & 6 of the Plan. As set forth in sections II.B.5 & 6 of the Plan, the Plan provides that all claims, claim objections, causes of action and avoidance actions of the Debtors and their estates are preserved by the Plan, and the Liquidating Trustee shall have sole and full power and authority to settle, adjust, retain, enforce, or abandon any claim, cause of action, or avoidance actions as the sole representative of the Debtors' estates under section 1123(b) of the Bankruptcy Code or otherwise, regardless of whether such claims, causes of action, or avoidance actions were commenced prior or subsequent to the Plan Effective Date. The Court finds and concludes that this provision is appropriate.

3. Section 1123(b)(4) of the Bankruptcy Code specifies that a plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." The Plan does not contemplate the sale of any assets, though it is anticipated that the Liquidating Trust will sell the Mystic Shares after the Plan Effective Date. The Court finds and concludes that this provision is appropriate.

4. Section 1123(b)(5) of the Bankruptcy Code permits a plan to transfer assets. The Plan transfers assets to the Liquidating Trust. The Court finds and concludes that this provision is appropriate.

5. Subsection 1123(b)(6) is a catch-all category for "any other appropriate provision not inconsistent with the applicable provisions of this title." The Court finds and

concludes that the Plan does not contain provisions inconsistent with the applicable provisions of title 11.

**K.** *Compliance with Fed. R. Bankr. P. 3016 through 3019*

1. *Compliance with Fed. R. Bankr. P. 3016*. The Court finds and concludes that the Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). Further, the Court finds and concludes that the Plan describes in specific and conspicuous language all acts to be enjoined and identify the entities that are subject to the injunction provided under the Plan, satisfying Bankruptcy Rule 3016(c) to the extent applicable.

2. *Compliance with Fed. R. Bankr. P. 3017*. The Court finds and concludes that the Debtors have given appropriate and sufficient notice of the Hearing in accordance with Bankruptcy Rule 3017. The Court finds and concludes that the solicitation materials were transmitted to creditors entitled to vote on the Plan in accordance with Bankruptcy Rule 3017 and in accordance with the Court's Disclosure Statement Order setting the Plan Hearing and voting schedule.

3. *Compliance with Fed. R. Bankr. P. 3018*. The Court considered the service of the Plan, the notice, the ballots, and ballot tabulation summary. The Court finds and concludes that the solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018. The Court finds and concludes that the Plan was transmitted to all creditors entitled to vote on the Plan, sufficient time was prescribed for such creditors to accept or reject the Plan, and the solicitation materials used and solicitation procedures followed comply with Section 1125 and 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018.

## VIII. THE PLAN COMPLIES WITH 11 U.S.C. § 1129(a)(2)

**A.** Section 1129(a)(2) of the Bankruptcy Code provides that a court may confirm a plan only if "[t]he proponent of the plan complies with applicable provisions of the title." The "principal purpose of 11 U.S.C. § 1129(a)(2) is to ensure that the proponents have complied with the requirements of 11 U.S.C. § 1125 in the solicitation of acceptances to the plan," *In re*

*Texaco, Inc.*, 84 B.R. 893, 906-07 (Bankr.S.D.N.Y.1988), and with the requirements of Section 1121 and 1127 of the Bankruptcy Code. *In re Downtown Inv. Club III*, 89 B.R. 59, 65 (9th Cir.B.A.P.1988).

**B.** The Plan meets the requirements of § 1121(a) because the Debtors are the Plan proponents.

**C.** The Plan meets the requirements of § 1125 because all procedures used to distribute the solicitation materials to the appropriate creditors entitled to vote on the Plan and to tabulate the ballots returned by creditors were fair and were conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the order entered by this Court approving the Disclosure Statement as containing adequate information under Section 1125(b) of the Bankruptcy Code and setting forth the solicitation procedures to be followed by the Debtors as set forth in the Court's Disclosure Statement Order. Votes for acceptance or rejection of the Plan were solicited and cast in good faith, and only after transmittal of a disclosure statement containing adequate information, and otherwise in compliance with 11 U.S.C. §§ 1125, 1126, and 1127 and Bankruptcy Rules 3017, 3018, and 3019.

**D.** The Court finds and concludes that it is appropriate and necessary to grant the Debtors' motion to extend the Plan balloting deadline, as the Debtors received late ballots after the Memorial Day holiday weekend. Courts may permit the counting of late ballots received after the voting deadline in order to satisfy §1129(a)(10). *See*, *In re Rhead*, 179 B.R. 169, 177 (Bankr.D.Ariz.1995) (accepting a late vote to meet the requirement of §1129(a)(10)). "The Bankruptcy Court is a court of equity with a primary focus upon facilitating the reorganization process." *Id.* at 176-77 (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983)). "Section 1129(a)(10) is a technical requirement for confirmation. It is an obligation for the proponent to fulfill; it is not a substantive right of objecting creditors. Indeed, the purpose and usefulness of Section 1129(a)(10) have often been questioned." *Id.* at 177. Refusing to count late ballots simply to prevent the technical requirement of §1129(a)(10) being met simply impedes rather than advances the primary goals of equity and reorganization. *Id.*

**E.** Some courts have permitted late ballots for excusable neglect pursuant to Bankruptcy Rule 9006(b) by analyzing "(1) the danger of prejudice to the non-moving party, (2) the length of delay in its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *In re Ekstrom*, 2010 WL 1254893 *1, *16 (Bankr.D.Ariz. Mar.23, 2010). Here, there is no prejudice to any creditors in allowing counting of the late ballots because the material terms of the Plan are not worsened, and the Plan already provides the maximum recovery possible for the creditor body. Only one creditor, Greenlane, voted to reject the Plan, but no objections to the Plan were filed. The Debtors' served all of the Plan solicitation materials on Greenlane, including the Motion, request for extending the ballot deadline, and balloting result tallies, but Greenlane did not object to Debtors' requested relief or to confirmation of the Plan.

**F.** If refusing to extend the balloting deadline results in the Plan being not confirmed, creditors will be caused prejudice because amendment and re-solicitation of an amended plan will increase administrative costs and result in less assets to be distributed to creditors. The facts here demonstrate that length of delay is short, the reason for the delay was not within the reasonable control of the Debtors, and the conduct is in good faith. All received ballots prior to the deadline were to "accept" the Plan until 2:53 p.m. on Friday, May 22, 2026, when Greenlane submitted the single "reject" ballot in the amount of $1,919,769.57. With only two hours and seven minutes until the voting deadline, Debtors' counsel immediately informed the Debtors, but with only two hours remaining on a Friday afternoon before the three-day Memorial Day weekend, obtaining additional votes before 5:00 p.m. was unachievable. However, three additional accepting ballots arrived the following week after the holiday, and the Debtors received a fourth ballot from creditor Arthur Chan for a claim of $3,107,500 prior to the Hearing. Late ballots have been counted when deadlines are near federal holidays and the ballots are still received prior to the plan confirmation hearing. *In Re Paul*, 101 B.R. 228, 231

(Bankr.S.D.Cal.1989). The Court is satisfied that the Plan and Plan confirmation process complies with 11 U.S.C. §§ 1125, 1126, and 1127 and Bankruptcy Rules 3017, 3018, and 3019.

**G.** The Court finds and concludes that the Debtors and their management and professionals employed or retained by the Estates (collectively, the "Exculpated Parties"), have acted in good faith within the meaning of Sections 1125(e) and 1129(a)(3) of the Bankruptcy Code, and in compliance with all other applicable provisions of the Disclosure Statement Order, Bankruptcy Code, and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and are entitled to the protections afforded by the exculpation provisions set forth in Section II.B.10 of the Plan.

**IX. THE PLAN MEETS THE REQUIREMENTS OF 1129(a)(3)**

**A.** *Plan Proposed in Good Faith - 11 U.S.C. § 1129(a)(3)*. No party filed any objection to the confirmation of the Plan, and, therefore, the Court finds and concludes that the Plan has been proposed in good faith and not by any means forbidden by law pursuant to Bankruptcy Rule 3020(b)(2). Furthermore, the Court finds and concludes that the Plan has been proposed in good faith and not by any means forbidden by law based on the facts present here, and, thus, the Plan meets the requirements of § 1129(a)(3). In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Plan. Here, the Plan is the culmination of 18 months of settlement negotiations and settlement efforts involving numerous parties in interest in these cases that settled major disputes prior to the Plan being solicited.

**X. THE PLAN MEETS THE REQUIREMENTS OF 1129(a)(4)**

**A.** *Payments for Services or Costs and Expenses - 11 U.S.C. § 1129(a)(4)*. Section 1129(a)(4) of the Bankruptcy Code provides that a court may confirm a plan only if "[a]ny payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable." The Court finds and concludes that the Plan meets

the requirements of § 1129(a)(4) because, pursuant to section II.A.1.a the Plan, the Bankruptcy Court must approve all professional fees and expenses before they may be paid.

**B.** Furthermore, all payments made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Cases, or in connection with the Plan and incident to the Cases, has been approved by, or are subject to the approval of, the Court as reasonable, and therefore, the Court finds and concludes that the Plan satisfies Section 1129(a)(4) of the Bankruptcy Code.

**XI. THE PLAN MEETS THE REQUIREMENTS OF 1129(a)(5)**

**A.** *Directors, Officers and Insiders - 11 U.S.C. § 1129(a)(5)*. The Court finds and concludes that the Plan complies with Section 1129(a)(5) of the Bankruptcy Code because Section II.B.3 of the Plan discloses that the Liquidating Trustee will be Ryan Small of Resolution Financial Advisors with compensation as set forth in Exhibit 3.A to the Plan.

**B.** The Court finds and concludes that with respect to the Liquidating Trustee, there is no issue as to competence or alignment of interests with those of the Liquidating Trust, which is consistent with the best interests of creditors and equity holders and with public policy.

**XII. THE PLAN COMPLIES WITH SECTION 1129(a)(7)**

**A.** The Court finds and concludes that the Plan satisfies the best interest of creditors test of § 1129(a)(7) for the reasons detailed immediately below.

**B.** Section 1129(a)(7)(A) of the Bankruptcy Code (commonly referred to as the "best interest of creditors test") requires that, with respect to each impaired class under the Plan, each member of the class must either accept the Plan or receive under the Plan property having a value, as of the Effective Date, that is not less than the amount that such claim holder would receive if the Debtors' chapter 11 cases were converted to a chapter 7 liquidation case. The impaired classes under the Plan consist of classes 7, 8, and 9. The Debtors must therefore satisfy the "best interest of creditors test" with respect to members of classes 7, 8, and 9 that do not vote to accept the Plan.

**C.** "The valuation of a hypothetical Chapter 7 for purposes of § 1129(a)(7)(ii) is not an exact science." *In re Affiliated Foods, Inc.*, 249 B.R. 770, 788 (Bankr.W.D.Mo.2000). "The hypothetical liquidation entails a considerable degree of speculation about a situation that will not occur unless the case is actually converted to chapter 7." *In re Sierra-Cal*, 210 B.R. 168, 172 (Bankr.E.D.Cal.1997). The Court makes an independent finding, based on the evidence and arguments presented, and there is room for the Court to reasonably disagree with a plan objector's assumptions. *In re Affiliated Foods, Inc.*, 249 B.R. at 787-88 ("we [i.e., the Court]… disagree with the assumptions on which these figures are based… the Plan will pass the best interests of creditors test."). Courts may disregard objections on § 1129(a)(7) issues where the objecting party merely criticizes the debtor's estimates and assumptions without convincing evidence in support. *In re Emerge Energy Services LP*, 2019 WL 7634308 *12 (Bankr.D.Del. Dec.5, 2019) ("While certainly the Court could imagine a chapter 7 trustee pursuing something other than a forced sale, [objecting party] did not provide persuasive testimony as to why and how these events were likely to occur… Moreover, no specific estimate of recoveries under this alternative scenario were provided to assist the Court in comparing such a circumstance with the one provided by the Debtors in their Liquidation Analysis.").

**D.** In a hypothetical chapter 7 liquidation, the Debtors project that Class 5 would receive $59,166.67 for its principal loan of $50,000, plus $9,166.67 simple interest at 11%. *See*, Ex.6 to Disclosure Statement. By way of the Motion and at the Hearing, the Debtors modified the Plan to pay Class 5 $9,166.67 so that it is not impaired, and the Plan passes the best interest of creditors test as to Class 5.

**E.** The Court finds and concludes that in a hypothetical chapter 7 liquidation the holders of claims in Class 7 would receive less than the amount set forth in the Plan. The Court finds and concludes that in a hypothetical chapter 7 case, the chapter 7 trustee would hire his/her own counsel and undertake an investigation of the Bankruptcy Cases and the estates, then bring lawsuits, adding a new layer of administrative expenses to the $330,000 of chapter 11 expenses already incurred that remain unpaid. All of these administrative expenses must be paid before

payments can be made to Class 7. The formula payment to the chapter 7 trustee pursuant to Bankruptcy Code Section 326(a) would also significantly reduce the funds available for distribution to Class 7 creditors. Whatever funds might be in the estate would be used as a litigation fund to administer assets, collect judgments, and then pay those proceeds to the holders of general unsecured claims only after the chapter 7 and chapter 11 administrative expense professional fees had been paid in full. Under these circumstances, the Debtors submit that the approximate 1.2% recovery to Class 7 is better than the 0.5% recovery for Class 7 in a hypothetical Chapter 7 liquidation. Furthermore, a chapter 7 liquidation might be far worse if a chapter 7 trustee were unwilling or unable to conduct a transaction for the sale of the Mystic Shares. Equity interest holders in Classes 8 and 9 receive nothing in the Plan or hypothetical liquidation analysis. Therefore, the Plan meets the requirements of §1129(a)(7).

**XIII. SECTIONS 1129(a)(8) and 1129(b)**

**A.** Section 1129(a)(8) of the Bankruptcy Code provides that a court may confirm a plan only if "[w]ith respect to each class of claims or interests: (A) such class has accepted the plan; or (B) such class is not impaired under the plan." Section 1126(c) of the Bankruptcy Code provides that "[a] class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan." Only votes actually cast are counted. *In re M. Long Arabians*, 103 B.R. 211, 216 (9th Cir.B.A.P.1989).

**B.** *Classes 1, 2, 3, 4, 5, and 6 - 11 U.S.C. § 1129(a)(8)*. Classes 1, 2, 3, 4, 5, and 6 are classes of unimpaired claims and deemed to have accepted the Plan by operation of law without voting pursuant to Section 1126(f) of the Bankruptcy Code. The Plan is modified so that Class 5 is unimpaired and is paid in full with principal and interest. Therefore, the Court finds and concludes that § 1129(a)(8) of the Bankruptcy Code has been satisfied as to Classes 1, 2, 3, 4, 5, and 6.

**C.** *Acceptance by Class 7 - 11 U.S.C. § 1129(a)(8)*. Class 7 is a class of impaired claims that voted to accept the Plan. Class 7 is a class of claims that is impaired and has

accepted the Plan. Therefore, the Court finds and concludes that § 1129(a)(8) of the Bankruptcy Code has been satisfied as to Class 7.

**D.** *Rejection by Classes 8 and 9 - 11 U.S.C. §§ 1129(a)(8) and 1129(b)*. Classes 8 and 9 are classes of equity interest holders in Halladay and Unrivaled, respectively, that are impaired. They are to receive nothing under the Plan and are therefore conclusively deemed to have rejected the Plan under Section 1126(g) of the Bankruptcy Code. The Debtors seek to confirm the Plan on Classes 8 and 9 pursuant to Section 1129(b) of the Bankruptcy Code. The Court finds and concludes that § 1129(b)(2)(C)(ii) of the Bankruptcy Code has been satisfied as to Classes 8 and 9 because no claims or interests junior to Classes 8 or 9 receive or retain anything under the Plan on account of such claims or interests. Therefore, the Court finds and concludes that § 1129(b) of the Bankruptcy Code has been satisfied as to Classes 8 and 9.

## XIV. THE PLAN SATISFIES 11 U.S.C. § 1129(a)(9)

**A.** The Court finds and concludes that the Plan satisfies § 1129(a)(9). According to section 1129(a)(9) of the Bankruptcy Code, plan confirmation requires that each holder of a priority claim under Section 507(a)(2) or 507(a)(3) of the Bankruptcy Code must receive cash equal to the allowed amount of such claim or agree to a different treatment.

**B.** Under the Plan, each holder of an allowed administrative claim (i.e., claims arising under Section 507(a)(2) of the Bankruptcy Code) will be paid in full upon the Effective Date, except to the extent that estate professionals who were employed in the Cases will not be paid until their fees and expenses are approved by the Court following the filing of final fee applications by such professionals and have voluntarily limited their fees and expenses in accordance with Section II.A.1.a of the Plan. Therefore, the Court finds and concludes that § 1129(a)(9)(A) is satisfied.

**C.** The Court finds and concludes that § 1129(a)(9)(C) is satisfied because the applicable prepetition priority claims under 11 U.S.C. § 507(a) will be paid with 15 days of the Plan Effective Date, in accordance with Section II.A.1.b of the Plan. Pursuant to Section II.B.5

of the Plan, disputed tax claim payments may be deposited into a disputed claims reserve until the disputes are resolved.

**D.** The Court finds and concludes that §§ 1129(a)(9)(B) and (D) are inapplicable here because there are no claims in these Cases that implicate those subsections.

**XV. THE PLAN SATISFIES 11 U.S.C. § 1129(a)(10)**

**A.** The Court finds and concludes that the Plan satisfies § 1129(a)(10) because the Plan was accepted by Class 7, which is an impaired class comprised of non-insiders with the votes from non-insiders. Section 1129(a)(10) of the Bankruptcy Code provides that a court may confirm a plan only if "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." Section 1126(c) of the Bankruptcy Code provides that "[a] class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan." The Court incorporates its discussion of the extended voting deadline and vote tabulation for Class 7 from Sections VIII.D to VIII.F of these Findings and Conclusions above.

**XVI. THE PLAN SATISFIES 11 U.S.C. § 1129(a)(11)**

**A.** The Court finds and concludes that the Plan satisfies § 1129(a)(11) because the Plan is feasible. Section 1129(a)(11) of the Bankruptcy Code provides that a court may confirm a plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

**B.** The purpose of §1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly obtain after confirmation. *In re Linda Vista Cinemas, L.L.C.*, 442 B.R. 724, 737 (Bankr.D.Ariz.2010), quoting *In re Pizza of Haw., Inc.,* 761 F.2d 1374, 1382 (9th Cir.1985) (quoting 5 Collier on Bankruptcy ¶ 1129.02[11], at 1129–34 (15th ed. 1984)). In order to meet

this feasibility standard, a debtor need only demonstrate that the plan has a "reasonable probability of success." *United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 549 (1990); *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir.1986); *In re Pike's Peak Water Co*., 779 F.2d 1456, 1460 (10th Cir.1985). Bankruptcy courts have set forth six factors to help courts determine feasibility: (1) adequacy of the debtor's capital structure; (2) the earning power of the debtor's business; (3) economic conditions; (4) the ability of the debtor's management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. *In re M&S Assoc., Ltd.*, 138 B.R. 845, 849 (Bankr.W.D.Tex.1992). However, in analyzing feasibility, the court need find only a reasonable assurance of commercial viability, not guaranteed success. *In re Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr.S.D.N.Y.1986).

**C.** The Court finds and concludes that the Plan is feasible and meets the requirements of 11 U.S.C. § 1129(a)(11) based on evidence presented. Here, the Plan provides for the establishment of a Liquidating Trust with assets totaling approximately $1,284,213.49, which is sufficient to pay secured claims, priority claims in full (including a large tax claim that the Debtors believe could eventually be substantially reduced when the tax amendment process is completed), administrative expense claims, and render a distribution to general unsecured creditors in Class 7. *See*, Ex.6 to Disclosure Statement. The feasibility of this Plan does not rely on the financial success of a business.

**XVII. THE PLAN SATISFIES 11 U.S.C. § 1129(a)(12).**

**A.** The Court finds and concludes that the requirements of § 1129(a)(12) are satisfied based on the evidence presented. Section 1129(a)(12) of the Bankruptcy Code provides that a court may confirm a plan only if "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." The Court finds and concludes that the Debtors are in compliance with all of the fee requirements set forth in section 1930 of

title 28. The Debtors have timely paid all fees or costs owing to the Clerk of the Court or the Office of the United States Trustee. The Plan also provides for payment of future applicable fees. Accordingly, the requirements of Section 1129(a)(12) are met.

**XVIII. OTHER PROVISIONS OF § 1129(a) and (d)**

**A.** The Court finds and concludes that subsections 1129(a)(6), (13), (14), (15), (16) are not applicable to the Debtors.

**B.** The Court finds and concludes that the principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of Section 5 of the Securities Act of 1933. The Court notes, finds, and concludes that no party in interest that is a governmental unit made any request for a determination under § 1129(d).

**XIX. MODIFICATION OF THE PLAN**

**A.** The Court finds and concludes that the Debtors' request to modify the treatment of the Class 5 Claim under the Plan to include the payment of simple interest at the rate of 11 percent, for a total additional payment of $9,166.67 so the holder of the Class 5 Claim, is reasonable and appropriate and is therefore approved. "The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of section 1122 and 1123 of this title." 11 U.S.C. § 1127(a). Section 1122 sets forth the requirements of claim and interest classification. *See*, 11 U.S.C. § 1122. The Debtors' requested modification has not changed the classification of claims and interests in the Plan. Section 1123 sets forth the mandatory and permissive plan provisions. 7 COLLIER ON BANKRUPTCY ¶ 1123.01 p. 1123-5 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). The Debtors' requested modification to the treatment of Class 5 has not changed the aspects of the Plan set forth in section 1123.

**B.** "The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified." 11 U.S.C. § 1127(c). Section 1125, in turn, sets forth the requirements of adequate disclosure and solicitation of acceptance of a plan. *See*, 11 U.S.C. § 1125. However, bankruptcy courts have held that a modification to a plan does not mandate "the

preparation of a new disclosure statement and resolicitation of the plan." *In re American Solar King Corp.*, 90 B.R. 808, 823 (Bankr.W.D.Tex.1988). "If the court finds after a hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan." FED.R.BANKR.P. 3019(a). Additional disclosure to creditors is required "only when and to the extent that the debtor intends to solicit votes from previously dissenting creditors or when the modification materially and adversely impacts parties who previously voted for the plan." *In re American Solar King Corp.*, 90 B.R. at 823.

**C.** "A modification is material if it so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance." 8 COLLIER ON BANKRUPTCY ¶ 3019.03 p. 3019-3 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.); *see American Solar*, 90 B.R. at 823. "A modification which is not likely to trigger such consideration *de facto* satisfies Section 1125 disclosure requirements." *American Solar*, 90 B.R. at 824.

**D.** Here, no one filed objections to the Plan. Only one creditor voted against the Plan. All other votes received were in favor of accepting the Plan. The substantive terms of the Plan have not changed in a material way with respect to the treatment of creditors, particularly as the $9,166.67 interest payment to Class 5 to make that class unimpaired is immaterial compared to the alternative administrative costs of proving up §1129(b)(2)(A) secured creditor cramdown or amending and re-soliciting another plan, which would be paid as administrative expense ahead of the general unsecured creditors. Therefore, the requested modification as to Class 5 is granted.

**E.** The Debtors also request that the Plan Exhibit "2" list of general unsecured creditors in Class 7 be corrected with the updated version of **Exhibit 2** attached to the Carrillo Declaration. During the Cases, the Debtors amended their schedules of liabilities to add six

general unsecured creditors.[3] *See*, ECF 133 at p.7-8 and ECF 287 at p.35. These six creditors were on the master mailing list and received the plan solicitation package, as one of these creditors (Thurston Elevator Concepts) contacted Debtors' counsel regarding the ballot and inadvertent omission on Exhibit 2. Therefore, the requested modification is granted to substitute Exhibit 2 from the Carrillo Declaration as Exhibit 2 of the Plan with these six additional creditors.

**XX. ASSUMPTION OF EXECUTORY CONTRACTS AND LEASES**

**A.** The Court finds and concludes that no party to an executory contract or unexpired lease to be assumed or rejected pursuant to the Plan has objected to the assumption or rejection thereof.

**B.** The Debtors are not assuming any executory contracts or unexpired leases. However, for the avoidance of doubt, insurance policies that are in place shall remain in place, and, to the extent that "assumption" is required, they are being assumed.

###

Date: June 15, 2026

Sheri Bluebond
United States Bankruptcy Judge

[3] (1) Creditor's Adjustment Bureau, Inc.; (2) HB Computers, Inc.; (3) Kurtis Michael Magee; (4) Mark Pierce; (5) Number 9, LLC; and (6) Thurston Elevator Concepts.